# OPERATING AGREEMENT
# OF
# FOREST ALASKA LLC

This OPERATING AGREEMENT (this "Agreement"), dated as of July 1, 2006 (the "Effective Date"), is by Forest Oil Corporation, a New York corporation, as the sole "Member" of Forest Alaska LLC.

## ARTICLE I
## GENERAL

**1.1  Formation.** The Member has caused to be formed a limited liability company under the Delaware Limited Liability Company Act, as amended (the "Act"). The name of the limited liability company shall be Forest Alaska LLC (the "Company").

**1.2  Certificate of Formation.** The Member has caused a certificate of formation, which complies with the requirements of the Act, to be filed with the Delaware Secretary of State. The Company shall execute such further documents (including amendments to the certificate of formation) and take such further action as shall be appropriate or necessary to comply with the requirements of applicable law for the qualification and operation of a limited liability company in all jurisdictions where the Company elects to carry on its business.

**1.3  Purpose and Power.** The purpose and business of the Company shall be the conduct of any business or activity that may be lawfully conducted by a limited liability company organized pursuant to the Act, and the Company shall have all of the powers of a limited liability company conferred by the Act. Any or all of the foregoing activities may be conducted directly by the Company or indirectly through another company, subsidiary, joint venture or other arrangement.

**1.4  Term.** The Company shall have perpetual existence and shall continue until it is dissolved by the written consent of the Member. Upon the dissolution or termination of the Member, its legal representative or successor shall become a member of the Company and shall exercise all rights and powers conferred upon the Member by this Agreement.

**1.5  Additional Members.** Additional persons shall be admitted as members (each such person, a "Member") of the Company by written amendment of this Agreement executed by Forest Oil Corporation and any other Member, as applicable.

**1.6  Principal Office; Registered Agent.**

(a)  The principal office of the Company initially shall be at 707 17th Street, Suite 3600, Denver, Colorado 80202. The principal office may be changed from time to time in accordance with the applicable provisions of the Act and any other applicable law.

(b)  The location of the registered office of the Company initially shall be at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808 and the registered agent for service of process on the Company at such registered office shall be Corporation Services

Company. As may be necessary or desirable, the Company may appoint Corporation Services Company or such other third party service provider to serve as the Company's registered agent for service of process in such other states as may be determined by the Member and, or officers of the Company.

## ARTICLE II
## CAPITAL CONTRIBUTIONS

**2.1** **Initial Capital Contribution.** As its initial capital contribution to the Company, the Member has contributed to the Company $100.

**2.2** **Additional Capital Contributions.** The Member may, but shall not be required to, make additional capital contributions to the Company. Any such capital contributions may be in the form of cash, property, or services rendered, or a promissory note or other obligation to contribute cash, property or to perform services, or take such other form as may be allowed under the Act.

**2.3** **Loans and Other Debt.** The Company may borrow funds from any source, including without limitation the Member.

**2.4** **Return of Capital Contributions.** Capital contributions shall be expended in furtherance of the business of the Company. No interest shall be paid on capital contributions. No officer, manager or employee of the Company shall have any personal liability for the repayment of any capital contribution to the Member.

**2.5** **Enforcement of Capital Contribution Obligations.** Except as expressly agreed in writing by the Member, no person other than the Member shall have the right to enforce any obligation that the Member may undertake to contribute capital to the Company, and specifically no lender or other third party shall have any such right.

## ARTICLE III
## DISTRIBUTIONS

The Company may make distributions of cash or other assets of the Company to the Member at such times and in such amounts as the officers of the Company shall determine and direct.

## ARTICLE IV
## ALLOCATION OF PROFIT AND LOSS

**4.1** **Determination of Profit and Loss.** Profit or loss shall be determined on an annual basis and for such other periods as may be required.

**4.2** **Allocation of Profit and Loss.** The Company is and at all times shall be a business entity that, solely for federal income tax purposes, is disregarded as an entity separate from its owner. All items of Company profit, loss, income, gain, loss, deduction and credit shall, for federal income tax purposes, be attributed to the Member.

FOC 000476
EXHIBIT _B_
PAGE _2_ OF _20_

## ARTICLE V
## MANAGEMENT; OFFICERS

5.1 **Management**. Management of the Company shall be vested in the persons appointed by the Member to act as officers of the Company. The officers of the Company shall be chosen by the Member and shall include a president and a secretary, and the Member may also choose to appoint one or more vice-presidents, a controller, a treasurer, and one or more assistant officers and any number of offices may be held by the same person. The officers of the Company shall hold their offices for such terms and shall exercise such powers and perform such duties as approved from time to time by the Member. The initial offices of the Company shall include the following:

President

Vice President and Secretary

Vice President and Controller

Assistant Secretary

5.2 **Authority of Officers.** The officers shall have the power and authority to conduct the business of the Company:

(a) *President.* The president shall have the responsibility for the general and active management of the business of the Company and shall preside at any meetings of the Members.

