JEFFREY M. FELDMAN
Alaska Bar No. 7605029
R. SCOTT TAYLOR
Alaska Bar No. 8507110
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:   (907) 272-3538
Facsimile:    (907) 274-0819
Email:         feldman@frozenlaw.com
Email:         taylor@frozenlaw.com

Attorneys for Defendant Forest Oil Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| MARATHON OIL COMPANY,<br><br>            Plaintiff,<br><br>      v.<br><br>FOREST OIL CORPORATION,<br>PACIFIC ENERGY ALASKA<br>OPERATING LLC, UNION OIL<br>COMPANY OF CALIFORNIA, d/b/a<br>UNOCAL ALASKA,<br><br>            Defendants. | Case No. 3:06-cv-00102-TMB<br><br>**MOTION FOR<br>SUMMARY JUDGMENT** |

## I.     INTRODUCTION

Defendant Forest Oil Corporation ("Forest Oil"), by and through its attorneys of record, Feldman Orlansky & Sanders, hereby moves for summary judgment dismissal of all claims asserted by plaintiff Marathon Oil Company ("Marathon"). Each

count in Marathon's Complaint is based on its claim that Union Oil Company of California ("Unocal"), as the Operator of the Trading Bay Unit in Cook Inlet, Alaska, improperly changed the methodology for allocating costs between the oil and gas interests on the Steelhead Platform, which is within the Trading Bay Unit. Under the Trading Bay Unit Operating Agreement ("Operating Agreement"), Unocal, as the Unit Operator, is obligated to charge the Unit's working interest owners "a fair and equitable apportionment of risks and liabilities, investment, and operating and other costs ...."[1] Since Marathon, as a working interest owner, has no contractual right to any particular cost allocation methodology, and since there is no material dispute of fact that Unocal's cost allocation has been "fair and equitable," there is no basis for Marathon's claims. Moreover, Marathon can have no cost-accounting claim against Forest Oil, which is merely another working interest owner with no responsibility for Trading Bay Unit operations or cost apportionment. Marathon can point to no express contractual duty under the Operating Agreement that has been breached. Accordingly, there is no genuine issue as to material fact and defendants are entitled to summary judgment dismissal as a matter of law.

---

[1]    Operating Agreement, at Section 16.3 (attached as Exhibit A, at p. 35).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 2 of 20

## II.    STATEMENT OF UNDISPUTED FACTS

Marathon is a working interest owner in offshore gas leases located in the Trading Bay Unit in Cook Inlet, Alaska.[2]  Forest Oil and Unocal own working interests in offshore oil and gas leases located in the Trading Bay Unit.  Marathon filed its Complaint in this case relating to costs of production from these leases through the Steelhead Platform, which is in the Trading Bay Unit.

The Steelhead Platform was constructed by Marathon and Unocal in the 1980s.  Although primarily constructed to service gas wells, one leg of the Steelhead Platform is used for oil production.[3]  At the Steelhead Platform, oil and natural gas are produced from different Working Interest Participating Areas ("WIPAs"), with gas production coming from a WIPA known as the Grayling Gas Sands WIPA.  In 1996 Marathon sold its interest in the oil leases underlying the Steelhead Platform to Forcenergy, Inc., which was subsequently acquired by Forest Oil.  Marathon retained its interest in the gas leases underlying the platform.  At all times relevant to Marathon's claims in this case, the natural gas working interests served by the Steelhead Platform were owned 51.20% by Marathon and 48.80% by Unocal.  The oil WIPAs served by the Steelhead Platform were owned 53.20% by Unocal and 46.80% by Forest Oil.[4]

---

[2]    The facts in this section are taken directly from the allegations in Marathon's Complaint, unless otherwise noted as from the deposition of Donald Page, Unocal's accounting and finance manager for Alaska.

[3]    Donald Page Depo. at depo. p. 22 (excerpts attached as Exhibit B).

