A CONFORMED VERSION OF THE

UNIT OPERATING AGREEMENT

TRADING BAY UNIT

COOK INLET, ALASKA

INCORPORATING

THE FIRST THROUGH EIGHTH AMENDMENTS

AND

THE FIRST THROUGH THIRD SUPPLEMENTAL AGREEMENTS

# TABLE OF CONTENTS

Page

ARTICLE I — CONFIRMATION OF UNIT AGREEMENT .................................................. 2
   1.1  Confirmation of Unit Agreement .............................................................................. 2

ARTICLE II — EXHIBITS -- APPENDICES ................................................................................. 2
   2.1  Exhibits .............................................................................................................................. 2
   2.2  Appendices ....................................................................................................................... 2
   2.3  Revision of Appendices ................................................................................................ 3

ARTICLE III — DEFINITIONS ........................................................................................................ 3
   3.1  Unit Agreement ............................................................................................................... 3
   3.2  Acre-Feet of WIPA Pay ................................................................................................ 3
   3.3  Basic Participating Interest ............................................................................................ 3
   3.4  Costs .................................................................................................................................. 3
   3.5  Deepen or Plug Back ..................................................................................................... 3
   3.6  Development Well ......................................................................................................... 3
   3.7  Drill, Drilled or Drilling ................................................................................................. 4
   3.8  Drilling Party ................................................................................................................... 4
   3.9  Effective Participating Interest .................................................................................... 4
   3.10  Exploratory Well .......................................................................................................... 4
   3.11  Gross Working Interest ............................................................................................... 4
   3.12  Injection Well ................................................................................................................ 4
   3.13  Lease Burdens ............................................................................................................... 4
   3.14  Market Value ................................................................................................................. 4
   3.15  Net Working Interest .................................................................................................. 4
   3.16  Non-Drilling Party ........................................................................................................ 4
   3.17  Party ................................................................................................................................. 4
   3.18  Pool ................................................................................................................................... 5

Unit Operating Agreement
#41015/76-216

i

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 2 of 58

3.19 Production ........................................................................................................... 5
3.20 Royalty Interest Participating Area .................................................................... 5
3.21 Specified Redetermination .................................................................................. 5
3.22 Sub-Operator ....................................................................................................... 5
3.23 Subsequent Redetermination .............................................................................. 5
3.24 Surface Acreage ................................................................................................... 5
3.25 Tract ..................................................................................................................... 5
3.26 Unit Operator ...................................................................................................... 5
3.27 Working Interest ................................................................................................. 5
3.28 Working Interest Participating Area ................................................................. 5
ARTICLE IV   SUPERVISION OF OPERATIONS BY PARTIES ........................... 6
4.1 Over-all Supervision ............................................................................................. 6
4.2 Particular Powers and Duties .............................................................................. 6
ARTICLE V    MANNER OF EXERCISING SUPERVISION ................................... 7
5.1 Designation of Representatives ........................................................................... 7
5.2. Meetings ................................................................................................................ 7
5.3 Voting Procedure .................................................................................................. 8
5.4 Additional Voting Provisions ............................................................................... 9
5.5 Absentee Voting .................................................................................................... 9
5.6 Poll Votes ............................................................................................................... 9
5.7 Vote Binding on Parties ....................................................................................... 9
ARTICLE VI   INDIVIDUAL RIGHTS OF PARTIES ............................................... 10
6.1 Reservation of Rights ........................................................................................... 10
6.2 Specific Rights ...................................................................................................... 10
ARTICLE VII  UNIT OPERATOR AND SUB-OPERATORS ................................... 10
7.1 Initial Unit Operator ............................................................................................ 10
7.2 Sub-Operator ........................................................................................................ 10
7.3 Resignation or Removal of Unit Operator and Selection of Successor ........... 10
7.4 Resignation or Removal of Sub-Operators and Selection of Successors ......... 11

