# TRADING BAY FIELD

# JOINT OPERATING AGREEMENT

# BY AND BETWEEN

# UNION OIL COMPANY OF CALIFORNIA

# AND

# MARATHON OIL COMPANY

# MAY 1996

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## TABLE OF CONTENTS

SECTION    ARTICLE                                                              PAGE

ARTICLE I - EXHIBITS - APPENDICES ......................................... 1
    1.1    EXHIBITS ......................................................... 1

ARTICLE II - DEFINITIONS ................................................... 1
    2.1    AREA OR TRACT ............................................... 1
    2.2    COSTS .......................................................... 1
    2.3    DEVELOPMENT WELL ......................................... 1
    2.4    DRILL, DRILLED OR DRILLING, DEEPEN OR PLUG BACK .... 1
    2.5    EXPLORATORY WELL ......................................... 1
    2.6    INJECTION WELL ............................................. 2
    2.7    LEASE BURDENS ............................................. 2
    2.8    MARKET VALUE ............................................... 2
    2.9    NON-DRILLING PARTY ....................................... 2
    2.10   PARTY .......................................................... 2
    2.11   POOL ........................................................... 2
    2.12   PRODUCTION ................................................. 2
    2.13   OPERATOR .................................................... 2
    2.14   WORKING INTEREST ......................................... 2

ARTICLE III - SUPERVISION OF OPERATIONS BY PARTIES ............. 3
    3.1    OVER-ALL SUPERVISION ..................................... 3
    3.2    PARTICULAR POWERS AND DUTIES ..................... 3

ARTICLE IV - MANNER OF EXERCISING SUPERVISION ............... 4
    4.1    VOTING PROCEDURE ........................................ 4
    4.2    POLL VOTES .................................................. 4
    4.3    VOTE BINDING ON PARTIES ............................... 4
    4.4    VOTE REQUIRED ............................................. 5

ARTICLE V - INDIVIDUAL RIGHTS OF PARTIES .......................... 5
    5.1    RESERVATION OF RIGHTS ................................. 5
    5.2    SPECIFIC RIGHTS ........................................... 5

ARTICLE VI - OPERATOR .................................................... 6
    6.1    INITIAL OPERATOR .......................................... 6
    6.2    RESIGNATION OR REMOVAL OF OPERATOR AND
          SELECTION OF SUCCESSOR ............................... 6

EXHIBIT A
Page 2 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## TABLE OF CONTENTS (Continued)

| SECTION | ARTICLE | PAGE |
|---|---|---|
| **ARTICLE VII - AUTHORITIES AND DUTIES OF OPERATOR** | | 7 |
| 7.1 | OPERATOR | 7 |
| 7.2 | OPERATIONS | 8 |
| **ARTICLE VIII - DRILLING, DEEPENING, PLUGGING BACK OR ABANDONMENT OF EXPLORATORY, DEVELOPMENT AND INJECTION WELLS** | | 10 |
| 8.1 | GENERAL PROVISIONS FOR EXPLORATORY, DEVELOPMENT AND INJECTION WELLS | 10 |
| 8.2 | EXPLORATORY WELLS | 12 |
| 8.3 | DEVELOPMENT WELLS | 12 |
| 8.4 | RELINQUISHMENT AND REVERSION OF INTERESTS | 12 |
| 8.5 | ABANDONMENT OF PRODUCING WELLS | 14 |
| 8.6 | INJECTION WELLS | 14 |
| **ARTICLE IX - CONSTRUCTION OF CERTAIN FACILITIES** | | 15 |
| 9.1 | GENERAL | 15 |
| 9.2 | OPERATOR TO CONDUCT OPERATIONS | 15 |
| 9.3 | NOTICE OF PROPOSED CONSTRUCTION | 15 |
| 9.4 | RESPONSE TO NOTICE | 15 |
| 9.5 | PARTICIPATION | 16 |
| 9.6 | RELINQUISHMENT AND REVERSION OF INTERESTS | 16 |
| **ARTICLE X - RIGHT TO TAKE IN KIND AND FAILURE TO TAKE IN KIND -- UNDERLIFTING** | | 17 |
| 10.1 | TAKING IN KIND | 17 |
| 10.2 | UNDERLIFTING OF PRODUCTION | 18 |
| 10.3 | ALLOCATION OF COSTS | 18 |
| 10.4 | INDEMNITY | 18 |
| **ARTICLE XI - EXPENSE** | | 18 |
| 11.1 | BASIS OF CHARGE TO PARTIES | 18 |
| 11.2 | ADVANCE BILLINGS | 19 |
| 11.3 | COMMINGLING OF FUNDS | 19 |
| 11.4 | LIEN OF OPERATOR | 19 |
| **ARTICLE XII - TITLES** | | 19 |
| 12.1 | WARRANTY AND INDEMNITY | 19 |

