OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

### 8.2 EXPLORATORY WELLS

A. <u>Right to Drill</u>. If any Party desires to Drill, Deepen or Plug Back a well as an Exploratory Well, then it shall have the right to do so under the provisions of this Article VIII.

B. <u>Drilling from Mobile Platforms</u>. The Drilling of an Exploratory Well from a mobile platform or drilling barge shall be outside the scope of this Agreement, but nothing herein contained shall be deemed to prevent the Drilling of such a well on the Tract by a Party owning a Working Interest therein.

C. <u>Operations and Participation</u>. The Drilling, Deepening or Plugging Back of an Exploratory Well from any facility other than a mobile platform or drilling barge shall be accomplished in the following manner: In the event the proposed operation receives the approval of the Parties as provided in Subsection 8.1D or 8.1E, then each owner of a Working Interest in the Tract shall have the right to participate in proportion to its Working Interest in that Tract. If fewer than all Working Interest owners approve such operations, then those electing to proceed shall conduct such operations at their sole cost, risk and expense.

### 8.3 DEVELOPMENT WELLS

A. <u>Right to Drill</u>. If any Party desires to Drill, Deepen, or Plug Back a well as a Development Well, then it shall have the right to do so under the provisions of this Article VIII.

B. <u>Operations and Participation</u>. The Drilling, Deepening or Plugging Back of a Development Well shall be accomplished in the following manner: In the event the proposed operation receives the approval of the Parties as provided in Subsection 8.1D or 8.1E, each Party shall have the right to participate therein in proportion to its Working Interest.

### 8.4 RELINQUISHMENT AND REVERSION OF INTERESTS

A. <u>Operations by Less than All Parties</u>. In order for the Drilling Party to receive the benefits of this Section 8.4, the proposed operations shall

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

be commenced within six months after the expiration of the notice period provided in Subsection 8.1D or 8.1E, whichever is the later date.

B. <u>Relinquishment of Interest by Non-Drilling Party</u>. When a well which is Drilled, Deepened or Plugged Back by less than all Parties entitled to participate therein is completed as a producer, each Non-Drilling Party shall be deemed to have relinquished to the Drilling Party all of its operating rights and Working Interest in and to such Well, and Drilling Party shall make, or cause to be made, payments for Lease Burdens in respect of Production from said well, in accordance with Article XIII.

C. <u>Reversion of Relinquished Interests</u>. The operating rights and Working Interests relinquished by a Non-Drilling Party shall revert to it at such time as the Market Value, calculated by Drilling Party, of that Non-Drilling Party's share of the Production obtained from the well after such relinquishment (after deducting from such Market Value all taxes upon or measured by Production and all Lease Burdens) shall equal the total of the following:

1) One hundred per cent (100%) of that portion of the Costs incurred in operating the well (including the portion of costs of acquisition or use of platforms, pipelines or other facilities attributable to such operations by less than all Parties, but excluding the Costs provided for in this Subsection 8.4C(2)) that would have been charged to such Non-Drilling Party had all Parties entitled thereto participated therein; and

2) Six hundred per cent (600%) in the case of an Exploratory Well, or four hundred per cent (400%) in the case of a Development Well, of that portion of the Costs incurred by Drilling Party in the Drilling, Deepening, or Plugging Back of said well, through and including the wellhead connections, that would have been chargeable to such Non-Drilling Party had all Parties entitled thereto participated therein.

D. <u>Effect of Reversion</u>. From and after reversion to a Non-Drilling Party of its relinquished interest in a well, such Non-Drilling Party shall share in the ownership of the well, the operating rights and Working Interest therein, the materials and equipment in or pertaining to the well, the

13

EXHIBIT A
Page 18 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

Production therefrom and the Costs of operating the well as otherwise provided in this Agreement.