(b) *Vice President.* Any vice president shall, when required or as otherwise delegated power and authority by the President or Member, exercise the powers and perform the duties of the president.

(c) *Secretary.* The secretary shall keep the minutes of all meetings of the Member, serve notices of meetings, affix the seal of the Company to all contracts and documents when so ordered, have charge of such other books and records of the Company as directed by the Member and shall perform all of the duties incident to the office of secretary.

(d) *Controller.* The controller shall be responsible for the books of account and for the preparation of financial statements, budgets and forecasts. The controller shall be responsible for the supervision of the accounting function and shall, under the supervision of the President, be responsible for the books of account and for the preparation of such other financial data as shall be assigned to him/her from time to time by the Member.

(e) *Assistant Officers.* When required, any assistant officers shall perform the duties and exercise the powers of their respective office.

Unless otherwise directed by the Member, the President and any vice president shall have the full power and authority on behalf of the Company to attend, act and vote at meetings of the security holders of corporations or other entities in which the Company may hold securities or interests, and shall possess and may exercise any and all rights and powers incident to the

ownership of such securities or other interests. The Member may authorize the President to confer like powers upon any other person or persons.

     **5.3**    **Removal of Officers; Resignation.** The officers of the Company shall serve at the pleasure of the Member and may be removed at any time, with or without cause, by the Member. An officer may resign at any time and, unless specified in a written notice, the resignation shall take effect upon receipt of such notice by the President or the Member and acceptance of the resignation shall not be necessary to make it effective.

     **5.4**    **Reliance by Third Parties.** No third party dealing with the Company shall be required to ascertain whether an officer is acting in accordance with the provisions of this agreement. All third parties may rely upon a document signed by an officer as binding the Company.

     **5.5**    **Compensation and Reimbursements.** The salaries and other compensation of the officers and any employees of the Company shall be fixed by the Member. The officers shall be entitled to reimbursement by the Company for reasonable out-of-pocket expenses incurred on behalf of the Company.

ARTICLE VI
MEMBERS

     **6.1**    **Sole Member; Admission of Additional Members.** Forest Oil Corporation is the sole Member of the Company. Except as provided in Section 6.4, a person may be admitted as an additional Member of the Company only upon the written consent and approval of the Member.

     **6.2**    **Participation.** Except as set forth in this Agreement, the Member, in its capacity as a member of the Company, shall take no part in the control, management, direction, or operation of the affairs of the Company, which shall conducted by the officers of the Company, and shall have no power to bind the Company.

     **6.3**    **Meetings.** Meetings of the Member shall not be required for any purpose. All actions of the Member may be evidenced by a written consent describing the action taken, signed by the Member. Any action evidenced by such a written consent is effective on the date the consent is signed by the Member, unless the consent specifies a different effective date.

     **6.4**    **Transfer of Interest.** The interest of the Member in the Company may be transferred by the Member voluntarily or by operation of law. Upon transfer of the entirety of the Member's interest in the Company, the transferee shall, without further documentation or action, become the member of the Company.

     **6.5**    **Conflicts of Interest.** Forest Oil Corporation shall be entitled to engage in other activities and businesses, including, without limitation, activities and businesses competitive with the activities and business of the Company and shall not be required to give the Company the opportunity to participate in, or benefit from, any such activities or businesses. Forest Oil Corporation shall not be deemed to violate any duty or obligation to the Company merely because its conduct furthers its own interest. As the sole Member, Forest Oil Corporation may

lend money to, borrow money from, act as a surety, guarantor or endorser for, guarantee or assume one or more obligations of, provide collateral for, and transact other business with, the Company, and it has the same rights and obligations with respect to any such matters as those of a person who is not a member of the Company.

## ARTICLE VII
## ACCOUNTING AND REPORTING

7.1   **Books**. The Company shall maintain complete and accurate books of account at the principal office of the Company or at such other locations as approved by the Member. The Company shall provide the Member with any information requested by the Member relating to the business and accounts of the Company.

7.2   **Reports**. The Company's books of account shall be closed promptly after the end of each calendar year, which shall be the Company's fiscal year end. As soon as practicable after the end of each calendar year, the officers shall cause to be prepared a report which shall include financial statements, which may include a statement of receipts, expenditures, profits and losses for the year, and such additional statements with respect to the status of the Company's assets, liabilities, income and the distribution of Company funds as are necessary to advise the Member properly about its investment in the Company.

## ARTICLE VIII
## DISSOLUTION AND TERMINATION

8.1   **Final Accounting**. In the event of the dissolution of the Company, a proper accounting shall be made as provided in Section 8.2 below, from the date of the last previous accounting to the date of dissolution.