[4]    *Id.* at depo. p. 33; Complaint at ¶ 10.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                        Page 3 of 20

The operation of the Steelhead Platform is subject to the Trading Bay Unit Operating Agreement. The original Operating Agreement was entered into in 1967, and has been modified and amended a number of times since. (A Conformed Version of the Trading Bay Unit Operating Agreement, incorporating the First through Eighth Amendments and the First through Third Supplemental Agreements, is attached as Exhibit A.) Under the Operating Agreement, Unocal is the Operator of the Unit, as well as the Sub-Operator of the Steelhead Platform.[5] As Operator, Unocal manages and operates the Steelhead Platform on behalf of itself and the working interest owners Marathon and Forest Oil. Under the Operating Agreement, Unocal is charged with apportioning all costs incurred in the development and operation of each WIPA to the parties in that WIPA based on their respective ownership interests.[6]

In the accord with its contractual obligations under the Operating Agreement, Unocal established cost centers associated with the Steelhead Platform, billing to the gas owners all costs related to production from the platform's gas wells and billing to the oil owners all costs related to production from the platform's oil wells.[7] Wherever possible, workers on the platform were required to account for the percentage of their time spent on oil versus gas assets and the owners of the oil and gas WIPAs were billed accordingly.[8] For shared platform costs that could not be specifically allocated to

---

[5]    Unocal replaced Marathon as the Sub-Operator of the Steelhead Platform in 1994. Exhibit B at depo. pp. 10, 35.

[6]    Exhibit A at p. 24 (Section 10.2).

[7]    Exhibit B at depo. pp. 34-35.

[8]    *Id.* at depo. pp. 41-42.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 4 of 20

oil or gas production, Unocal created a "miscellaneous facility" cost center.[9]  Costs that support both oil and gas interests, such as transportation for normal crew change-out and catering, would be charged to this shared "miscellaneous facility" cost center.[10]

The Operating Agreement requires "a fair and equitable apportionment" of platform costs among the working interests served by the platform.[11]  For the shared costs charged to the "miscellaneous facility" cost center, the Operator must come up with a methodology to fairly allocate these costs to the respective oil and gas WIPAs.  Prior to January 1, 2002, Unocal apportioned these shared costs based on the "total fluids" produced on the platform by the respective WIPAs.[12]  This "total fluids" methodology required converting gas production to its Barrels of Oil Equivalent (BOE).  The fluids chargeable to the oil and gas WIPAs, respectively, were the total of BOE production of oil or gas plus the water that was produced together with that oil or gas.  The "total fluids" methodology allocated the shared "miscellaneous facility" costs to the oil and gas

---

[9]     *Id.* at depo. pp. 39-43.  Unocal titled this "miscellaneous" cost center "Steelhead Facility and Crane" and assigned it "Facility Allocation No. 1007096000."

[10]     *Id.* at depo. pp. 51-52, 60.

[11]     Exhibit A at p. 35 (Section 16.3); Exhibit B. at depo. p. 32.

[12]     Exhibit B at depo. p. 117.  Marathon's complaint incorrectly implies that all production costs for the Steelhead Platform were allocated between the oil WIPAs and the gas WIPA using the "total fluids" methodology.  Complaint at ¶¶ 18, 25.  But the initial disclosures and depositions in this case all confirm that "total fluids" was used only to allocate the shared costs in the "miscellaneous" cost center, No. 1007096000, and the parties do not dispute that this case concerns only this one cost center.  *See* Exhibit B at depo. pp. 34-39.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                          Page 5 of 20

WIPAs based on their respective "total [fluid] throughput" (BOE plus water) for the previous year.[13]

By the end of 2001, electric submersible pumps (ESPs) were being installed in the Steelhead Platform's five oil wells. The expensive ESPs were much more efficient and effective, but they produced much more water along with enhanced oil production.[14] Managers at Unocal believed that it would not be fair and equitable for the owners of the oil WIPAs, who were investing tens of millions of dollars to make the platform more efficient with ESPs, to be allocated more of the shared expenses because of the additional water produced by the ESPs, especially when the produced water was actually processed at an on-shore facility, paid for by the oil owners, and did not increase platform operating costs.[15] Since the last of the oil wells was scheduled to be converted to an ESP by the end of 2001, Unocal decided to eliminate water from the shared cost allocation methodology beginning in January 2002.[16] This new methodology, referred to simply as "BOE", compared the produced barrels of oil to the produced gas equivalent. Beginning in January 2002, the platform costs that could not be specifically charged to

---

[13]    *Id.* at depo. p. 117.