Unit Operating Agreement
#41015/76-216

ii

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 3 of 58

| | | |
|---|---|---|
| ARTICLE VIII | AUTHORITIES AND DUTIES OF UNIT OPERATOR AND SUB-OPERATORS | 12 |
| 8.3 | Unit Operator and Sub-Operators | 13 |
| ARTICLE IX | DETERMINATION OF WORKING INTEREST PARTICIPATING AREAS AND BASIC PARTICIPATING INTERESTS | 14 |
| 9.1 | Hemlock WIPA and BPI | 14 |
| 9.2 | Initial Determination of WIPA | 15 |
| 9.3 | Determination of Initial BPI | 15 |
| 9.4 | Redeterminations of WIPA and BPI | 15 |
| 9.5 | Effective Date | 16 |
| 9.6 | Manner of Redetermination of WIPA and BPI | 16 |
| 9.7 | Arbitration | 16 |
| ARTICLE X | APPORTIONMENT OF COSTS AND OWNERSHIP OF PRODUCTION AND PROPERTY | 17 |
| 10.1 | Apportionment and Allocation of Production for Royalty Purposes | 17 |
| 10.2 | Apportionment and Ownership Within a WIPA | 17 |
| ARTICLE XI | INITIAL AND FUTURE ADJUSTMENTS OF COSTS, PRODUCTION AND PROPERTY | 18 |
| 11.1 | Adjustments on Initial Determination and Specified Redeterminations of WIPA or BPI | 18 |
| 11.2 | Adjustments on Subsequent Redeterminations | 19 |
| ARTICLE XII | PLANS OF DEVELOPMENT | 21 |
| 12.1 | Wells and Projects Included | 21 |
| 12.2 | Notice of Proposed Plan | 21 |
| 12.3 | Cessation of Operations under Plan | 21 |
| ARTICLE XIII | DRILLING, DEEPENING, PLUGGING BACK OR ABANDONMENT OF EXPLORATORY, DEVELOPMENT AND INJECTION WELLS | 21 |
| 13.1 | General Provisions for Exploratory, Development and Injection Wells | 21 |
| 13.2 | Exploratory Wells | 23 |
| 13.3 | Development Wells | 24 |

Unit Operating Agreement
#41015/76-216

iii

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 4 of 58

13.4 Relinquishment and Reversion of Interests ......................................................... 24
13.5 Abandonment of Production Wells ................................................................... 25
13.6 Injection Wells ................................................................................................... 26
ARTICLE XIV    REQUIRED WELLS ........................................................................ 26
14.1 Definition .......................................................................................................... 26
14.2 Election to Drill ................................................................................................ 26
14.3 Alternatives to Drilling ..................................................................................... 27
ARTICLE XV    ESTABLISHMENT, REVISIONS AND CONSOLIDATION
OF ROYALTY INTEREST PARTICIPATING AREAS ................. 27
15.1 General .............................................................................................................. 27
15.2 Procedure .......................................................................................................... 27
15.3 Revised Proposal .............................................................................................. 28
ARTICLE XVI    PLATFORMS AND PRODUCTION FACILITIES ....................... 28
16.2 Costs ................................................................................................................. 28
16.3 Use of Wells, Platforms, or Production Facilities ........................................... 28
ARTICLE XVII    CONSTRUCTION OF CERTAIN PLATFORMS,
PIPELINES AND OTHER FACILITIES ........................................ 29
17.1 General .............................................................................................................. 29
17.2 Sub-Operator to Conduct Operations .............................................................. 29
17.3 Notice of Proposed Construction ..................................................................... 29
17.4 Response to Notice ........................................................................................... 29
17.5 Participation ...................................................................................................... 29
17.6 Relinquishment and Reversion of Interests ..................................................... 29
ARTICLE XVIII    RIGHT TO TAKE IN KIND AND FAILURE TO
TAKE IN KIND - UNDERLIFTING .............................................. 31
18.1 Taking in Kind .................................................................................................. 31
18.2 Underlifting of Liquid Production ................................................................... 31
18.3 Underlifting or Balancing of Gas Production ................................................. 33
18.4 Indemnity .......................................................................................................... 35

Unit Operating Agreement
#41015/76-216

iv

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 5 of 58

ARTICLE XIX     UNIT EXPENSE ........................................................................... 35
   19.1 Basis of Charge to Parties ........................................................................ 35
   19.2 Budgets ..................................................................................................... 36
   19.3 Advance Billings ...................................................................................... 36
   19.4 Commingling of Funds ............................................................................ 36
   19.5 Lien of Unit Operator and Sub-Operator ................................................. 36
ARTICLE XX     TITLES ........................................................................................... 37
   20.1 Warranty and Indemnity .......................................................................... 37
   20.2 Failure Because of Unit Operations ........................................................ 37
ARTICLE XXI     RENTALS AND LEASE BURDENS ........................................... 37
   21.1 Rentals ...................................................................................................... 37
   21.2 Lease Burdens .......................................................................................... 37
   21.3 Payments to be Borne by Parties ............................................................. 38
ARTICLE XXII     TAXES ......................................................................................... 38
   22.1 Taxes Upon Unit Property and Operations ............................................. 38
   22.2 Other Taxes .............................................................................................. 38
   22.3 Transfer of Interests ................................................................................. 38
   22.4 Notices and Returns ................................................................................. 38
ARTICLE XXIII     INSURANCE .............................................................................. 39
   23.1 Required Insurance .................................................................................. 39
   23.2 Individual Insurance ................................................................................ 39
   23.3 Contractors' Insurance ............................................................................. 39
   23.4 Notice of Losses and Claims ................................................................... 40
ARTICLE XXIV     RELEASE FROM OBLIGATIONS AND SURRENDER ........ 40
   24.1 Surrender or Release Within a WIPA ..................................................... 40
   24.2 Procedure on Surrender Outside a WIPA ............................................... 40
   24.3 Accrued Obligations ................................................................................ 40
ARTICLE XXV     FORCE MAJEURE ...................................................................... 41
   25.1 Force Majeure .......................................................................................... 41