EXHIBIT A
Page 3 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## TABLE OF CONTENTS (Continued)

SECTION    ARTICLE                                                              PAGE

**ARTICLE XIII - RENTALS AND LEASE BURDENS** . . . . . . . . . . . . . . . . . . . . 20
    13.1   RENTALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    13.2   LEASE BURDENS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    13.3   PAYMENTS TO BE BORNE BY PARTIES . . . . . . . . . . . . . . . . . 20

**ARTICLE XIV - TAXES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    14.1 TAXES UPON PROPERTY AND OPERATIONS  . . . . . . . . . . . . 21
    14.2   OTHER TAXES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    14.3   TRANSFER OF INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . 21
    14.4   NOTICES AND RETURNS . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**ARTICLE XV - INSURANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    15.1   REQUIRED INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    15.2   INDIVIDUAL INSURANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    15.3   CONTRACTORS' INSURANCE . . . . . . . . . . . . . . . . . . . . . . . 23
    15.4   NOTICE OF LOSSES AND CLAIMS . . . . . . . . . . . . . . . . . . . 23

**ARTICLE XVI - RELEASE FROM OBLIGATIONS; SURRENDER; RIGHT OF
FIRST REFUSAL**
    16.1   SURRENDER OR RELEASE . . . . . . . . . . . . . . . . . . . . . . . . 23
    16.2   ACCRUED OBLIGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . 23
    16.3   RIGHT OF FIRST REFUSAL . . . . . . . . . . . . . . . . . . . . . . . . 24
    . . . . . . . . . . . . . . . . . . . . . . . 24

**ARTICLE XVII - FORCE MAJEURE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    17.1   FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**ARTICLE XVIII - NOTICES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    18.1   GIVING AND RECEIPT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    18.2   PROPER ADDRESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**ARTICLE XIX - LIABILITY, CLAIMS, AND SUITS** . . . . . . . . . . . . . . . . . . 26
    19.1   INDIVIDUAL LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    19.2   SETTLEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**ARTICLE XX - INTERNAL REVENUE PROVISION** . . . . . . . . . . . . . . . . . 27
    20.1   INTERNAL REVENUE PROVISION . . . . . . . . . . . . . . . . . . . 27

EXHIBIT A
Page 4 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## TABLE OF CONTENTS (Continued)

SECTION     ARTICLE                                                   PAGE

**ARTICLE XXI - EFFECTIVE TERM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
   21.1   TERM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27


**ARTICLE XXII - NON-DISCRIMINATION** . . . . . . . . . . . . . . . . . . . . . . . . . 27
   22.1   NON-DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**ARTICLE XXIII - OTHER PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   23.1   AUDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   23.2   LAWS AND REGULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . 28
   23.3   ADDITIONAL BURDENS . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   23.4   SUCCESSORS AND ASSIGNS . . . . . . . . . . . . . . . . . . . . . . 29
   23.5   ENTIRE AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
   23.6   WAIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
   23.7   CAPTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
   23.8   GOVERNING LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**ARTICLE XXIV - EXECUTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   24.1   COUNTERPARTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   24.2   RATIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

EXHIBIT A
Page 5 of 46

## OPERATING AGREEMENT
## TRADING BAY FIELD
## COOK INLET, ALASKA

THIS AGREEMENT, entered into as of _June 12, 1996_ by and between Marathon Oil Company ("Marathon"), an Ohio corporation and Union Oil Company of California ("Union") a California corporation (collectively the "Parties").

## ARTICLE I - EXHIBITS - APPENDICES

### 1.1    EXHIBITS

The following exhibits are attached hereto and by this reference are made a part hereof;

A.    Exhibit A - Map
B.    Exhibit B - Lease Description
C.    Exhibit C, which is the Accounting Procedure for the determination of costs and expenses incurred in the conduct of operations under this Agreement.   If there is any conflict between this Agreement and Exhibit C, this Agreement shall govern.