### 8.5 ABANDONMENT OF PRODUCING WELLS

No well which is producing or has once produced shall be abandoned without approval of the Parties then owning a Working Interest therein. If such approval is not obtained, then the Parties not desiring to abandon shall pay to such other Party the latter Party's proportionate share of the fair market value of the salvable material and equipment in and on such well determined at the time such abandonment is proposed, less such latter Party's estimated share of the cost of abandonment. Upon receipt of said sum, the Party desiring to abandon said well shall assign to the other Parties, without warranty of title, all of its operating rights and Working Interest in the well and all subsequent Production therefrom, as to the Pool from which said well is then producing, or has once produced, but not as to any other Pool and all of its interest in the material and equipment in and on said well. If such assignment or conveyance shall run in favor of more than one Party hereto, the interest covered thereby shall be shared by such Parties in the proportion that the interest of each Party assignee bears to the interest of all Parties assignee. The Party proposing such abandonment shall give the notice required in Subsection 8.1C to the Parties. If the Parties give notice of election, in the matter provided in Subsection 8.1D, to take over said well and if the Parties then owning a Working Interest in said well approve the proposed abandonment, the Parties shall take over said well as provided in this Section 8.5. Unless at the direction of the Parties the well is to be taken over for use in operations, the Operator shall plug and abandon the well for the account of the Parties owning a Working Interest therein. As used in this Section 8.5, "well" shall be deemed to apply separately to each Pool from which that well is then producing or has produced, and the value of the salvable material and equipment therein shall be attributed in proportion to the ownership thereof.

### 8.6 INJECTION WELLS

The Costs of Drilling, Deepening, Plugging Back, abandoning, or taking over a well as an Injection Well shall be borne by all the Parties for which the well is to be used for the purpose of disposal or pressure maintenance or

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

secondary recovery operations. All parties shall bear such Costs according to their respective Working Interest.

## ARTICLE IX - CONSTRUCTION OF CERTAIN FACILITIES

**9.1  GENERAL**

The construction of any production equipment, pipeline, or other facilities not related to secondary recovery or pressure maintenance programs, the cost of which exceeds One Million Five Hundred Thousand Dollars ($1,500,000.00), referred to in this Article IX as "Such Construction," shall be conducted in or for the benefit of the Area only in accordance with the provisions of this Article IX. For the purposes of this Article IX, reference to Parties shall mean all Parties to be served by the proposed production equipment, pipeline, or other facility.

**9.2  OPERATOR TO CONDUCT OPERATIONS**

Such Construction shall be conducted by the Operator designated by the Parties participating in the Costs thereof.

**9.3  NOTICE OF PROPOSED CONSTRUCTION**

Any Party may propose Such Construction by giving to each of the other Parties written notice specifying the location, contemplated service, design, specifications, proposed operator, and estimated Costs of Such Construction.

**9.4  RESPONSE TO NOTICE**

Within forty-five (45) days after receipt of such notice, each Party shall advise all other Parties, in writing, whether or not it approves Such Construction and whether or not it desires to participate in Such Construction. If the Parties approve Such Construction in the manner provided in Article IV, then Such Construction shall be conducted by the Operator.

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

### 9.5 PARTICIPATION

In the event Such Construction receives the approval of the Parties as provided in Section 9.4, each Party shall have the right to participate therein. Unless otherwise agreed by the Parties, the entire cost, risk, liability and expense of Such Construction by fewer than all of the Parties shall be borne by the Parties comprising the Participating Party (as hereinafter defined) in proportion to their respective interests in Such Construction as herein after provided. The Party or Parties electing to participate in Such Construction shall be referred to in this Article IX as "Participating Party."

### 9.6 RELINQUISHMENT AND REVERSION OF INTERESTS

A. <u>Such Construction By Less Than All Parties</u>. In order for the Participating Party to receive the benefits of this Section 9.6, Such Construction shall be commenced within one (1) year after the expiration of the period provided in Section 9.4. Each Participating Party shall participate in Such Construction in the proportion of its Working Interest.

B. <u>Non-Ownership and Relinquishment of Interest</u>. When any Party who is entitled to participate in such Construction elects not to participate therein, such Party referred to in this Article IX as "Non-Participating Party", it shall be deemed to have no interest in and shall not be entitled to the use of the facility constructed.