8.2   **Liquidation**. Upon the dissolution of the Company, the officers, or if the officers are not able to act, a person or persons selected by the Member, shall act as liquidator to wind up the Company. The liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and businesslike manner. All proceeds from liquidation shall be distributed in the following order of priority: (i) to the payment of debts and liabilities of the Company and the expenses of liquidation (including loans made by the Member to the Company); (ii) to the setting-up of such reserves as the liquidator may reasonably deem necessary for any contingent liabilities of the Company; and (iii) to the Member.

8.3   **Distribution in Kind**. The liquidator, in its absolute discretion, may distribute one or more of the Company's assets in kind to the person or entity entitled to receive the proceeds from such asset.

8.4   **Certificate of Cancellation**. Upon the complete distribution of the Company's assets as provided in this Article VIII, the Company shall be terminated and the person acting as liquidator shall file a certificate of cancellation and take such other actions as may be necessary to terminate the Company.

## ARTICLE IX
## LIMITATION OF LIABILITY; INDEMNIFICATION

9.1 **Exculpation.** Neither the Member nor any officer of the Company shall have any liability under a judgment, decree, or order of a court, or in any other manner, for any debt, obligation, or liability of the Company. No officer of the Company shall be liable to the Company or the Member for any monetary damages for breach of contract or breach of duties, including fiduciary duties, except for liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

9.2 **Indemnification.** Except as prohibited by law, the Member and every officer of the Company shall be entitled as a matter of right to be indemnified by the Company against all expenses and liability (as those terms are defined below in this Section 9.2) incurred by such person in connection with any actual or threatened claim, action, suit or proceeding, civil, criminal, administrative, investigative or other, whether brought by or in the right of the Company or otherwise, in which such person may be involved, as a party or otherwise, by reason of such person being or having been a Member or officer of the Company or of a subsidiary of the Company or by reason of the fact that such person is or was serving at the request of the Company as an officer, employee, fiduciary or other representative of another corporation, partnership, joint venture, trust, employee benefit plan or other entity (such claim, action, suit or proceeding hereinafter being referred to as "Action"); provided, however, that no such right to indemnification shall exist with respect to an Action brought by an indemnitee (as defined below) against the Company (an "Indemnitee Action") except as provided in the last sentence of this Section 9.2. Any person who is not a Member or officer of the Company may be similarly indemnified in respect of service to the Company or to another such entity at the request of the Company to the extent the Member or Members of the Company at such time designate such persons as entitled to the benefits of this Article IX. As used in this Article IX, "indemnitee" shall include each Member and officer of the Company and each other person designated by the Member as entitled to the benefits of this Section 9.2; "expenses" means all expenses actually and reasonably incurred, including fees and expenses of counsel selected by an indemnitee, and "liability" means all liability incurred, including the amounts of any judgments, excise taxes, fines or penalties and any amounts paid in settlement. An indemnitee shall be entitled to be indemnified pursuant to this Section 9.2 against expenses incurred in connection with an Indemnitee Action only if (i) the Indemnitee Action is instituted under Section 9.4 of this Article IX and the indemnitee is successful in whole or in part in such Indemnitee Action, (ii) the indemnitee is successful in whole or in part in another Indemnitee Action for which expenses are claimed, or (iii) the indemnification for expenses is included in the settlement of, or is awarded by a court in, such other Indemnitee Action.

9.3 Every indemnitee shall be entitled as a matter of right to have the expenses of the indemnitee in defending any Action or in bringing and pursuing any Indemnitee Action under Section 9.4 of this Article IX paid in advance by the Company prior to final disposition of the Action or Indemnitee Action provided that the Company receives a written undertaking by or on behalf of the indemnitee to repay the amount advanced if it should ultimately be determined that the indemnitee is not entitled to be indemnified for the expenses.

9.4   If a written claim for indemnification under Section 9.2 of this Article IX or for advancement of expenses under Section 9.3 of this Article IX is not paid in full by the Company within 30 days after the claim has been received by the Company, the indemnitee may at any time thereafter bring an Indemnitee Action to recover the unpaid amount of the claim and, if successful in whole or in part, the indemnitee shall also be entitled to be paid the expense of bringing and pursuing such Indemnitee Action. The only defense to an Indemnitee Action to recover on a claim for indemnification under Section 9.2 of this Article IX shall be that the conduct of the indemnitee was such that under Delaware law the Company is prohibited from indemnifying the indemnitee for the amount claimed, but the burden of proving such defense shall be on the Company. Neither the failure of the Company to have made a determination prior to the commencement of such Indemnitee Action that indemnification of the indemnitee is proper in the circumstances, nor an actual determination by the Company that the conduct of the indemnitee was such that indemnification is prohibited by Delaware law, shall be a defense to such Indemnitee Action or create a presumption that the conduct of the indemnitee was such that indemnification is prohibited by Delaware law. The only defense to an Indemnitee Action to recover on a claim for advancement of expenses under Section 9.3 of this Article IX shall be failure by the indemnitee to provide the undertaking required by Section 9.3 of this Article IX.