[14]    *Id.* at depo. pp. 120-124; 155.

[15]    *Id.* at depo. p. 120.  At the same time, Unocal reconfigured the allocation of the cost center for the generator system on the Steelhead Platform.  Because the ESPs used "a whole lot more electric power" than when the oil wells were on gas lift only, Unocal considered it fair and equitable to shift most of the cost of power generation to the platform's oil WIPAs.  Exhibit B at depo. p. 94.

[16]    *Id.* at depo. pp. 129-130.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 6 of 20

the oil or gas WIPAs (the "miscellaneous facility" cost center) were allocated by the Operator based on BOE production.

Unocal considered this new cost allocation methodology to be fair and equitable for a number of reasons:

- the ESP conversion increased water production "through the roof" and it was unfair to charge the oil owners for this increased water production when the water was not processed on the platform and did not increase platform operational costs;[17]

- the Steelhead Platform was designed and built by the Grayling Gas Sands owners, with oil production as a side business, so it made sense that the gas owners would pay more of the shared costs;[18]

- the BOE allocation follows the revenue, so the gas owners, who were making the most money off the platform, would pay more of the shared costs;[19]

- after ESP conversion, the oil wells required little maintenance, and therefore less intervention by the operators, while the platform's gas production had "a whole lot more moving parts;"[20]

- a lot of other expenses associated with the Steelhead Platform were already being directly charged to the oil owners;[21]

- "BOE was a standard methodology throughout the industry to allocate from, and it just seemed like it was a lot more accurate than any of the other methodologies [Unocal] had when considering all the intangibles associated with the Steelhead."[22]

---

[17]    *Id.* at depo. pp. 123, 155-56, 166, 175-76.

[18]    *Id.* at depo. pp. 134, 177.

[19]    *Id.* at depo. p. 132.

[20]    *Id.* at depo. p. 133.

[21]    *Id.* at depo. p. 134.

[22]    *Id.*

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                                    Page 7 of 20

- BOE was Unocal's best attempt and ability "to come up with a fair and equitable way of allocating costs for the miscellaneous slice of the pie on the Steelhead Platform."[23]

In its annual audit of Unocal's 2002 billings, Marathon took exception to the change in allocation methodology for the Steelhead Platform's miscellaneous costs from "total fluids" to "BOE." Although this audit exception has never been formally resolved, Marathon filed this federal action on May 3, 2006, seeking a declaration and retroactive accounting from this court applying the "total fluids" methodology to the allocation of costs on the Steelhead Platform from January 1, 2002. Marathon also seeks money judgments against Unocal and Forest Oil for the shared costs that would be shifted to the oil WIPAs if the "total fluids" methodology were contractually required and retroactively applied.

## III.   ARGUMENT

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment in its favor as a matter of law.[24] Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[25] Further, summary judgment is appropriate on "questions of interpretation of the meaning of written documents" where the court can

---

[23]    *Id.* at depo. p. 135.

[24]    FED. R. CIV. P. 56(c).

[25]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                Page 8 of 20

resolve the questions without having to weigh "conflicting extrinsic evidence as to the parties' intent."[26]

Marathon's Complaint seeks damages for breach of contract, unjust enrichment, an accounting, and for a declaration of the proper methodology for allocation of costs between oil and gas operations on the Steelhead Platform. All of these claims are based on Marathon's false assertion that Unocal is contractually bound to apply a "total fluids" methodology to the allocation of Steelhead's operating costs. As demonstrated below, there is no support for this proposition in the contract language of the Operating Agreement, which governs the operation of the Trading Bay Unit. Resolution of Marathon's claims is purely a legal exercise of contract interpretation that can be accomplished by this court on summary judgment. One of the principal purposes of the summary judgment rule can be accomplished here: "to isolate and dispose of factually unsupported claims."[27]

### A.    THE OPERATOR HAS NO CONTRACTUAL OBLIGATION TO ALLOCATE THE PLATFORM'S COSTS BASED ON A "TOTAL FLUIDS" METHODOLOGY.