Unit Operating Agreement
#41015/76-216

v

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 6 of 58

ARTICLE XXVI    NOTICES .................................................................................................. 41
   26.2 Proper Addresses ................................................................................................ 41
ARTICLE XXVII   LIABILITY, CLAIMS AND SUITS ............................................................. 42
   27.1 Individual Liability ............................................................................................. 42
   27.2 Settlements ......................................................................................................... 42
ARTICLE XXVIII  INTERNAL REVENUE PROVISIONS ....................................................... 42
   28.1 Internal Revenue Provisions ............................................................................... 42
ARTICLE XXIX   EFFECTIVE DATE AND TERM .................................................................. 43
   29.1 Effective Date ..................................................................................................... 43
   29.2 Term .................................................................................................................... 43
ARTICLE XXX    NON-DISCRIMINATION ............................................................................. 43
ARTICLE XXXI   OTHER PROVISIONS .................................................................................. 43
   31.1 Audits .................................................................................................................. 43
   31.2 Laws and Regulations ......................................................................................... 43
   31.3 Additional Burdens ............................................................................................. 44
   31.4 Successors and Assigns ....................................................................................... 44
ARTICLE XXXII  EXECUTION .................................................................................................. 44
   32.1 Counterparts ........................................................................................................ 44
   32.2 Ratification .......................................................................................................... 44

Unit Operating Agreement
#41015/76-216

vi

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 7 of 58

A CONFORMED VERSION OF THE

UNIT OPERATING AGREEMENT

TRADING BAY UNIT

COOK INLET, ALASKA

INCORPORATING

THE FIRST THROUGH EIGHTH AMENDMENTS

AND

THE FIRST THROUGH THIRD SUPPLEMENTAL AGREEMENTS

THIS AGREEMENT, entered into as of the 27th day of February, 1967, by and between the Parties who have signed the original of this instrument, a counterpart thereof, or other instrument agreeing to be bound by the provisions hereof;

WITNESSETH:

THAT WHEREAS, the Parties hereto as Working Interest Owners have executed or ratified an agreement entitled "UNIT AGREEMENT FOR THE DEVELOPMENT AND OPERATION OF THE TRADING BAY UNIT AREA, STATE OF ALASKA", herein referred to as "Unit Agreement", covering the lands described in Exhibit "B" attached thereto, which lands are referred to in the Unit Agreement and in this Agreement as the "Unit Area";

WHEREAS, said Unit Agreement was approved by the Commissioner of the Department of Natural Resources of the State of Alaska effective as of February 27, 1967;

WHEREAS, numbered Paragraph 7 of the Unit Agreement provides for the Working Interest Owners to enter into a separate agreement in order to carry out the purposes of the Unit Agreement;

NOW, THEREFORE, in consideration of the mutual agreements herein set forth, it is agreed as follows:

Conformed Unit Operating Agreement
#41015/76-216
Page 1 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 8 of 58

# ARTICLE I

## CONFIRMATION OF UNIT AGREEMENT

1.1 <u>Confirmation of Unit Agreement</u>. The Unit Agreement, together with all exhibits thereto, is hereby confirmed and adopted in its entirety. If there is any conflict between this Agreement and the Unit Agreement, the Unit Agreement shall govern.

# ARTICLE II

## EXHIBITS -- APPENDICES

2.1 <u>Exhibits</u>. The following exhibits are attached hereto and by this reference are made a part hereof:

    A. <u>Exhibit "A"</u>, which contains the methods of calculation of Basic Participating Interest, Royalty Share, Royalty Correction Factor, and Effective Participating Interest.