## ARTICLE II - DEFINITIONS

**2.1    AREA or TRACT** - shall mean the State Lease ADL 18731 as described in Exhibits A and B.

**2.2    COSTS** - shall mean all costs and expenses, other than Lease Burdens, incurred in the development and operation pursuant to this Agreement and all other expenses that are herein made chargeable as Costs, determined in accordance with the Accounting Procedure set forth in Exhibit C hereto.

**2.3    DEVELOPMENT WELL** -  shall mean any well other than an Injection Well Drilled to a location within the Area and projected to the Pool for which such Area was established.

**2.4    DRILL, DRILLED OR DRILLING, DEEPEN OR PLUG BACK-** shall mean to perform all operations reasonably necessary and incident to the drilling, deepening or plugging back of a well, including testing, and completing and equipping for production or injection, or plugging and abandoning.

**2.5    EXPLORATORY WELL** - shall mean any well other than a Development Well or an Injection Well which is drilled to a new pool.

**EXHIBIT A**
**Page 6 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

2.6    INJECTION WELL - shall mean any well Drilled or taken over for the injection of substances for the purpose of disposal or conducing pressure maintenance or secondary recovery operations.

2.7    LEASE BURDENS - shall mean the royalty reserved to the lessor in an oil and gas lease, an overriding royalty, a production payment and any other burden upon the Working Interests.

2.8    MARKET VALUE - shall mean the arithmetical average price upon which the State of Alaska's royalty is paid and finally accepted on the Production during the relevant period from the Area.

2.9    NON-DRILLING PARTY - shall mean the Party or Parties who have had the right to participate in the Costs of Drilling, Deepening or Plugging Back a well in accordance with this Agreement at the commencement of such operation, and who have elected not to participate therein.

2.10    PARTY OR PARTIES - shall mean a party to this Agreement.

2.11    POOL - shall mean an underground reservoir containing, or appearing to contain, a common accumulation of oil or gas. Each zone of a structure which is completely separated from any other zone in the same structure is a Pool.

2.12    PRODUCTION - shall mean all oil, gas and hydrocarbons produced and saved from the Area, except so much thereof as is used in the conduct of operation under this Agreement with or for the benefit of the Area.

2.13    OPERATOR - shall mean Union Oil Company of California and its successors, as the Operator designed in accordance with the Agreement, acting in that capacity, or any successor Operator selected pursuant to Article VI of this Agreement.

2.14    WORKING INTEREST - shall mean an interest, whether held under an oil and gas lease or otherwise, including a carried Working Interest, which interest is chargeable with and obligated to pay or bear, whether in cash or out of Production or otherwise, all or a portion of the Costs of operations conducted under this Agreement.

2

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## ARTICLE III - SUPERVISION OF OPERATIONS BY PARTIES

**3.1    OVER-ALL SUPERVISION.** The Parties shall exercise over-all supervision and control of all matters pertaining to the development and operation of the Area pursuant to this Agreement. In the exercise of such power each Party shall act solely in its own behalf in the capacity of an Individual Working Interest owner and not on behalf of the Working Interest Owners as an entirety.

**3.2    PARTICULAR POWERS AND DUTIES.** The matters to be passed upon and decided by the Parties as provided herein or in the Agreement shall include, but not be limited to, the following:

A.    The appointment, removal and selection of successor Operators.

B.    The enlargement or contraction of the Area.

C.    The subsequent joinder of any Working Interest Owner to this Agreement.

D.    The kind, character and method of operation, including any type of pressure maintenance or secondary recovery.

E.    The drilling of any well within the Area either to recover Production or for use as an Injection Well, or for other purposes.

F.    The recompletion, workover, abandonment, or change of status of any well in the Area or use of any such well for injection or other purposes.

G.    The making of any single expenditure in excess of One Hundred Thousand Dollars ($100,000.00), except in the case of an emergency involving the preservation of life, environment or property.

H.    The selling or otherwise disposing of any major item of surplus material or equipment, the current list price of new equipment similar thereto being Five Thousand Dollars ($5,000.00) or more; provided, however, surplus material or equipment classified as junk may be disposed of by Operator at prevailing prices.