C. <u>Acquisition of an Interest and Reversion of Relinquished Interest</u>. Within thirty (30) days after the production equipment, pipeline or other facility is put into service, operator of Such Construction shall furnish each Non-Participating Party a statement of the estimated Costs of Such Construction. Within sixty (60) days after receipt of such statement, each Non-Participating Party may elect to pay to the operator who conducted Such Construction an amount of money equal to the total of the following:

(1) One hundred per cent (100%) of that portion of the Costs incurred in operating the facility that would have been charged to such Non-Participating Party had it participated in Such Construction;



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

    (2)  One hundred thirty-five per cent (135%) of that portion of the Costs incurred and committed in Such Construction ; and

    (3)  Interest at the rate of one percent (1%) per month (or, if lower, the highest rate permitted by law) on such amounts computed from the month during which each portion of such Costs was paid. If a Non-Participating Party has elected to make the payment hereinabove provided, and does so within thirty (30) days after such election, such Non-Participating Party shall immediately have transferred to it that interest in that production equipment, pipeline or other facility as it would have had if it had participated in the construction thereof, and the operating rights and Working Interests which it relinquished by failing to participate in Such Construction shall at that time revert to such Party.

D.  <u>Payment by Operator</u>. All payments received by Operator from a Non-Participating Party pursuant to Subsection 9.6C shall be paid promptly to the Participating Parties in the proportions in which they shared the Costs of Such Construction and Drilling.

### ARTICLE X - RIGHT TO TAKE IN KIND AND FAILURE TO TAKE IN KIND -- UNDERLIFTING

**10.1 TAKING IN KIND**

Each Party shall currently take in kind or separately dispose of its share of Production, but its share shall include any Production said Party is then making up as the result of its underlift pursuant to this Article X. Each such Party shall have the right to construct, maintain, and operate all necessary facilities for that purpose, provided that they are so constructed, maintained and operated as not to interfere with operations. Any extra expenditures incurred by reason of delivery in kind of any portion of the Production shall be borne by the receiving Party. If a royalty owner has the right to take in kind a share of Production and fails to do so, each Party taking Production shall take its lessor's Royalty Share of Production. On all purchases or sales each

Party shall execute any division order or contract of sale pertaining to its interest.

### 10.2  UNDERLIFTING OF PRODUCTION

Notwithstanding the ownership of Production set forth in this Agreement, in the event any Party fails to take or otherwise dispose of its entire share of Production, the other Parties shall be entitled to take the Production not taken, and the Parties will cooperate in returning all Parties to balance of cumulative Production as soon as practicable.

### 10.3  ALLOCATION OF COSTS

Except as to Lease Burdens and taxes measured by production, no adjustment shall be made in Costs when a Party is underlifting or overlifting. Lease Burdens and taxes measured by Production shall be borne by the Parties in proportion to the Production taken by each of them.

### 10.4  INDEMNITY

In the event any Party or Parties is underlifted and any such action causes the rate of production hereunder to be reduced, then said Party or Parties shall be solely responsible to the State of Alaska and any other royalty owner or overriding royalty owner for, and hold the other Parties harmless and indemnify them against, any and all claims whatsoever which arise as a result of such failure to take.

## ARTICLE XI - EXPENSE

### 11.1  BASIS OF CHARGE TO PARTIES

All Costs incurred for the benefit of the Area initially shall be paid by Operator. Each Party shall reimburse Operator for its Working Interest share of such Costs except as otherwise provided in Articles VIII, IX, and X. All charges, credits and accounting shall be in accordance with Exhibit "C."

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

### 11.2 ADVANCE BILLINGS

Operator shall have the right to require the Parties to advance their respective shares of estimated Costs by submitting to such Parties, on or before the 15th day of any month, an itemized estimate thereof for the succeeding month, with a request for payment in advance. Within fifteen (15) days thereafter, each Party shall pay to Operator its share of such estimate. Adjustments between estimated and actual Costs shall be made by Operator at the close of each calendar month, and the accounts of such Parties shall be adjusted accordingly.

### 11.3 COMMINGLING OF FUNDS

No funds received by Operator under this Agreement need be segregated or maintained by it as a separate fund, but may be commingled with its own funds.