9.5   The Company may create a trust fund, grant a security interest, cause a letter of credit to be issued or use other means (whether or not similar to the foregoing) to ensure the payment of all sums required to be paid by the Company to effect indemnification as provided in this Article IX. The Company may purchase and maintain insurance to protect itself and any indemnitee against any expenses or liability incurred by the indemnitee in connection with any Action, whether or not the Company would have the power to indemnify the indemnitee against the expenses or liability by law or under the provisions of this Article IX.

9.6   The rights to indemnification and advancement of expenses provided for in this Article IX shall (i) not be deemed exclusive of any other rights, whether now existing or hereafter created, to which any indemnitee may be entitled under any agreement, the certificate of formation or otherwise, (ii) be deemed to create contractual rights in favor of each indemnitee who serves the Company at any time while this Section 9.6 is in effect (and each such indemnitee shall be deemed to be so serving in reliance on the provisions of this Section 9.6), (iii) continue as to each indemnitee who has ceased to have the status pursuant to which the indemnitee was entitled or was denominated as entitled to indemnification under this Article IX and shall inure to the benefit of the heirs and legal representatives of each indemnitee, and (iv) be applicable to Actions commenced after this Article IX becomes effective, whether arising from acts or omissions occurring before or after this Article IX becomes effective. Any amendment or repeal of this Article IX which has the effect of limiting in any way the rights to indemnification or advancement of expenses provided for in this Article IX shall operate prospectively only and shall not affect any action taken, or any failure to act, by an indemnitee prior to such amendment, repeal, or other provision becoming effective.

9.7   If an indemnitee is entitled under any provision of this Article IX to indemnification by the Company for some or a portion of the expenses or liabilities incurred by the indemnitee in preparation, investigation, defense, appeal or settlement of any Action or Indemnitee Action but not, however, for the total amount thereof, the Company shall indemnify the indemnitee for the portion of such expenses or liabilities to which the indemnitee is entitled.

## ARTICLE X
## GENERAL PROVISIONS

10.1  **Amendment**. This Agreement may not be amended except by a written instrument signed by the Member.

10.2  **Applicable Law**. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware.

10.3  **Conflicts with the Act.** To the full extent permitted by the Act, this Agreement shall control as to any conflict between this Agreement and the Act or as to any matter provided for in this Agreement that is also provided for in the Act.

10.4  **No Third Party Beneficiaries**. This Agreement is for the sole benefit of the Member and the officers, and no other person is intended to be a beneficiary of this Agreement or shall have any rights hereunder.

10.5  **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be considered an original.

[Remaining Portion of Page Intentionally Left Blank]

This Agreement has been executed to be effective as of the Effective Date.

SOLE MEMBER:
FOREST OIL CORPORATION

By: *[signature]*
Name: Cyrus D. Marter IV
Title: VP, General Counsel
      + Secretary

FOC 000483
EXHIBIT   B
PAGE   9   OF 20

AMENDMENT TO OPERATING AGREEMENT
OF
FOREST ALASKA HOLDING LLC

This Amendment to Operating Agreement (this "Amendment"), dated as of November 7, 2006 (the "Effective Date"), is by and among Forest Oil Corporation ("Forest") and Forest Alaska Holding LLC (the Company") and amends that certain Operating Agreement dated as of July 1, 2006 ("Operating Agreement") executed by Forest as the sole member of the Company.

WHEREAS, Forest formed the Company and has served as the sole member of the Company since its formation; and

WHEREAS, the Company has determined to amend Article V, "Management; Officers", Section 5.2, "Authority of Officers" of the Operating Agreement effective as of November 7, 2006, as follows:

1. Subparagraph "(e) Assistant Officers" is renumbered as subparagraph "(f) Assistant Officers"; and

2. A new subparagraph (e) is added as follows:

"(e) *Treasurer*. The treasurer shall have the care and custody of the Company's funds and other valuable effects, including securities, and shall maintain complete and accurate accounts of receipts and disbursements of funds, deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Member from time to time. The treasurer shall render to the president and the Member, as required, an account of all transactions and of the financial condition of the Company.

This Amendment has been executed effective as of the date first written above.

Forest Oil Corporation

By: _____
Cyrus D. Marter IV
Vice President, General Counsel
and Secretary

Forest Alaska Holding LLC

By: _____
Victor A. Wind
Vice President and Controller

063128v01

FOC 000484

EXHIBIT _B_
PAGE _10_ OF ____

OPERATING AGREEMENT
OF
FOREST ALASKA OPERATING LLC

This OPERATING AGREEMENT (this "Agreement"), dated as of September 1, 2006 (the "Effective Date"), is by Forest Oil Corporation, a New York corporation, as the sole "Member" of Forest Alaska Operating LLC.