Counts I and III of Marathon's Complaint allege breach of contract by Unocal and Forest Oil, respectively, claiming that somehow the Unit Operating Agreement obligated the Operator to allocate costs among the users of the Steelhead Platform "by using the total fluids methodology."[28] But under the express terms of the

---

[26]     *Sprucewood Inv. Corp. v. Alaska Housing Finance Corp.*, 33 P.3d 1156, 1161 (Alaska 2001).

[27]     *Celotex Corp.*, 477 U.S. at 323-24.

[28]     Complaint at ¶¶ 37, 38, 46, 47.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                      Page 9 of 20

Operating Agreement, Unocal was only contractually obligated to make a "fair and equitable apportionment" of the Steelhead Platform's operating costs. Nothing in the Operating Agreement, or any other agreement entered into by the parties, requires that shared platform costs be allocated using a "total fluids" methodology.

The Operating Agreement "shall be interpreted in accordance with the laws of the State of Alaska."[29]  Interpretation of a contract is ordinarily a question of law that can be decided on summary judgment.[30]  When contract language is "clear and unambiguous," a court construes the contract "solely according to its written terms."[31]

The express written terms of the Operating Agreement require a "fair and equitable" apportionment of platform costs.  After the oil interest owners installed ESPs in the platform's oil wells, continuing use of a "total fluids" methodology for allocating shared costs would have been neither fair nor equitable; on the contrary, it would have been in breach of the Operating Agreement's express terms.  Marathon's Complaint and all available evidence raise no genuine factual dispute that Unocal's allocation of the platform's costs to the working interest owners was at all times "fair and equitable" and in compliance with the unambiguous terms of the Operating Agreement.  There is no evidence of a breach of contract and the defendants are entitled to dismissal of these claims as a matter of law.

---

[29]    Exhibit A at p. 50 (Section 31.2).

[30]    *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004).

[31]    *North Pacific Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 579 (Alaska 2005); *Norville*, 84 P.3d at 1004 (Alaska 2004).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                          Page 10 of 20

1.    **The Trading Bay Unit Operating Agreement gives the Operator discretion to allocate costs among the working interest owners.**

Unocal is both the Operator of the Trading Bay Unit and the Sub-Operator of the Steelhead Platform.[32]   Under both the Trading Bay Unit Agreement and the Trading Bay Operating Agreement, the Operator is delegated the authority and discretion to allocate and charge operating costs to the working interest owners.  The Operator is "the party designated to conduct the Joint Operations" of the Unit.[33]  "[T]he exclusive right, privilege, and duty of exercising any and all rights of the parties" under the Unit Agreement is "delegated to and shall be exercised by the Unit Operator ...."[34]  The Unit Operator is "responsible for keeping correct books, accounts and records of Unit operations, coordinating any accounting work being done by various Sub-Operators, and sending to each party, in accordance with the Accounting Procedures in Exhibit 'C', a statement incorporating costs and production accounting."[35]  The Accounting Procedures incorporated into the Operating Agreement specifically provide that the "Operator shall bill Non-Operators on or before the last day of each month for their proportionate share of the Joint Account for the proceeding month."[36]  Specifically with respect to the use of wells, platforms, or production facilities, the Operating Agreement provides that "*a fair*

---

[32]    Exhibit A at p. 17 (Sections 7.1 & 7.2).

[33]    Exhibit A at p. 53 (Accounting Procedure attached as Exhibit C and incorporated into the Operating Agreement at ¶ 1).

[34]    Exhibit C at p. 3 (Excerpt of Unit Agreement for Trading Bay Unit Area, ¶ 8).

[35]    Exhibit A at p. 19 (Section 8.1 B.).

[36]    Exhibit A at p. 53 (Accounting Procedure at ¶ 2).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                     Page 11 of 20

*and equitable apportionment* of risks and liabilities, investment, and *operating and other costs* shall be made between the Parties thereof."[37]

The governing contract for cost allocation is the Unit Operating Agreement and its attached Accounting Procedures. The Operating Agreement defers to the Operator to determine operations of the Steelhead Platform and to fairly and equitably charge costs to the working interest owners. Marathon's Complaint admits: "Pursuant to Section 16.3 of the Unit Operating Agreement, upon use of a platform or other production facility subject to the agreement, a fair and equitable apportionment of costs shall be made to the parties to the agreement."[38]

This unambiguous language cannot be construed to require any specific cost-allocation methodology. The Operator clearly has discretion to allocate a platform's operating costs fairly and equitably between the parties to the Operating Agreement. As a matter of law, this court must find that the Operating Agreement does not require that the Operator allocate platform costs "using the total fluids methodology" as alleged in Counts I and III of Marathon's Complaint. Unocal's change in methodology to a more fair and equitable allocation of the shared platform costs could not constitute a breach of contract.