    B. <u>Exhibit "B"</u>, which contains a hypothetical example of the calculations described in Exhibit "A".

    C. <u>Exhibit "C"</u>, which is the Accounting Procedure for the determination of costs and expenses incurred in the conduct of operations under the Unit Agreement and this Agreement. If there is any conflict between this Agreement and Exhibit "C", this Agreement shall govern.

2.2 <u>Appendices</u>. The following appendices are or may hereafter be attached hereto and by this reference are made a part hereof:

    A. <u>Appendix "A</u> (containing Sub-Appendices "A-1", "A-2", et seq.), which contains maps of each Working Interest Participating Area heretofore or hereafter established by the Parties in accordance with this Agreement. Any reference in this Agreement to Appendix "A", unless otherwise stated, shall mean that Sub Appendix of Appendix "A" applicable to the relevant Working Interest Participating Area.

    B. <u>Appendix "B"</u> (containing Sub-Appendices "B-1", "B-2", et seq.), which contains schedules of the Basic Participating Interests of each Party within each Working Interest Participating Area and descriptions of the Pools for which such Working Interest Participating Areas are established as heretofore or hereafter determined by the Parties in accordance with this Agreement. Any reference in this Agreement to Appendix "B", unless otherwise stated, shall mean

Conformed Unit Operating Agreement
#41015/76-216
Page 2 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 9 of 58

that Sub-Appendix of Appendix "B" applicable to the relevant Working Interest Participating Area.

2.3   Revision of Appendices. Appendix "A" and Appendix "B" shall be revised from time to time as provided in this Agreement. Unit Operator shall also revise said appendices as required to conform to changes in ownership of which Unit Operator has been notified as provided in the Unit Agreement.

## ARTICLE III

## DEFINITIONS

3.1   Unit Agreement. The definitions contained in the Unit Agreement are adopted for all purposes of this Agreement. In addition, each term listed below shall have the meaning stated therefor whenever used in this Agreement.

3.2   "Acre-Feet of WIPA Pay" shall mean, as to any area designated pursuant to this Agreement, the number of productive acres multiplied by the thickness (in feet) of the Pool containing Unitized Substances, determined in accordance with sound engineering principles; provided further, if oil and free gas are originally in place in the same Pool, then Acre-Feet of WIPA Pay of free gas will be multiplied by a factor which will equate Acre-Feet of WIPA Pay of free gas to Acre-Feet of WIPA Pay of oil on a recoverable hydrocarbon value basis.

3.3   "Basic Participating Interest" (herein sometimes referred to as "BPI" and determined as set forth in Article IX) shall mean that percentage upon which Costs and ownership of property are allocated to the interest of each Party in each individual Tract within a Working Interest Participating Area.

3.4   "Costs" shall mean all costs and expenses, other than Lease Burdens, incurred in the development and operation of each Working Interest Participating Area pursuant to this Agreement or the Unit Agreement and all other expenses that are herein made chargeable as Costs, determined in accordance with the Accounting Procedure set forth in Exhibit "C" hereto.

3.5   "Deepen or Plug Back" shall mean to perform all operations reasonably necessary and incident to Deepen or Plug Back a well, including testing, and completing or recompleting and equipping for production or injection, or plugging and abandoning.

3.6   "Development Well" shall mean any well other than an Injection Well Drilled to a location within any Working Interest Participating Area and projected to the Pool for which such Working Interest Participating Area was established.

Conformed Unit Operating Agreement
#41015/76-216
Page 3 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 10 of 58

3.7  "Drill", "Drilled" or "Drilling" shall mean to perform all operations reasonably necessary and incident to the drilling of a well, including testing, and completing and equipping for production or injection, or plugging and abandoning.

3.8  "Drilling Party" shall mean the Party or Parties obligated to bear the Costs of Drilling, Deepening or Plugging Back a well in accordance with this Agreement at the commencement of such operations.

3.9  "Effective Participating Interest" (herein sometimes referred to as "EPI") shall mean that percentage of Production from a WIPA allocated to each Party's interest in a particular Tract by this Agreement, less the Royalty Share (as defined in Exhibit "A") of Production allocated to that Party's interest in that Tract pursuant to Subsection 10.2B of this Agreement, and shall be determined as provided in Exhibit "A".

3.10  "Exploratory Well" shall mean any well other than a Development Well or an Injection Well.

3.11  "Gross Working Interest" (herein sometimes referred to as "GWI") shall mean each Party's Working Interest percentage in a particular Tract as shown on Exhibit "B" to the Unit Agreement.