3

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

I.   The authorizing of charges to the joint account for services by consultants or any Party's technical personnel not covered by the charges set forth in Exhibit "C".

J.   The taking of periodic inventories under the terms of Exhibit "C".

K.   The designation of a representative to appear before any court or regulatory body in matters pertaining to operations hereunder; provided, however, that such designation shall not prevent a Party from appearing in person or from designating another representative in its behalf and at its own expense.

## ARTICLE IV - MANNER OF EXERCISING SUPERVISION

### 4.1   VOTING PROCEDURE

General.  In the supervision of an operation conducted by Operator the Parties chargeable with the costs of such operation shall have the right to vote thereon in proportion to their respective obligations for such Costs.

### 4.2   POLL VOTES

The Parties may decide any matter by vote taken by letter or facsimile, provided the matter is first submitted to each Party entitled to vote thereon. Operator will give prompt notice of the results of such voting to all such Parties.  Any such Party failing to vote on any matter for which a vote is provided by this Agreement within the time stated in such letter or facsimile shall be deemed to have voted in the negative.

### 4.3   VOTE BINDING ON PARTIES

Any approval, direction, consent, determination, redetermination, agreement, stipulation, designation or other decision of the Parties provided for in this Agreement which receives the affirmative vote herein specified shall be deemed given by and shall be binding upon all Parties to this Agreement, except as otherwise specified herein.

EXHIBIT A
Page 9 of 46

4



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

**4.4    VOTE REQUIRED**

Except where specified otherwise in this Agreement, a vote of the owners of a majority of the Working Interests shall decide all issues to be decided hereunder.

**ARTICLE V - INDIVIDUAL RIGHTS OF PARTIES**

**5.1    RESERVATION OF RIGHTS**

The Parties severally reserve to themselves all their rights, except as otherwise provided in this Agreement.

**5.2    SPECIFIC RIGHTS**

Each Party owning a Working Interest shall have, among others, the following specific rights:

A.    <u>Reports</u>. The right to receive from Operator copies of all reports to any governmental agency, reports of crude oil runs and stocks, inventory reports, well logs, engineering and geological data and all other information pertaining to operations hereunder. All such reports and information shall be limited to factual and not interpretative data, unless accomplished by or charged to the Parties. The cost of gathering and furnishing information not ordinarily furnished by Operator to the Parties shall be charged to the Party who requests the information.

B.    <u>Access</u> to such operations being conducted for the benefit thereof at all reasonable times to inspect such operations, wells and the records and data pertaining thereto.

**EXHIBIT A**
**Page 10 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## ARTICLE VI - OPERATOR

**6.1     INITIAL OPERATOR**

Union Oil Company of California is hereby designated as Operator.

**6.2     RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUC-CESSOR**

Any Operator shall have the right to resign at any time, but such resignation shall not become effective so as to release such Operator from its duties and obligations and terminate its rights as such for a period of six months after notice of intention to resign has been served by an Operator on all Parties, unless a new Operator shall have been selected and approved and shall have taken over and assumed the duties and obligations of that Operator prior to the expiration of said period. In all instances of resignation or removal, until a successor Operator is selected and approved as hereinafter provided, the Parties shall be jointly responsible for performance of the duties of that Operator, and shall not later than 30 days before such resignation or removal becomes effective appoint a common agent to represent them in any action to be taken hereunder.

The resignation of the Operator shall not release that Operator from any liability for any default by it hereunder occurring prior to the effective date of its resignation.

Any Operator may, upon default or failure in the performance of its duties or obligations hereunder be subject to removal by a vote representing fifty percent (50%) or more of the voting power of the Parties. Such removal shall be effective upon notice thereof to the Parties.

The resignation or removal of an Operator under this Agreement shall not terminate its right, title, or interest as the owner of a Working Interest, but upon the resignation or removal of an Operator becoming effective such Operator shall deliver possession of all equipment, materials, and appurtenances used in conducting the operations and owned by the Parties to the duly qualified successor Operator or to the owners thereof if no such new Operator is elected, to be used for the purpose of conducting operations hereunder. Nothing herein shall be construed as authorizing removal of any

**EXHIBIT A**
**Page 11 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

material, equipment and appurtenance needed for the preservation of any wells.