### 11.4 LIEN OF OPERATOR

Each Party grants to the Operator a lien upon its Working Interests in the Area, and its interest in all property, as security for payment of its share of Costs, together with interest thereon at the rate of twelve per cent (12%) per annum or, if lower, at the highest rate allowed by law. Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien. In addition, upon default by any Party in the payment of its share of Costs, Operator shall have the right to collect from the purchaser the proceeds from the sale of such Party's share of Production until the amount owed by such Party, plus interest as aforesaid, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any amount due hereunder.

## ARTICLE XII - TITLES

### 12.1 WARRANTY AND INDEMNITY

Each Party represents and warrants that it is the owner of the respective Working Interests and hereby agrees to indemnify and hold harmless the other

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

Parties from any loss due to failure, in whole or in part, of its title to any such interest, except failure of title arising out of operations; provided that such indemnity shall be limited to an amount equal to the net value that has been received from the sale or receipt of Production attributable to the interest as to which title failed. Each failure of title will be deemed to be effective, insofar as this Agreement is concerned, as of the first day of the calendar month in which such failure is finally determined, and there shall be no retroactive allocation of Costs or retroactive allocation of Production or the proceeds therefrom, as a result of title failure.

## ARTICLE XIII - RENTALS AND LEASE BURDENS

### 13.1 RENTALS

Each Party shall be obligated to pay, or cause to be paid, any and all rentals and other sums (other than Lease Burdens) payable upon or in respect of its Working Interests, subject, however, to the right of each Party to surrender any of its Working Interests in accordance with Article XVI. Upon request, each Party shall furnish to Operator satisfactory evidence of the making of such payments. However, no Party shall be liable to any other Party for unintentional failure to make any such payments provided it has acted in good faith.

### 13.2 LEASE BURDENS

Each Party entitled to receive a share of Production shall make, or cause to be made, payments for that portion of the Lease Burdens constituting the Royalty Share due the State of Alaska on such Party's share of Production or the proceeds allocated thereto under this Agreement. Each Party shall be obligated to pay, or cause to be paid, all other Lease Burdens attributable to its Working Interest, and shall be liable for any additional Costs occasioned thereby.

### 13.3 PAYMENTS TO BE BORNE BY PARTIES

All payments made pursuant to this Article XIII shall be borne by the Party responsible for such payments in accordance with this Agreement, any



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

payments made by Operator on behalf of a Party shall be reimbursed by the Party liable for payment.

### ARTICLE XIV - TAXES

#### 14.1 TAXES UPON PROPERTY AND OPERATIONS

All taxes assessed or levied upon property or operations under this Agreement, except income taxes, taxes measured by Production and taxes upon Lease Burdens which are payable by the owners thereof, shall be paid by Operator as and when due and payable. All such taxes shall be charged to and borne by the Parties in proportion to their respective Working Interests.

#### 14.2 OTHER TAXES

Each Party shall pay or cause to be paid all taxes imposed upon or in respect of its share of Production or handling of its share of Production.

#### 14.3 TRANSFER OF INTERESTS

In the event of a transfer by one Party to another under the provisions of this Agreement of any Working Interest, or of any interest in any well or in the materials and equipment in any well, or of any interest in platforms, pipelines or other facilities, or in the event of the reversion of any relinquished interest as in this Agreement provided, the taxes above mentioned assessed against the interest transferred or reverted for the taxable period in which such transfer or reversion occurs shall be apportioned between such Parties so that each shall bear the percentage of such taxes which is proportionate to that portion of the taxable period during which it owned such interest.

#### 14.4 NOTICES AND RETURNS

Each Party shall promptly furnish Operator with copies of notices, assessments, levies or tax statements received by it pertaining to the taxes to be paid by Operator. Operator shall make such returns, reports and statements as may be required by law in connection with any taxes above provided to be paid by it, shall furnish copies to the Parties upon request, and

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

shall notify the Parties of any tax which it does not propose to pay before such tax becomes delinquent.