ARTICLE I
GENERAL

1.1   **Formation**. The Member has caused to be formed a limited liability company under the Delaware Limited Liability Company Act, as amended (the "Act"). The name of the limited liability company shall be Forest Alaska Operating LLC (the "Company").

1.2   **Certificate of Formation**. The Member has caused a certificate of formation, which complies with the requirements of the Act, to be filed with the Delaware Secretary of State. The Company shall execute such further documents (including amendments to the certificate of formation) and take such further action as shall be appropriate or necessary to comply with the requirements of applicable law for the qualification and operation of a limited liability company in all jurisdictions where the Company elects to carry on its business.

1.3   **Purpose and Power**. The purpose and business of the Company shall be the conduct of any business or activity that may be lawfully conducted by a limited liability company organized pursuant to the Act, and the Company shall have all of the powers of a limited liability company conferred by the Act. Any or all of the foregoing activities may be conducted directly by the Company or indirectly through another company, subsidiary, joint venture or other arrangement.

1.4   **Term**. The Company shall have perpetual existence and shall continue until it is dissolved by the written consent of the Member. Upon the dissolution or termination of the Member, its legal representative or successor shall become a member of the Company and shall exercise all rights and powers conferred upon the Member by this Agreement.

1.5   **Additional Members**. Additional persons shall be admitted as members (each such person, a "Member") of the Company by written amendment of this Agreement executed by Forest Oil Corporation and any other Member, as applicable.

1.6   **Principal Office; Registered Agent**.

(a)   The principal office of the Company initially shall be at 707 17th Street, Suite 3600, Denver, Colorado 80202. The principal office may be changed from time to time in accordance with the applicable provisions of the Act and any other applicable law.

(b)   The location of the registered office of the Company initially shall be at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and the registered agent for service of process on the Company at such registered office shall be Corporation Services

Company. As may be necessary or desirable, the Company may appoint Corporation Services Company or such other third party service provider to serve as the Company's registered agent for service of process in such other states as may be determined by the Member and, or officers of the Company.

## ARTICLE II
## CAPITAL CONTRIBUTIONS

**2.1** **Initial Capital Contribution.** As its initial capital contribution to the Company, the Member has contributed to the Company $100.

**2.2** **Additional Capital Contributions.** The Member may, but shall not be required to, make additional capital contributions to the Company. Any such capital contributions may be in the form of cash, property, or services rendered, or a promissory note or other obligation to contribute cash, property or to perform services, or take such other form as may be allowed under the Act.

**2.3** **Loans and Other Debt.** The Company may borrow funds from any source, including without limitation the Member.

**2.4** **Return of Capital Contributions.** Capital contributions shall be expended in furtherance of the business of the Company. No interest shall be paid on capital contributions. No officer, manager or employee of the Company shall have any personal liability for the repayment of any capital contribution to the Member.

**2.5** **Enforcement of Capital Contribution Obligations.** Except as expressly agreed in writing by the Member, no person other than the Member shall have the right to enforce any obligation that the Member may undertake to contribute capital to the Company, and specifically no lender or other third party shall have any such right.

## ARTICLE III
## DISTRIBUTIONS

The Company may make distributions of cash or other assets of the Company to the Member at such times and in such amounts as the officers of the Company shall determine and direct.

## ARTICLE IV
## ALLOCATION OF PROFIT AND LOSS

**4.1** **Determination of Profit and Loss.** Profit or loss shall be determined on an annual basis and for such other periods as may be required.

**4.2** **Allocation of Profit and Loss.** The Company is and at all times shall be a business entity that, solely for federal income tax purposes, is disregarded as an entity separate from its owner. All items of Company profit, loss, income, gain, loss, deduction and credit shall, for federal income tax purposes, be attributed to the Member.

## ARTICLE V
## MANAGEMENT; OFFICERS

    5.1    **Management**. Management of the Company shall be vested in the persons appointed by the Member to act as officers of the Company. The officers of the Company shall be chosen by the Member and shall include a president and a secretary, and the Member may also choose to appoint one or more vice-presidents, a controller, a treasurer, and one or more assistant officers and any number of offices may be held by the same person. The officers of the Company shall hold their offices for such terms and shall exercise such powers and perform such duties as approved from time to time by the Member. The initial offices of the Company shall include the following:

President

Vice President

Secretary

Controller

Treasurer

    5.2    **Authority of Officers.** The officers shall have the power and authority to conduct the business of the Company:

    (a)    *President*. The president shall have the responsibility for the general and active management of the business of the Company and shall preside at any meetings of the Members.

    (b)    *Vice President*. Any vice president shall, when required or as otherwise delegated power and authority by the President or Member, exercise the powers and perform the duties of the president.