---

[37]    Exhibit A at p. 35 (Section 16.3) (emphasis added); Complaint at ¶ 16.

[38]    Complaint at ¶ 16.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 12 of 20

2.    **No other contracts or agreements among the parties require a "total fluids methodology" for allocating costs on the Steelhead Platform.**

While claiming a breach of the Operating Agreement, Marathon's Complaint states that the parties entered into a Second Supplemental Agreement and a Third Supplemental Agreement, which contain identical clauses requiring that "operating expenses of a facility shall be borne and paid on a thru-put basis" – that is, by a "total fluids" methodology.[39]  By their express terms, neither Supplemental Agreement applies to the platform production costs at issue in this case.  Both Supplemental Agreements apply only to "Applicable Facilities," which are enumerated as "facilities, or portions thereof, which are determined by the owners thereof to be either 'Permanently Surplus' and are therefore available for purchase, or 'Temporarily Surplus' and are therefore available for use on a rental basis."[40]  The Steelhead Platform itself is not an "applicable facility" covered by these agreements, which apply only to "surplus" facilities. Moreover, both Supplemental Agreements incorporate the Operating Agreement's provision that "a fair and equitable apportionment of risks and liabilities, investment, and operating and other costs shall be made." And the operating costs of the whole platform have never been allocated between the working interest owners on a "thru-put" or "total fluids" methodology.[41]  Neither the plain language of these Supplemental Agreements,

---

[39]    *Id.* at ¶ ¶ 21-24 (emphasis added).

[40]    Exhibits D & E at Section II (Second Supplemental Agreement and Third Supplemental Agreement to Unit Operating Agreement).

[41]    Exhibit B at depo. pp. 156-157.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                     Page 13 of 20

nor the course of conduct of the parties, evidences a contractual obligation to allocate platform costs among the oil and gas owners using a "total fluids" methodology.

### 3. No Operator of the Steelhead Platform, including Marathon, has used a "total fluids methodology" for allocating all platform costs.

Although Marathon's Complaint avers that a "total fluids" methodology has been used to allocate all production costs on the Steelhead Platform, that has never been the case. Even when Marathon itself was the Sub-Operator of the Steelhead Platform, prior to 1994, it allocated platform costs associated with the gas wells directly to the gas owners and costs associated with the oil wells directly to the oil owners.[42] No other allocation method would be fair and equitable. Prior to the installation of the ESPs, only shared platform costs that could not be specifically attributed to oil or gas production (the "miscellaneous facility" costs) were allocated based on "total fluids." And it was only the allocation methodology of those shared "miscellaneous" costs that was changed after the ESPs rendered the "total fluids" methodology unfair and inequitable. Marathon's claimed reliance on a contractual right to a "total fluids" methodology for the allocation of platform costs is belied by the consistent conduct of the platform's Operator to allocate as many costs as possible directly to the gas and oil interest owners, respectively. The subsequent conduct of the parties may evidence their expectations and intent in entering a contract.[43] No "course of performance and course of dealing" indicates a contractual agreement "to use the total fluids methodology to allocate

---

[42]    Exhibit B at depo. pp. 34-35.

[43]    *Norville*, 84 P.3d at 1004.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                        Page 14 of 20

costs among the oil and gas WIPAs served by the Steelhead Platform."[44]  There is no evidence here that the parties ever contemplated that "total fluids" would be used to allocate all platform costs.

### 4.    Forest Oil's only contractual duty was to reimburse the operator for its assessed share of the platform's operating costs.