3.12  "Injection Well" shall mean any well Drilled or taken over for the injection of substances for the purpose of disposal or conducting pressure maintenance or secondary recovery operations.

3.13  "Lease Burdens" shall mean the royalty reserved to the lessor in an oil and gas lease, an overriding royalty, a production payment and any other burden upon the Working Interests.

3.14  "Market Value" shall mean the arithmetical average price upon which the State of Alaska's royalty is paid and finally accepted on the Production during the relevant period from the applicable Working Interest Participating Area.

3.15  "Net Working Interest" (herein sometimes referred to as "NWI") shall mean that percentage figure obtained by deducting from 100% the basic royalty percentage for a particular Tract as shown on Exhibit "B" to the Unit Agreement.

3.16  "Non-Drilling Party" shall mean the Party or Parties who have had the right to participate in the Costs of Drilling, Deepening Or Plugging Back a well in accordance with this Agreement at the commencement of such operation and who have elected not to participate therein.

3.17  "Party" shall mean a party to this Agreement, including a party acting as Unit Operator or Sub-Operator when acting as an owner of a Working Interest.

Conformed Unit Operating Agreement
#41015/76-216
Page 4 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 11 of 58

3.18  "Pool" shall mean an underground reservoir containing, or appearing to contain, a common accumulation of oil or gas. Each zone of a structure which is completely separated from any other zone in the same structure is a Pool.

3.19  "Production" shall mean, as to any area designated pursuant to this Agreement, all Unitized Substances produced and saved from such area, except so much thereof as is used in the conduct of operations under the Unit Agreement and this Agreement within or for the benefit of such area.

3.20  "Royalty Interest Participating Area" (herein sometimes referred to as "RIPA") shall mean any participating area established pursuant to numbered Paragraph 11 of the Unit Agreement.

3.21  "Specified Redetermination" shall mean a redetermination so designated in Section 9.1 and Subsection 9.4A.

3.22  "Sub-Operator" shall mean any Party herein or hereafter designated as a Sub-Operator by the Parties, and its successors, acting in that capacity and not as Unit Operator or as the owner of a Working Interest.

3.23  "Subsequent Redetermination" shall mean a redetermination provided for in Subsection 9.4B.

3.24  "Surface Acreage" shall mean the number of surface acres within any area designated pursuant to this Agreement whether or not such area is deemed productive of oil and/or gas.

3.25  "Tract" shall mean each parcel of land shown as such and given a Tract number and described in Exhibits "A" and "B" to the Unit Agreement.

3.26  "Unit Operator" shall mean Union Oil Company of California and its successors, as the Unit Operator designated in accordance with the Unit Agreement, acting in that capacity and not as Sub-Operator or as the owner of a Working Interest.

3.27  "Working Interest" shall mean an interest in Unitized Substances, whether held under an oil and gas lease or otherwise, including a carried Working Interest, which interest is chargeable with and obligated to pay or bear, whether in cash or out of Production or otherwise, all or a portion of the Costs of operations conducted under the Unit Agreement and this Agreement.

3.28  "Working Interest Participating Area" (herein sometimes referred to as "WIPA") shall mean any such area and Pool established by the Parties in accordance with Article IX of this Agreement. The Pool for which each such WIPA is established shall be identified on Appendix "B" to this Agreement.

Conformed Unit Operating Agreement
#41015/76-216
Page 5 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 12 of 58

# ARTICLE IV

# SUPERVISION OF OPERATIONS BY PARTIES

4.1   Over-all Supervision. Parties shall exercise over-all supervision and control of all matters pertaining to the development and operation of the Unit Area pursuant to this Agreement and the Unit Agreement. In the exercise of such power each Party shall act solely in its own behalf in the capacity of an Individual Working Interest owner and not on behalf of the Working Interest owners as an entirety.

4.2   Particular Powers and Duties. The matters to be passed upon and decided by the Parties as provided herein or in the Unit Agreement shall include, but not be limited to, the following:

    A.   The appointment, removal and selection of successor Unit Operators and Sub-Operators.

    B.   The enlargement or contraction of the Unit Area or a WIPA.

    C.   The determination of Basic Participating Interests.

    D.   The subsequent joinder of any Working Interest owner to this Agreement or to the Unit Agreement.

    E.   The appointment of committees or subcommittees and the designation of their duties, for any purpose in connection with operations hereunder; provided, however, each Party shall have the right to representation on each such committee or sub-committee.

    F.   The kind, character and method of operation, including any type of pressure maintenance or secondary recovery program to be employed.

    G.   The adoption or submission of any plan of further development and operation of the Unit Area to the Director, Commissioner, or any regulatory body.