Whenever the Operator shall resign, or shall be removed as hereinabove provided or a change of an Operator is negotiated by the Parties, the Parties shall select a successor Operator. Such selection shall not become effective until the Operator so selected shall accept in writing the duties and responsibilities of Operator.

## ARTICLE VII - AUTHORITIES AND DUTIES OF OPERATOR

7.1    OPERATOR

A.    <u>General Duties</u>.    Operator shall be responsible for submitting all required reports to the State of Alaska and other regulatory authorities and shall, subject to subsection 3.2K, represent the Parties at hearings or other meetings held by any regulatory bodies pertaining to operations hereunder. Pursuant to the provisions of this Agreement, Operator shall have the exclusive right and duty to conduct operations according to plans and procedures as specified by the Parties and to do all things necessary and consistent therewith, including the execution of all contracts as Operator which affect drilling, reworking and servicing of wells, and construction and operation of facilities, and the purchasing of supplies, and shall prepare or assist in the preparation of any and all applications, reports, or other documents required by any governmental agency.

B.    <u>Records and Reports</u>. Operator shall keep correct books, accounts and records and shall furnish the Parties with periodic reports of operations conducted by it pursuant to this Agreement. Daily or periodic reports for production, drilling and other operations shall be submitted as general practices dictate.

C.    <u>Wells Drilled, Deepened or Worked Over by Operator</u>. All wells drilled by Operator through independent contractors shall be at not more than the usual rates prevailing in the area. Operator may employ its own tools and equipment, but the charge therefor shall not exceed the prevailing rate in the area and the work shall be performed under terms

7

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

and conditions customary in the area in contracts of independent contractors doing work of a similar nature.

### 7.2    OPERATIONS

A.    <u>Workmanlike Conduct</u>. Operator shall conduct all operations in a good and workmanlike manner. Operator shall not be liable to the Parties for damages, unless such damages result from Operator's gross negligence or willful misconduct.

B.    <u>Liens and Encumbrances</u>. Operator shall endeavor to see that the lands and leases in the Area are kept free from all liens and encumbrances occasioned by operations, except the liens of Operator granted hereunder.

C.    <u>Employees</u>. All individuals employed by Operator in conducting operations shall be the employees of that party employing same, and their selection, hours of labor, compensation, and all other matters relating to their employment shall be determined by Operator.

D.    <u>Expenditures</u>.

1.    The Operator shall have the right to make expenditures up to an aggregate of one hundred thousand dollars ($100,000) for any single project of any kind, without consent of the Parties.

2.    For all projects exceeding fifty thousand dollars ($50,000) but less than fifty thousand dollars ($100,000), an informational Authorization for Expenditure (AFE) shall be prepared by the Operator and submitted to the Working Interest owners before work commences.

3.    All Projects exceeding one hundred thousand dollars ($100,000) shall require approval of the Parties. An AFE shall be prepared by the Operator and supplied to the Parties for approval. Response to a request for approval of an AFE shall be given to the Operator within forty-five (45) days after receipt of the request. The non-consent

8

**OPERATING AGREEMENT**
**TRADING BAY FIELD**
**COOK INLET, ALASKA**

provisions of Article IX shall apply if fewer than all Parties vote to approve the AFE.

4.   If, at any time, it becomes apparent that expenditures for an AFE and any Supplemental AFE's for such item previously approved pursuant to this Subsection 7.2D will be or has exceeded the authorized limit by ten percent (10%) or fifty thousand dollars ($50,000) whichever is greater, or by one million dollars ($1,000,000), the Operator shall notify the Parties and shall, without delay, prepare a Supplemental AFE. A Supplemental AFE shall also be prepared for an informational AFE if it becomes apparent that expenditures will have or have exceeded the $100,000 formal AFE threshold. The Supplemental AFE shall include reasons of the increased cost, and shall request approval for the additional expenditures anticipated. The Operator shall give verbal notification to the Parties advising that a Supplemental AFE may be required. The Parties shall have 3 business days from receipt of a Supplemental AFE to vote on the approval requested.

5.   Unless otherwise stated in an AFE or Supplemental AFE, the approval granted for the project described in the AFE or Supplemental AFE will be canceled if no work has been performed or money spent on the project six (6) months after the AFE or Supplemental AFE has received requisite approval, or six (6) months after proposed start date, whichever occurs first.