## ARTICLE XV - INSURANCE

### 15.1 REQUIRED INSURANCE

Operator shall procure and maintain the following insurance for the protection of all Parties hereto and the premiums therefor shall be charged as Costs under this Agreement. In lieu of providing insurance, Operator may cover its obligation under this Agreement through its financial resources and satisfy any required evidence of such with a "Letter of Self Insurance". The insurance coverage may be altered from time to time as conditions warrant subject to approval of the Parties.

A.  Operator shall carry:

   (1) General Liability Insurance and Marine Liability (also referred to as Protection and Indemnity Insurance) and Aircraft Liability (if aircraft are used) each with a combined single limit of at least $500,000 per occurrence.

   (2) All Risk Physical Damage Insurance, if readily available, including Debris Removal, and Cost of Control of Well Insurance, with a deductible of at least $100,000 per occurrence.

B.  Operator shall carry: Workmen's Compensation and Employers' Liability to cover all operations including marine operations (and liability for transportation, wages, maintenance and cure to a master or a member of a crew of any vessel) conducted under this Agreement with an Employers' Liability limit of at least $500,000. Such insurance shall contain a provision wherein carrier waives its right to subrogation against the Parties hereto.

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

### 15.2 INDIVIDUAL INSURANCE

Any Party may procure and maintain at its own cost and expense such other insurance as it shall determine and any such insurance shall inure solely for the benefit of such Party procuring the same; provided, however, that each such insurance policy shall contain a waiver on the part of the insurance carrier of all rights, by subrogation or otherwise, against each Party not named as an insured in such policy or if such waiver is not secured the insured shall indemnify and hold harmless each Party not named as an insured in such policy against any claim of the insurance carrier arising against such Party by subrogation or otherwise.

### 15.3 CONTRACTORS' INSURANCE

Operator shall require all contractors engaged in operations under this Agreement to comply with the Workmen's Compensation Law of the State of Alaska, and cover all marine operations conducted under the contract, and to maintain such other insurance in such amounts as is deemed necessary by the Operator. All such insurance shall contain a waiver of subrogation by the carrier as to each Party not named as an insured therein.

### 15.4 NOTICE OF LOSSES AND CLAIMS

Operator shall notify the other Parties as soon as practicable after the occurrence of any major accident involving either damage to property or injuries to or death of persons.

### ARTICLE XVI - RELEASE FROM OBLIGATIONS; SURRENDER; RIGHT OF FIRST REFUSAL

### 16.1 SURRENDER OR RELEASE

A Working Interest shall not be surrendered except with the consent of all Parties. However, a Party who owns a Working Interest and who is not at the time committed to participate in the Drilling, Deepening or Plugging Back of a Well may be relieved of further obligations with respect to such Pool as then constituted by executing and delivering to Operator an assignment conveying

Case 3:06-cv-00102-JKS  Document 57-3  Filed 02/26/2008  Page 13 of 15



**OPERATING AGREEMENT**
**TRADING BAY FIELD**
**COOK INLET, ALASKA**

to all other Parties all Working Interests owned by such Party, together with the entire interest of such Party in any and all wells, materials, equipment and other property, and, if applicable, the payment required by Section 8.5.

### 16.2 ACCRUED OBLIGATIONS

A Party making an assignment or surrender in accordance with Section 16.1 shall not be relieved of its liability for any obligation accrued hereunder at the time the assignment or surrender is made, or of any obligation to bear its share of the Costs incurred in any Drilling, Deepening or Plugging Back operation in which such Party has elected to participate prior to the making of such assignment or surrender: provided, however, that the liability of Marathon and Union for such costs shall terminate when both of them have disposed of all of their Working Interests in the Area.