    (c)    *Secretary*. The secretary shall keep the minutes of all meetings of the Member, serve notices of meetings, affix the seal of the Company to all contracts and documents when so ordered, have charge of such other books and records of the Company as directed by the Member and shall perform all of the duties incident to the office of secretary.

    (d)    *Controller*. The controller shall be responsible for the books of account and for the preparation of financial statements, budgets and forecasts. The controller shall be responsible for the supervision of the accounting function and shall, under the supervision of the president, be responsible for the books of account and for the preparation of such other financial data as shall be assigned to the office from time to time by the Member.

    (e)    *Treasurer*. The treasurer shall have the care and custody of the Company's funds and other valuable effects, including securities, and shall maintain complete and accurate accounts of receipts and disbursements of funds, deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Member from time to time. The treasurer shall render to the president and the Member, as required, an account of all transactions and of the financial condition of the Company.

FOC 000532

EXHIBIT _B_

PAGE _13_ OF _20_

(f)   *Assistant Officers.*  When required, any assistant officers shall perform the duties and exercise the powers of their respective office.

Unless otherwise directed by the Member, the President and any vice president of the Company shall have the full power and authority on behalf of the Company to attend, act and vote at meetings of the security holders of corporations or other entities in which the Company may hold securities or interests, and shall possess and may exercise any and all rights and powers incident to the ownership of such securities or other interests. The Member may authorize the President to confer like powers upon any other person or persons.

5.3   **Removal of Officers; Resignation.** The officers of the Company shall serve at the pleasure of the Member and may be removed at any time, with or without cause, by the Member. An officer may resign at any time and, unless specified in a written notice, the resignation shall take effect upon receipt of such notice by the President or the Member and acceptance of the resignation shall not be necessary to make it effective.

5.4   **Reliance by Third Parties.**  No third party dealing with the Company shall be required to ascertain whether an officer is acting in accordance with the provisions of this agreement. All third parties may rely upon a document signed by an officer as binding the Company.

5.5   **Compensation and Reimbursements.**  The salaries and other compensation of the officers and any employees of the Company shall be fixed by the Member. The officers shall be entitled to reimbursement by the Company for reasonable out-of-pocket expenses incurred on behalf of the Company.

## ARTICLE VI
## MEMBERS

6.1   **Sole Member; Admission of Additional Members.**  Forest Oil Corporation is the sole Member of the Company. Except as provided in Section 6.4, a person may be admitted as an additional Member of the Company only upon the written consent and approval of the Member.

6.2   **Participation.** Except as set forth in this Agreement, the Member, in its capacity as a member of the Company, shall take no part in the control, management, direction, or operation of the affairs of the Company, which shall conducted by the officers of the Company, and shall have no power to bind the Company.

6.3   **Meetings.** Meetings of the Member shall not be required for any purpose. All actions of the Member may be evidenced by a written consent describing the action taken, signed by the Member. Any action evidenced by such a written consent is effective on the date the consent is signed by the Member, unless the consent specifies a different effective date.

6.4   **Transfer of Interest**. The interest of the Member in the Company may be transferred by the Member voluntarily or by operation of law. Upon transfer of the entirety of the Member's interest in the Company, the transferee shall, without further documentation or action, become the member of the Company.

4

6.5 **Conflicts of Interest.** The Member shall be entitled to engage in other activities and businesses, including, without limitation, activities and businesses competitive with the activities and business of the Company and shall not be required to give the Company the opportunity to participate in, or benefit from, any such activities or businesses. The Member shall not be deemed to violate any duty or obligation to the Company merely because its conduct furthers its own interest. The Member may lend money to, borrow money from, act as a surety, guarantor or endorser for, guarantee or assume one or more obligations of, provide collateral for, and transact other business with, the Company, and in doing so it shall have the same rights and obligations with respect to any such matters as those of a person who is not a member of the Company.

## ARTICLE VII
## ACCOUNTING AND REPORTING

7.1 **Books.** The Company shall maintain complete and accurate books of account at the principal office of the Company or at such other locations as approved by the Member. The Company shall provide the Member with any information requested by the Member relating to the business and accounts of the Company.

7.2 **Reports.** The Company shall operate on the calendar year and the Company's books of account shall be closed promptly after the end of each calendar year. As soon as practicable after the end of each calendar year, the officers shall cause to be prepared a report that shall include financial statements, which may include a statement of receipts, expenditures, profits and losses for the year, and such additional statements with respect to the status of the Company's assets, liabilities, operations, income and the distribution of Company funds as are necessary to advise the Member properly about its investment in the Company.

## ARTICLE VIII
## DISSOLUTION AND TERMINATION

8.1 **Final Accounting.** In the event of the dissolution of the Company, a proper accounting shall be made as provided in Section 8.2 below, from the date of the last previous accounting to the date of dissolution.