Marathon acknowledges that under Section 19.1 of the Unit Operating Agreement, costs are incurred and initially paid by <u>the Operator</u> for the benefit of the working interest owners and each party thereafter reimburses <u>the Operator</u> for its share of the costs.[45]  Each party grants a lien to the Operator as security for its share of the costs, and <u>the Operator</u> has the "right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien."[46]  But Unocal, not Marathon, is the Operator and Unocal has not claimed that Forest Oil failed to reimburse its share of the costs of the Steelhead Platform.  The Operator has not brought this suit to enforce collection of such indebtedness.

Nonetheless, Marathon claims in this case that Forest Oil breached a contractual "duty to pay for the operation expenses related to oil production on the Steelhead Platform."[47]  Marathon cites its 1996 "Purchase and Sale Agreement By and Between Marathon and Forcenergy, Inc." as the source of this contractual obligation.[48]

---

[44]    Complaint at ¶ 25.

[45]    Complaint at ¶ 17.

[46]    Exhibit A at p. 43 (Section 19.5).

[47]    Complaint at ¶ 47.

[48]    *Id.* at ¶ 45.

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 15 of 20

Since Forest Oil subsequently acquired Forcenergy, Inc., Marathon reasons that Forest

Oil is bound by the terms of the Purchase and Sale Agreement making Forest Oil

"responsible for all necessary and reasonable expenses incurred for the operation of the

oil lease interests acquired."[49]  Even assuming this to be true, there is no evidence that

Forest Oil has failed to pay any such expenses, which under the Unit Operating

Agreement were incurred and billed solely by the Operator – not by Marathon.  The plain

contractual language obligates Forest Oil (and Marathon) to reimburse the Operator.  As

a matter of law, Marathon can have no breach of contract claim against Forest Oil for

failure to pay platform costs.

### B.    MARATHON CANNOT OBTAIN EQUITABLE RELIEF FOR THE BREACH OF AN EXPRESS CONTRACT.

In Counts II and IV of its Complaint, Marathon seeks damages for "unjust

enrichment," which is a judicially created quasi-contractual remedy.  A fundamental tenet

of equity jurisprudence is that one seeking equitable relief must show either that there is

no remedy at law or that the remedy at law is inadequate.[50]  Here, Marathon is pursuing

an adequate remedy at law: its breach of contract claims.  It is well settled in Alaska that

an implied contract theory cannot be relied on when an express contract covers the same

subject matter.[51]  Because Marathon alleges a breach of the Operating Agreement, an

---

[49]    *Id.* at ¶ 46.

[50]    *Knaebel v. Heiner,* 663 P.2d 551, 553 (Alaska 1983).

[51]    *Mitford v. de Lasala,* 666 P.2d 1000, 1006 n. 1 (Alaska 1983); *B.B. & S. Construction Co. v. Stone,* 535 P.2d 271, 275 n. 8 (Alaska 1975).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                              Page 16 of 20

express contract, it cannot also seek recovery on an implied contract theory.[52]  Moreover,

even with all inferences drawn in Marathon's favor, there are no facts indicating that the

defendants were in any way unjustly "enriched" by a change in allocation methodology

implemented to maintain a fair and equitable allocation of the platform's miscellaneous

shared costs.

C.    **THERE IS NO LEGAL BASIS FOR MARATHON'S REQUEST THAT THE COURT PERFORM ITS OWN RETROSPECTIVE ACCOUNTING OF THE COSTS OF THE STEELHEAD PLATFORM ALLOCATED BY THE OPERATOR.**

Count V of Marathon's Complaint requests this court to perform a

retrospective accounting of operating costs on the Steelhead Platform from January 1,

2002.  Marathon's Complaint cites no jurisdictional basis for this requested relief.  The

Operating Agreement delegates all Unit accounting to the Operator, "in accordance with

Exhibit 'C' [Accounting Procedure Offshore Joint Operations, produced by the Council

of Petroleum Accountants Societies]."[53]  The Operating Agreement provides that the joint

interest owners have the right to audit the Operator's records pertaining to Unit

operations.[54]    Disputed claims are to be handled by the Unit's "Accounting

Subcommittee" or "by a telephone poll" of "the Operator['s] and Non-Operators[']

---

[52]    In a pending case where the Unit Operator, Unocal, claimed "unjust enrichment" and sought recovery from Forest Oil for unreimbursed costs on another platform in the Trading Bay Unit, Judge Beistline dismissed the claim on summary judgment, reasoning that Unocal was "not entitled to obtain equitable relief for the breach of an express contract [the Operating Agreement], an action at law.  Unocal's remedy at law is adequate."  *Forest Oil Corp. v. Unocal*, Case No. 3:05-cv-00078-RRB at Docket 89. Similarly, here Marathon is not entitled to equitable relief for an alleged breach of the Operating Agreement.