    H.   Except as otherwise provided herein or in the Unit Agreement, the drilling of any well within the Unit Area either for production of Unitized Substances, for use as an injection well, or for other purposes.

    I.   The recompletion, workover, abandonment, or change of status of any well in any WIPA or RIPA or use of any such well for injection or other purposes.

Conformed Unit Operating Agreement
#41015/76-216
Page 6 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 13 of 58

J. The making of any single expenditure in excess of One Hundred Thousand Dollars ($100,000.00) except in the case of an emergency involving the preservation of life or property. (Amended 10/6/75, 1/1/90)

K. The selling or otherwise disposing of any major item of surplus material or equipment, the current list price of new equipment similar thereto being Five Thousand Dollars ($5,000.00) or more; provided, however, surplus material or equipment classified as junk may be disposed of by Unit Operator or the applicable Sub-Operator at prevailing prices.

L. The authorizing of charges to the joint account for services by consultants or any Party's technical personnel not covered by the charges set forth in Exhibit "C".

M. The taking of periodic inventories under the terms of Exhibit "C".

N. The designation of a representative to appear before any court or regulatory body in matters pertaining to operations hereunder; provided, however, that such designation shall not prevent a Party from appearing in person or from designating another representative in its behalf and at its own expense.

## ARTICLE V

## MANNER OF EXERCISING SUPERVISION

5.1  Designation of Representatives. Each Party shall advise the Unit Operator in writing of the names and addresses of its representative and alternate authorized to represent and bind it in respect to any matter pertaining to the development and operation of the Unit Area. Such representative or alternate may be changed from time to time by written notice to Unit Operator. Unit Operator shall promptly advise all Parties of the names and addresses of each such representative and alternate. In addition, any corporate Party may vote through its President, or any of its Vice Presidents.

5.2. Meetings. All meetings of the Parties for the purpose of considering and acting upon any matter pertaining to the development and operation of the Unit Area shall be called by Unit Operator upon its own motion or at the request of one or more Parties. Except in case of a bona fide emergency, no meeting shall be called on less than fourteen (14) days' advance written or telegraphic notice, with agenda for the meeting attached. The Parties attending such meeting may amend such items included in the agenda by unanimous vote of the Parties present. Unless otherwise agreed, all meetings shall be held in Anchorage, Alaska. The representative of Unit Operator shall be Chairman of each meeting.

Conformed Unit Operating Agreement
#41015/76-216
Page 7 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 14 of 58

5.3 Voting Procedure.

    A.   General. In the supervision of an operations conducted by Unit Operator or a Sub-Operator, the Parties chargeable with the Costs of such operation shall have the right to vote thereon in proportion to their respective obligations for such Costs. The Parties having the right to vote on any other matter shall vote thereon on the basis of their respective BPI in the applicable WIPA as herein provided. In the event such other matter does not involve any WIPA, the Parties shall vote thereon on the basis of their voting power in the Hemlock WIPA. Except as provided in the Unit Agreement and except as otherwise specified herein the voting requirements are as hereinafter provided in this Section 5.3.

    B.   Determination of a WIPA. The unanimous approval of the Parties to this Agreement shall be required for the determination of a WIPA.

    C.   Determination of Acre-Feet of WIPA Pay. The unanimous approval of the Parties in the WIPA shall be required for the determination of Acre-Feet of WIPA Pay therein.

    D.   Use of Wells, Platforms or Production Facilities Pursuant to Section 16.3. The affirmative vote of the Parties having eighty-five per cent (85%) or more of the voting power as to any well, platform, or production facility shall be required for the approvals set forth in Section 16.3; provided, however, if any Party entitled to vote thereon has fifteen per cent (15%) or more of the voting power, its negative vote or failure to vote shall not defeat the matter being voted on unless such Party is supported by one or more of the other Parties entitled to vote thereon.

    E.   Major Expenditures. The affirmative vote of the Parties having eighty-five per cent (85%) or more of the voting power shall be required for the approval of an expenditure for any single project exceeding One Million Five Hundred Thousand Dollars ($1,500,000.00). In the event that more than one WIPA is to be served by such proposed expenditure, the affirmative vote of the Parties having eighty-five per cent (85%) or more of the voting power in each WIPA to be served shall be required for such approval.

Notwithstanding the provisions Of this Subsection 5.3 E, if any Party entitled to vote thereon has fifteen per cent (15%) or more of the voting power as to any such WIPA, its negative vote, or failure to vote, shall not defeat the matter being voted on unless such Party is supported by one or more of the other Parties entitled to vote thereon as to that WIPA.