6.   If any emergency occurs, Operator may immediately make or incur such expenditures as in its opinion are required to deal with the emergency. Operator shall report to the Parties as promptly as practicable the nature of the emergency and the action taken and, as soon as practical, prepare an AFE if otherwise required by the provisions of this Sub-section 7.2D.

9



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## ARTICLE VIII - DRILLING, DEEPENING, PLUGGING BACK OR ABANDONMENT OF EXPLORATORY, DEVELOPMENT AND INJECTION WELLS

**8.1    GENERAL PROVISIONS FOR EXPLORATORY, DEVELOPMENT AND INJECTION WELLS**

A.    <u>General</u>.  The Drilling, Deepening, Plugging Back or abandoning of a well within the Area shall be conducted only in accordance with the provisions of this Article VIII.

B.    <u>Operator to Conduct Operations</u>.  All Drilling, Deepening, Plugging Back, and abandoning operations shall be conducted by the Operator.

C.    <u>Notice of Proposed Operations</u>.  If any Party hereto should  desire to Drill any well within the Area, or, if any Party should desire to rework, sidetrack, Deepen, recomplete or Plug Back a dry hole or a well no longer capable of producing in paying quantities in which such Party has not otherwise relinquished its interest in the proposed objective Pool under this Agreement, the party desiring to Drill, rework, sidetrack, Deepen, recomplete or Plug back such a well shall give written notice of the proposed operation to the Parties who have not otherwise relinquished their interest in such objective Pool under this Agreement and to the other Parties in the case of a proposal for sidetracking or Deepening, specifying the work to be performed, the location, proposed depth, objective Pool and the estimated cost of the operation. All proposed operations shall be subject to the requirements of Article VII section 7.2 D.

D.    <u>Response to Notice</u>.  Within forty-five (45) days after receipt of such notice, each Party shall advise all other Parties, in writing, whether or not it approves and desires to participate in such operations.  If the Parties approve such operations, then the proposed operations shall be conducted by the designated Operator.  If any Party fails to respond to such notice within said forty-five (45) day period, it shall be deemed to have failed to approve such proposed operation and to have elected not to participate therein. Notwithstanding the provisions of the foregoing paragraph, if a drilling rig has suspended operations awaiting approval of redrilling, Deepening, Plugging Back or abandoning of a well, then the Parties receiving such notice shall have forty-eight (48) hours

10

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

(exclusive of Saturdays, Sundays, and legal holidays) after receipt thereof within which to notify the Parties giving such notice whether they approve and desire to participate in the proposed operations. All such notices given under this paragraph shall be by telephone, or facsimile, followed by written notice.

E.    <u>Fewer Than All Parties</u>.  Whenever all Parties entitled to participate in approved operations fail to agree to participate, then within fifteen (15) days after expiration of said forty-five (45) days' notice period or within twenty-four (24) hours (exclusive of Saturdays, Sundays and legal holidays) after expiration of said forty-eight (48) hour notice period, each such Party who desires to participate in the approved operations shall give to the other Parties written notice (or in the case of the twenty-four (24) hour notice period, by telephone, or facsimile) of the election to participate in such approved operations.  Failure to give such notice shall be deemed an election not to participate. Unless otherwise agreed by the Parties, the entire cost, risk, liability and expense of the Drilling, Deepening, or Plugging Back of a Development or Exploratory Well by fewer than all the Parties shall be borne by the Parties comprising the Drilling Party. No operations by fewer than all Parties shall be conducted in such a manner as to interfere or conflict with any other operations.

F.    <u>Abandonment of Non-Productive Pool within a Well</u>.  In the event the proposed operation is the abandonment of a non-productive Pool, within a well, then the notice required in Subsection 8.1C. shall also be given to the Parties.  If the Parties give notice of election, in the manner provided in Subsection 8.1D, to take over the well drilled into such Pool and if the Parties participating in the Costs of said well approve the proposed abandonment, the Parties electing not to abandon such pool shall take over said well upon such terms and conditions contained in Subsection 8.5.

G.    <u>Use of Equipment</u>.  In the case of any Plugging Back or Deepening operation, the Drilling Party shall purchase, at salvage value, all casing, tubing and other equipment in the well.

11

EXHIBIT A
Page 16 of 46