### 16.3 RIGHT OF FIRST REFUSAL

No Party shall sell all or any portion of its Working Interests in the Area to a third party unless that Party has first offered to sell all or such portion of its Working Interests to each of the other Parties pursuant to this Section 16.3. Any Party which proposes to sell all or a portion of its Working Interests ("Selling Party") to a third party shall provide to each of the other Parties a notice of the name and address of the prospective third-party purchaser (who must be ready, willing and able to purchase), the purchase price, a legal description of the assets to be purchased, and all substantive terms of such offer. Within twenty days following the date a Party receives such notice, it ("Purchasing Party") may notify the Selling Party of its agreement to purchase the Selling Party's Working Interests which are subject to the offer from the third party, in which case the Selling Party shall convey the Working Interests which are subject to the third-party offer to the Purchasing Party for the same consideration and on the same terms and conditions to which the third party has agreed. If there is more than one Purchasing Party, then the Selling Party shall convey such interests to each Purchasing Party in the same proportion that each Purchasing Party's Working Interests in the Area bears to the Working Interests of all Purchasing Parties in the Area at the time that the Selling Party provides the notice required by this Section 16.3. However, there shall be no preferential right to purchase in those cases in which any Party wishes to mortgage its interests, or to transfer title to its interests to its mortgagee in lieu of or pursuant to foreclosure of a mortgage of its interests,

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

or to dispose of its interests by merger, reorganization, consolidation, or by sale of all or substantially all of its oil and gas assets to any party, or by transfer of its interests to a subsidiary or parent company or to a subsidiary of a parent company, or to any company in which such Party owns a majority of the stock.

## ARTICLE XVII - FORCE MAJEURE

### 17.1 FORCE MAJEURE

The obligations of Operator hereunder shall be suspended to the extent that, and only so long as, performance thereof is prevented, in whole or in part, by acts of God, fire, action of the elements, weather or natural phenomena, including, but not limited to, ice within the Area rendering continued operations hazardous to life or property, strikes or other differences with workmen, unavoidable accidents, acts of civil or military authorities, acts of the public enemy, restrictions or restraints imposed by law or by regulation or order of governmental authority, whether Federal, state, or local, inability to obtain necessary rights of access, uncontrollable delays in transportation, inability to obtain necessary materials in open market, or any other cause reasonably beyond control of Operator whether or not similar to any cause above enumerated. Operator shall not be required against its will to adjust or settle any labor dispute. Whenever performance of obligations is prevented by any such cause, Operator shall give notice thereof to the other Parties as promptly as reasonably possible.

## ARTICLE XVIII - NOTICES

### 18.1 GIVING AND RECEIPT

Except as otherwise specified herein, any notice, consent, or statement herein provided or permitted shall be deemed to have been properly served when sent by mail, facsimile transmission, courier or telegram to the address of the representative of each Party as furnished to Operator in accordance with Article XVIII. A notice given under any provision hereof shall be deemed given only when received by the Party to whom such notice is directed.

25

EXHIBIT A
Page 30 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

### 18.2 PROPER ADDRESSES

Each Party's proper address for notice as of the date of this Agreement is listed as follows:

| | |
|---|---|
| Union Oil Company of California<br>909 W 9th Ave<br>P.O. Box 196247<br>Anchorage, AK 99519-6247 | Marathon Oil Company<br>3201 C St. Suite 800<br>P.O. Box 196168<br>Anchorage, AK 99519-6168 |
| Ph (907) 276-7600<br>Fax (907) 263-7698 | Ph (907) 561-5311<br>Fax (907) 564-6489 |

### ARTICLE XIX - LIABILITY, CLAIMS, AND SUITS

#### 19.1 INDIVIDUAL LIABILITY

The duties, obligations, and liabilities of the Parties shall be several and not joint or collective; and nothing herein contained shall ever be construed as creating a partnership of any kind, joint venture, association, trust, or other legal entity among the Parties.

#### 19.2 SETTLEMENTS

Operator may settle any single damage claim or suit involving operations but not involving an expenditure in excess of Ten Thousand Dollars ($10,000.00) provided the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above specified amount, the Parties shall assume and take over the further handling of the claim or suit unless such authority is expressly delegated to Operator. All costs and expense of handling, settling, or otherwise discharging such claim or suit shall be an item of Costs. If a claim is made against any Party on account of any matter arising from operations hereunder for which such Party is not solely responsible under this Agreement, the Party shall immediately notify the other Parties and the claim or suit shall be treated as any other claim or suit involving operations.