8.2 **Liquidation.** Upon the dissolution of the Company, the officers, or if the officers are not able to act, a person or persons selected by the Member, shall act as liquidator to wind up the Company. The liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and businesslike manner. All proceeds from liquidation shall be distributed in the following order of priority: (i) to the payment of debts and liabilities of the Company and the expenses of liquidation (including loans made by the Member to the Company); (ii) to the setting-up of such reserves as the liquidator may reasonably deem necessary for any contingent liabilities of the Company; and (iii) to the Member.

8.3 **Distribution in Kind.** The liquidator, in its absolute discretion, may distribute one or more of the Company's assets in kind to the person or entity entitled to receive the proceeds from such asset.

FOC 000534
EXHIBIT _B_
PAGE _15_ OF _20_

8.4   **Certificate of Cancellation.** Upon the complete distribution of the Company's assets as provided in this Article VIII, the Company shall be terminated and the person acting as liquidator shall file a certificate of cancellation and take such other actions as may be necessary to terminate the Company.

## ARTICLE IX
## LIMITATION OF LIABILITY; INDEMNIFICATION

9.1   **Exculpation.** Neither the Member nor any officer of the Company shall have any liability under a judgment, decree, or order of a court, or in any other manner, for any debt, obligation, or liability of the Company. No officer of the Company shall be liable to the Company or the Member for any monetary damages for breach of contract or breach of duties, including fiduciary duties, except for liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

9.2   **Indemnification.** Except as prohibited by law, the Member and every officer of the Company shall be entitled as a matter of right to be indemnified by the Company against all expenses and liability (as those terms are defined below) incurred by such person in connection with any actual or threatened claim, action, suit or proceeding, civil, criminal, administrative, investigative or other, whether brought by or in the right of the Company or otherwise, in which such person may be involved, as a party or otherwise, by reason of such person being or having been a Member or officer of the Company or of a subsidiary of the Company or by reason of the fact that such person is or was serving at the request of the Company as an officer, employee, fiduciary or other representative of another corporation, partnership, joint venture, trust, employee benefit plan or other entity (such claim, action, suit or proceeding hereinafter being referred to as "Action"); provided, however, that no such right to indemnification shall exist with respect to an Action brought by an indemnitee (as defined below) against the Company (an "Indemnitee Action") except as provided in the last sentence of this Section 9.2. Any person who is not a Member or officer of the Company may be similarly indemnified in respect of service to the Company or to another such entity at the request of the Company to the extent the Member or Members of the Company at such time designate such persons as entitled to the benefits of this Article IX. As used in this Article IX, "indemnitee" shall include each Member and officer of the Company and each other person designated by the Member as entitled to the benefits of this Section 9.2; "expenses" means all expenses actually and reasonably incurred, including fees and expenses of counsel selected by an indemnitee, and "liability" means all liability incurred, including the amounts of any judgments, excise taxes, fines or penalties and any amounts paid in settlement. An indemnitee shall be entitled to be indemnified pursuant to this Section 9.2 against expenses incurred in connection with an Indemnitee Action only if (i) the Indemnitee Action is instituted under Section 9.4 of this Article IX and the indemnitee is successful in whole or in part in such Indemnitee Action, (ii) the indemnitee is successful in whole or in part in another Indemnitee Action for which expenses are claimed, or (iii) the indemnification for expenses is included in the settlement of, or is awarded by a court in, such other Indemnitee Action.

9.3   Every indemnitee shall be entitled as a matter of right to have the expenses of the indemnitee in defending any Action or in bringing and pursuing any Indemnitee Action under Section 9.4 of this Article IX paid in advance by the Company prior to final disposition of the

Action or Indemnitee Action provided that the Company receives a written undertaking by or on behalf of the indemnitee to repay the amount advanced if it should ultimately be determined that the indemnitee is not entitled to be indemnified for the expenses.

9.4     If a written claim for indemnification under Section 9.2 of this Article IX or for advancement of expenses under Section 9.3 of this Article IX is not paid in full by the Company within 30 days after the claim has been received by the Company, the indemnitee may at any time thereafter bring an Indemnitee Action to recover the unpaid amount of the claim and, if successful in whole or in part, the indemnitee shall also be entitled to be paid the expense of bringing and pursuing such Indemnitee Action. The only defense to an Indemnitee Action to recover on a claim for indemnification under Section 9.2 of this Article IX shall be that the conduct of the indemnitee was such that under Delaware law the Company is prohibited from indemnifying the indemnitee for the amount claimed, but the burden of proving such defense shall be on the Company. Neither the failure of the Company to have made a determination prior to the commencement of such Indemnitee Action that indemnification of the indemnitee is proper in the circumstances, nor an actual determination by the Company that the conduct of the indemnitee was such that indemnification is prohibited by Delaware law, shall be a defense to such Indemnitee Action or create a presumption that the conduct of the indemnitee was such that indemnification is prohibited by Delaware law. The only defense to an Indemnitee Action to recover on a claim for advancement of expenses under Section 9.3 of this Article IX shall be failure by the indemnitee to provide the undertaking required by Section 9.3 of this Article IX.