[53]    Exhibit A at pp. 43, 53-58.

[54]    *Id.* at pp. 50 (Section 31.1), 53 (Accounting Procedure at ¶ 5).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 17 of 20

accounting representatives."[55]  "If agreement still cannot be reached, the Accounting

Subcommittee will the[n] refer the matter to the Unit Owners Committee for resolution

and settlement."[56]  There is no basis in law or contract for the court to undertake the

burdensome and specialized task of auditing the Steelhead Platform's operating costs.

> ### D. THIS COURT SHOULD DECLARE THAT UNDER THE OPERATING AGREEMENT, THE RESPECTIVE RIGHTS OF THE PARTIES ARE TO PAY THEIR FAIR AND EQUITABLE SHARES OF THE PLATFORM'S OPERATING COSTS AS ALLOCATED TO THEM BY THE OPERATOR.

Count VI of Marathon's Complaint seeks a declaratory judgment from this

court that "pursuant to the agreements of the parties, the proper methodology for

allocation of costs is the 'total fluids' methodology, and that all parties are required to

apply that methodology [to] the allocation of costs on the Steelhead platform."[57]  This

court has authority to issue a declaratory judgment only in a case of an actual

controversy.[58]  There must be "a substantial controversy, between the parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment."[59]  Given the unambiguous language of the Operating Agreement,

there can be no substantial controversy sufficient to warrant a declaratory judgment

concerning the parties' contractual rights.  There is, in fact, no contract language in the

Operating Agreement requiring application of a "total fluids" methodology.  To the

---

[55]    *Id.* at p. 53 (Accounting Procedure at ¶ 5).

[56]    *Id.*

[57]    Complaint at ¶ 59.

[58]    *See* 28 U.S.C. § 2201(a) (the Declaratory Judgment Act).

[59]    *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (quoting *Maryland Cas Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 18 of 20

extent that this court can declare the respective rights of the parties, it can only restate the clear terms of the Operating Agreement: that the parties are to pay their fair and equitable shares of the platform's operating costs as allocated to them by the Operator.

## IV.   CONCLUSION

Each of the counts in Marathon's Complaint is premised on an alleged contractual requirement of the Unit Operator to allocate costs between the oil and gas interests on the Steelhead Platform using a "total fluids" methodology.   Despite Marathon's claims, there is no evidence that the Unit's working interest owners have any contractual right to any particular cost allocation methodology.   Indeed, the Operating Agreement upon which Marathon relies obligates the Operator to charge the working interest owners "a fair and equitable apportionment" of the platform's costs.   The Operator's change in methodology that apparently prompted this lawsuit was made in compliance with this provision and was necessary to maintain a fair and equitable apportionment of the shared costs after the installation of efficient ESPs in the platform's oil wells.   There is simply no contractual basis for Marathon's claims.   Accordingly, there is no genuine issue as to material fact and the defendants are entitled to summary

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                                    Page 19 of 20

judgment dismissal of all counts in Marathon's Complaint as a matter of law.

Dated this 22nd day of January, 2008.

s/ R. Scott Taylor

Jeffrey M. Feldman
R. Scott Taylor
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:        feldman@frozenlaw.com
Email:        taylor@frozenlaw.com
[Alaska Bar No. 7605029]
[Alaska Bar No. 8507110]

Attorneys for Defendant Forest Oil Corporation

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January 2008,
a copy of the **Motion for Summary Judgment** and
**(proposed) Order Granting Summary Judgment**
was served electronically on:

Daniel T. Quinn
Marc G. Wilhelm
Brewster H. Jamieson
Marc D. Bond
Robert K. Stewart, Jr.

s/ R. Scott Taylor

Motion for Summary Judgment
*Marathon Oil Company vs. Forest Oil Corporation, et al.*
Case No. 3:06-cv-00102-TMB                                    Page 20 of 20