Conformed Unit Operating Agreement
#41015/76-216
Page 8 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 15 of 58

F. <u>Secondary Recovery and Pressure Maintenance Programs</u>. The affirmative vote of the Parties having eighty-five per cent (85%) or more of the voting power as above provided shall be required for the approval of secondary recovery and pressure maintenance projects; provided, however, if any Party entitled to vote thereon has fifteen per cent (15%) or more of the voting power, its negative vote or failure to vote shall not defeat the matter being voted on unless such Party is supported by one or more of the other Parties entitled to vote thereon.

G. <u>All Other Matters</u>. Except as provided in Subsections 5.3B, 5.3C, 5.3D, 5.3E and 5.3F and except as to matters specifically delegated to Unit Operator or Sub-Operators by the Unit Agreement or this Agreement, the affirmative vote of Parties having eighty per cent (80%) or more of the voting power shall be required for approval of all other matters; provided, however, if any two Parties have a combined voting power of seventy-five per cent (75%) or more but less than ninety-five per cent (95%) on such matter, their affirmative votes must be supported by one or more other Parties having a combined voting power of at least five per cent (5%) on such matter; and provided further, if any Party entitled to vote thereon has twenty per cent (20%) or more of the voting power, its negative vote, or failure to vote, shall not defeat the matter being voted on unless such Party is supported by one or more of the other Parties entitled to vote thereon.

5.4 <u>Additional Voting Provisions</u>. A Party failing to vote shall be deemed to have voted in the negative. In all cases, if only two Parties are entitled to vote, the vote of the one with the greater relevant BPI shall prevail.

5.5 <u>Absentee Voting</u>. Any Party not represented at a meeting may vote on any item included in the agenda upon which that Party is entitled to vote. Such absentee vote shall be by letter or telegram addressed to the Chairman of the meeting provided such vote is received prior to the submission of such item to vote. Such vote shall not be counted with respect to any item on the agenda which is amended at the meeting.

5.6 <u>Poll Votes</u>. The Parties may decide any matter by vote taken by letter or telegram, provided the matter is first submitted to each Party entitled to vote thereon and no meeting on the matter is called as provided in Section 5.2 within ten (10) days after such proposal is dispatched to such Parties. Unit Operator will give prompt notice of the results of such voting to all such Parties. Any such Party failing to vote within the time stated in such letter or telegram shall be deemed to have voted in the negative.

5.7 <u>Vote Binding on Parties</u>. Any approval, direction, consent, determination, redetermination, agreement, stipulation, designation or other decision of the Parties provided for in this Agreement which receives the affirmative vote herein specified shall be deemed given by and shall be binding upon all Parties to this Agreement, except as otherwise specified herein.

Conformed Unit Operating Agreement
#41015/76-216
Page 9 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 16 of 58

## ARTICLE VI

## INDIVIDUAL RIGHTS OF PARTIES

6.1   Reservation of Rights. The Parties severally reserve to themselves all their rights, except as otherwise provided in this Agreement and the Unit Agreement.

6.2   Specific Rights. Each Party owning a Working Interest in a WIPA shall have, among others, the following specific rights:

   A.   Access to WIPA. Access to such WIPA and operations being conducted for the benefit thereof at all reasonable times to inspect such operations, wells, and the records and data pertaining thereto.

   B.   Reports. The right to receive from Unit Operator or from Sub-Operator copies of all reports to any governmental agency, reports of crude oil runs and stocks, inventory reports, well logs, engineering and geological data and all other information pertaining to operations hereunder. All such reports and information shall be limited to factual and not interpretative data, unless accomplished by or charged to the Parties. The cost of gathering and furnishing information not ordinarily furnished by Unit Operator or Sub-Operator to the Parties shall be charged to the Party who requests the information.

## ARTICLE VII

## UNIT OPERATOR AND SUB-OPERATORS

7.1   Initial Unit Operator. Union Oil Company of California is hereby designated as Unit Operator.

7.2   Sub-Operator. Union Oil Company is hereby designated as Sub-Operator of the following facilities and pipelines:

Dolly Varden Platform and Pipelines;
Grayling Platform and Pipelines;
North McArthur River (King Salmon) Platform and Pipelines;
Steelhead Platform and Pipelines; and
Trading Bay Unit Production Facility and Pipelines.
(Amended 12/1/94)

7.3   Resignation or Removal of Unit Operator and Selection of Successor. Unit Operator may resign or be removed for good cause and a successor Unit Operator shall be selected as provided in numbered Paragraphs 5 and 6 of the Unit Agreement.