9.5     The Company may create a trust fund, grant a security interest, cause a letter of credit to be issued or use other means (whether or not similar to the foregoing) to ensure the payment of all sums required to be paid by the Company to effect indemnification as provided in this Article IX. The Company may purchase and maintain insurance to protect itself and any indemnitee against any expenses or liability incurred by the indemnitee in connection with any Action, whether or not the Company would have the power to indemnify the indemnitee against the expenses or liability by law or under the provisions of this Article IX.

9.6     The rights to indemnification and advancement of expenses provided for in this Article IX shall (i) not be deemed exclusive of any other rights, whether now existing or hereafter created, to which any indemnitee may be entitled under any agreement, the certificate of formation or otherwise, (ii) be deemed to create contractual rights in favor of each indemnitee who serves the Company at any time while this Section 9.6 is in effect (and each such indemnitee shall be deemed to be so serving in reliance on the provisions of this Section 9.6), (iii) continue as to each indemnitee who has ceased to have the status pursuant to which the indemnitee was entitled or was denominated as entitled to indemnification under this Article IX and shall inure to the benefit of the heirs and legal representatives of each indemnitee, and (iv) be applicable to Actions commenced after this Article IX becomes effective, whether arising from acts or omissions occurring before or after this Article IX becomes effective. Any amendment or repeal of this Article IX which has the effect of limiting in any way the rights to indemnification or advancement of expenses provided for in this Article IX shall operate prospectively only and shall not affect any action taken, or any failure to act, by an indemnitee prior to such amendment, repeal, or other provision becoming effective.

9.7    If an indemnitee is entitled under any provision of this Article IX to indemnification by the Company for some or a portion of the expenses or liabilities incurred by the indemnitee in preparation, investigation, defense, appeal or settlement of any Action or Indemnitee Action but not, however, for the total amount thereof, the Company shall indemnify the indemnitee for the portion of such expenses or liabilities to which the indemnitee is entitled.

## ARTICLE X
## GENERAL PROVISIONS

10.1    **Amendment**.  This Agreement may not be amended except by a written instrument signed by the Member.

10.2    **Applicable Law**.  This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware.

10.3    **Conflicts with the Act.**  To the full extent permitted by the Act, this Agreement shall control as to any conflict between this Agreement and the Act or as to any matter provided for in this Agreement that is also provided for in the Act.

10.4    **No Third Party Beneficiaries**.  This Agreement is for the sole benefit of the Member and the officers, and no other person is intended to be a beneficiary of this Agreement or shall have any rights hereunder.

10.5    **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be considered an original.

[Remaining Portion of Page Intentionally Left Blank]

This Agreement has been executed to be effective as of the Effective Date.

SOLE MEMBER:
FOREST OIL CORPORATION

_____
Name: Cyrus D. Marter IV
Title: Vice President, General Counsel and Secretary

AMENDMENT TO OPERATING AGREEMENT
OF
FOREST ALASKA OPERATING LLC

This Amendment to Operating Agreement (this "Amendment"), dated as of October 31, 2006 (the "Effective Date"), is by and among Forest Oil Corporation ("Forest"), Forest Alaska Holding LLC ("Forest Holding"), and Forest Alaska Operating LLC (the "Company") and amends that certain Operating Agreement dated as of September 1, 2006 ("Operating Agreement") executed by Forest as the sole member of the Company.

WHEREAS, Forest formed the Company and has served as the sole member of the Company since its formation; and

WHEREAS, Forest has transferred and assigned all of its interests in the Company to Forest Holding and Forest Holding desires to continue as the sole member of the Company;

NOW THEREFORE, for good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties agree:

1. Pursuant to Article VI of the Operating Agreement, the Company hereby acknowledges the assignment of all of Forest's interests in the Company to Forest Holding effective as of October 31, 2006.

2. Forest Holding is hereby admitted as the sole Member of the Company and the Operating Agreement is hereby amended to refer to Forest Holding as the "Member" from and after October 31, 2006.

This Amendment has been executed effective as of the date first written above.

Forest Oil Corporation

By: _____
Cyrus D. Marter IV
Vice President, General Counsel
and Secretary

Forest Alaska Operating LLC

By: _____
Victor A. Wind
Vice President and Controller

Forest Alaska Holding LLC

By: _____
Leonard C. Gurule
President

062803v01

FOC 000539

EXHIBIT _B_
PAGE _20_ OF _20_