Conformed Unit Operating Agreement
#41015/76-216
Page 10 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 17 of 58

7.4   <u>Resignation or Removal of Sub-Operators and Selection of Successors</u>. Any Sub-Operator shall have the right to resign at any time, but such resignation shall not become effective so as to release such Sub-Operator from its duties and obligations and terminate its rights as such for a period of six months after notice of intention to resign has been served by a Sub-Operator on all Parties, unless a new Sub-Operator shall have been selected and approved and shall have taken over and assumed the duties and obligations of that Sub-Operator prior to the expiration of said period.

In all instances of resignation or removal, until a successor Sub-Operator is selected and approved as hereinafter provided, the Parties shall be jointly responsible for performance of the duties of that Sub-Operator, and shall not later than 30 days before such resignation or removal becomes effective appoint a common agent to represent them in any action to be taken hereunder.

The resignation of a Sub-Operator shall not release that Sub-Operator from any liability for any default by it hereunder occurring prior to the effective date of its resignation.

Any Sub-Operator may, upon default or failure in the performance of its duties or obligations hereunder be subject to removal by a vote representing eighty-five per cent (85%) or more of the voting power of the Parties in the Hemlock WIPA. Such removal shall be effective upon notice thereof to the Parties

The resignation or removal of a Sub-Operator under this Agreement shall not terminate its right, title, or interest as the owner of a Working Interest or other interest in Unitized Substances, but upon the resignation or removal of a Sub-Operator becoming effective such Sub-Operator shall deliver possession of all equipment, materials, and appurtenances used in conducting the Unit operations and owned by the Parties to the new duly qualified successor Sub-Operator or to the owners thereof if no such new Sub-Operator is elected, to be used for the purpose of conducting Unit operations hereunder. Nothing herein shall be construed as authorizing removal of any material, equipment and appurtenances needed for the preservation of any wells.

Whenever the Sub-Operator shall resign, or shall be removed as hereinabove provided, or a change of a Sub-Operator is negotiated by the Parties, the Parties in the Hemlock WIPA shall, by a vote of eighty-five per cent (85%) or more of their voting power, select a successor Sub-Operator. Such selection shall not become effective until a Sub-Operator so selected shall accept in writing the duties and responsibilities of Sub-Operator.

Conformed Unit Operating Agreement
#41015/76-216
Page 11 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 18 of 58

# ARTICLE VIII

## AUTHORITIES AND DUTIES OF UNIT OPERATOR AND SUB-OPERATORS

8.1 Unit Operator.

    A.    General Duties. Unit Operator shall coordinate the activities of the Sub-Operators and all committees and subcommittees in accordance with plans and procedures approved as herein provided. Unit Operator shall be responsible for submitting all required reports to the State of Alaska and other regulatory authorities and shall, subject to Subsection 4.2N, represent the Parties at hearings or other meetings held by any regulatory bodies pertaining to operations hereunder.

    Unit Operator shall keep advised of daily activities being carried out within or for the benefit of the Unit Area; make recommendations of its own or submit those of any Party, Committee or Sub-Committee to the Parties; coordinate transportation, communication and other operations and services among the various Sub-Operators, platforms, pipelines, and shore sites; and carry out any other duties or assignments given to Unit Operator by the Parties.

    B.    Records. Unit Operator shall be responsible for keeping correct books, accounts and records of Unit operations, coordinating any accounting work being done by various Sub-Operators, and sending to each Party, in accordance with the Accounting Procedure in Exhibit "C", a statement incorporating cost and production accounting.

    C.    Reports. Unit Operator shall furnish reports of Unit operations as required by the Parties.

8.2 Sub-Operators.

    A.    General Duties. Pursuant to the provisions of this Agreement, Sub-Operators shall have the exclusive right and duty to conduct Unit operations according to plans and procedures as specified by the Parties and to do all things necessary and consistent therewith, including the execution of all contracts as Sub-Operator which affect drilling, reworking and servicing of wells, construction of facilities, and the purchasing of supplies, and shall prepare or assist in the preparation of any and all applications, reports, or other documents required by any governmental agency.

    B.    Records and Reports. Each Sub-Operator shall keep correct books, accounts and records and shall furnish the Parties with periodic reports of operations conducted by it pursuant to this Agreement.

Conformed Unit Operating Agreement
#41015/76-216
Page 12 of 46 Pages

Motion for Summary Judgment
Case No. 3:06-cv-00102-TMB

Exhibit A
Page 19 of 58