# UNIT AGREEMENT WITH AMENDMENT
# FOR DEVELOPMENT AND OPERATION OF THE
# TRADING BAY UNIT AREA
# STATE OF ASLAKA

UNIT AGREEMENT

FOR THE DEVELOPMENT AND OPERATION OF THE

TRADING BAY UNIT AREA

STATE OF ALASKA

THIS AGREEMENT, entered into as of the 6th day of February, 1967, by and between the parties subscribing, ratifying, or consenting hereto, and herein referred to as the "parties hereto".

WITNESSETH:

WHEREAS, the parties hereto are the owners of working, royalty or other oil and gas interests in the unit area subject to this agreement; and,

WHEREAS, the Commissioner of the Department of Natural Resources, State of Alaska, hereinafter referred to as the "Commissioner", is authorized by Alaska Statute 38.05 and appropriate State Regulations to consent to or approve this agreement on behalf of the State of Alaska, insofar as it covers and includes lands and mineral interests of the State of Alaska; and

WHEREAS, the parties hereto hold sufficient interest in the Trading Bay Unit Area covering the land hereinafter described to give reasonably effective control of operations therein; and

WHEREAS, it is the purpose of the parties hereto to conserve natural resources, prevent waste, and secure other benefits obtainable through development and operation of the area subject to this agreement under the terms, conditions and limitations herein set forth; and,

WHEREAS, State Lands, as that term is used in this agree-

ment, means those lands title to which is vested or that become vested in the State of Alaska and lands which have been tentatively approved after state selection and are not covered by an existing Federal oil and gas lease at such time as any right or authority is exercised;

NOW, THEREFORE, in consideration of the premises and the promises herein contained, the parties hereto commit to this agreement their respective interests in the below-defined unit area, and agree severally among themselves as follows:

1. ENABLING ACT AND REGULATIONS. The Alaska Land Act (A.S. 38.05.005-370) and all valid and pertinent oil and gas statutes and regulations including the oil and gas operating statutes and regulations in effect as of the effective date hereof or hereafter issued thereunder governing drilling and producing operations, not inconsistent with the terms hereof or the laws of the State of Alaska are hereby accepted and made a part of this agreement.

2. UNIT AREA. The area specified on the map attached hereto marked Exhibit "A" is hereby designated and recognized as constituting the unit area, containing 39,599 acres, more or less. Exhibit "A" shows, in addition to the boundary of the unit area, the boundaries and identity of tracts and leases in said area to the extent known to the Unit Operator.

Exhibit "B" attached hereto is a schedule showing, to the extent known to the Unit Operator, the acreage, percentage, and kind of ownership of oil and gas interests in all land in the unit area. However, nothing herein or in said schedule or map shall be construed as a representation by any party hereto as to the ownership of any interest other than such interest or interests as are shown in said

map or schedule as owned by such party.

Exhibits "A" and "B" shall be revised by the Unit Operator whenever changes in the unit area render such revision necessary, or when requested by the Director, Division of Lands of the Department of Natural Resources, hereinafter referred to as the "Director", and four (4) copies thereof shall be filed with the Director.

The above-described unit area shall, when practicable, be expanded to include therein any additional tract or tracts regarded as reasonably necessary or advisable for the purposes of this agreement, or shall be contracted to exclude lands not within any participating area whenever such expansion or contraction is necessary or advisable to conform with the purposes of this agreement. Such expansion or contraction shall be effected in the following manner:

(a) Unit Operator, on its own motion, or on demand of the Director, shall prepare a notice of proposed expansion or contraction describing the contemplated changes in the boundaries of the unit area, the reasons therefor and the proposed effective date thereof, preferably the first day of a month subsequent to the date of notice.

(b) Said notice shall be delivered to the Director and copies thereof mailed to the last known address of each working interest owner, lessee, and lessor whose interests are affected, advising that 30 days will be allowed for submission to the Unit Operator of any objections.

(c) Upon expiration of the 30-day period provided in the preceding item (b) hereof, Unit Operator shall file with the Director, evidence of mailing of the notice of expansion or contraction, and a copy of any objections thereto which have been filed with the Unit Operator, together with an application in sufficient number, for approval of such expansion or contraction and with appropriate joinders.

(d) After due consideration of all pertinent information, the expansion or contraction shall, upon approval by the Director become effective as of the date prescribed in the notice thereof.

(e) All legal subdivisions of unitized lands (i.e., 40 acres by Government survey or its nearest lot or tract equivalent in instances of irregular surveys, however, unusually large lots or tracts shall be considered in multiples of 40 acres, or the nearest aliquot equivalent thereof, for the purpose of elimination under this subsection), no parts of which are entitled to be in a participating area within five years after the first day of the month following the effective date of the first initial participating area established under this unit agreement, shall be eliminated automatically from this agreement, effective as of the first day thereafter, and such lands shall no longer be a part of the unit area and shall no longer be subject to this agreement except as provided in Paragraph 18 (g), unless at the expiration of said five-year period diligent drilling operations are in progress on unitized lands not entitled to participation, in which event all such lands shall remain subject hereto for so long as such drilling operations are continued diligently, with not more than ninety (90) days time elapsing between the

-4-

completion of one such well and the commencement of the next such well, except that the time allowed between such wells shall not expire earlier than 30 days after the expiration of any period of time during which drilling operations are prevented by a matter beyond the reasonable control of Unit Operator, as set forth in the section hereof entitled "Unavoidable Delay"; provided that all legal subdivisions of lands not in a participating area and not entitled to become participating under the applicable provisions of this agreement within 10 years after the first day of the month following the effective date of said first initial participating area shall be eliminated as above specified. Determination of creditable "unavoidable delay" time shall be made by Unit Operator and subject to approval of the Director. The Unit Operator shall, within 90 days after the effective date of any elimination hereunder, describe the area so eliminated to the satisfaction of the Director and promptly notify all parties in interest.

If conditions warrant extension of the ten-year period specified in this subsection 2(e), a single extension of not to exceed two years may be accomplished by consent of the owners of ninety percent of the current unitized working interest and sixty percent of the current unitized basic royalty interests (exclusive of the basic royalty interests of the State) on a total nonparticipating-acreage basis, respectively, with approval of the Commissioner provided such extension application is submitted to the Director not later than 60 days prior to the expiration of said ten-year period.

Any expansion of the unit area pursuant to this section which embraces lands theretofore eliminated pursuant to this sub-

-5-

section 2(e) shall not be considered automatic commitment or re-commitment of such lands.

3. UNITIZED LAND AND UNITIZED SUBSTANCES. All land committed to this agreement shall constitute land referred to herein as "unitized land" or "land subject to this agreement". All oil and gas in any and all formations of the unitized land are unitized under the terms of this agreement and herein are called "unitized substances".

4. UNIT OPERATOR. UNION OIL COMPANY OF CALIFORNIA, with offices at Anchorage, Alaska, is hereby designated as Unit Operator and by signature hereto as Unit Operator and as working interest owner commits to this agreement all interests in unitized substances vested in it and agrees and consents to accept the duties and obligations of Unit Operator for discovery, development and production of unitized substances as herein provided.

Whenever reference is made herein to the Unit Operator, such reference means the Unit Operator acting in that capacity and not as an owner of interest in unitized substances, and the term "working interest owner" when used herein shall include or refer to Unit Operator as the owner of a working interest when such an interest is owned by it.

5. RESIGNATION OR REMOVAL OF UNIT OPERATOR. Unit Operator shall have the right to resign at any time prior to the establishment of a participating area or areas hereunder, but such resignation shall not become effective so as to release Unit Operator from the duties and obligations of Unit Operator and terminate Unit Operator's rights as such for a period of six months after notice of intention to resign has been served by Unit Operator on all working interest owners and the Director, and until all wells then drilled hereunder are placed

in a satisfactory condition for suspension or abandonment, whichever is required by the Director as to State and privately owned lands, unless a new Unit Operator shall have been selected and approved and shall have taken over and assumed the duties and obligations of Unit Operator prior to the expiration of said period.

Unit Operator shall have the right to resign in like manner and subject to like limitations, as above provided, at any time a participating area established hereunder is in existence but, in all instances of resignation or removal, until a successor Unit Operator is selected and approved as hereinafter provided, the working interest owners shall be jointly responsible for performance of the duties of Unit Operator, and shall not later than 30 days before such resignation or removal becomes effective appoint a common agent to represent them in any action to be taken hereunder.

The resignation of Unit Operator shall not release Unit Operator from any liability for any default by it hereunder occurring prior to the effective date of its resignation.

The Unit Operator may, upon default or failure in the performance of its duties or obligations hereunder be subject to removal by the same percentage vote of the owners of working interests determined in like manner as herein provided for the selection of a new Unit Operator. Such removal shall be effective upon notice thereof to the Director.

The resignation or removal of Unit Operator under this agreement shall not terminate its right, title, or interest as the owner of a working interest or other interest in unitized substances, but upon the resignation or removal of Unit Operator becoming

effective such Unit Operator shall deliver possession of all equipment, materials, and appurtenances used in conducting the unit operations and owned by the working interest owners to the new duly qualified successor Unit Operator or to the owners thereof if no such new Unit Operator is elected, to be used for the purpose of conducting unit operations hereunder. Nothing herein shall be construed as authorizing removal of any material, equipment and appurtenances needed for the preservation of any wells.

  6. SUCCESSOR UNIT OPERATOR. Whenever the Unit Operator shall tender his or its resignation as Unit Operator, or shall be removed as hereinabove provided, or a change of Unit Operator is negotiated by working interest owners, the owners of the working interests in the participating area or areas according to their respective acreage interests in such participating area or areas, or until a participating area shall have been established, the owners of the working interests according to their respective acreage interests in all unitized land, shall by majority vote select a successor Unit Operator; provided that, if a majority but less than 75 percent of the working interests qualified to vote are owned by one party to this agreement, a concurring vote of one or more additional working interest owners shall be required to select a new operator. Such selection shall not become effective until:

  (a) a Unit Operator so selected shall accept in writing the duties and responsibilities of Unit Operator, and

  (b) the selection shall have been filed with and approved by the Director. If no successor Unit Operator is selected and qualified as herein provided, the Commissioner at his election may

-8-

declare this Unit Agreement terminated.

7. ACCOUNTING PROVISIONS AND UNIT OPERATING AGREEMENT. If the Unit Operator is not the sole owner of working interests, costs and expenses incurred by Unit Operator in conducting unit operations hereunder shall be paid and apportioned among and borne by the owners of working interests, all in accordance with the agreement or agreements entered into by and between the Unit Operator and the owners of working interests, whether one or more, separately or collectively. Any agreement or agreements entered into between the working interest owners and the Unit Operator as provided in this section, whether one or more, are herein referred to as the "Unit Operating Agreement". Such unit operating agreement shall also provide the manner in which the working interest owners shall be entitled to receive their respective proportionate and allocated share of the benefits accruing hereto in conformity with their underlying operating agreements, leases or other independent contracts, and such other rights and obligations as between Unit Operator and the working interest owners as may be agreed upon by Unit Operator and the working interest owners; however, no such unit operating agreement shall be deemed either to modify any of the terms and conditions of this unit agreement or to relieve the Unit Operator of any right or obligation established under this unit agreement, and in case of any inconsistency or conflict between the unit agreement and the unit operating agreement, this unit agreement shall prevail. Three (3) true

copies of any unit operating agreement executed pursuant to this Section shall be filed with the Director within six (6) months after the effective date of this Unit Agreement or such later date as may be agreed to by the parties hereto and the Commissioner. In the event copies of the Unit Operating Agreement are not filed as hereinabove provided, this agreement shall terminate.

    8. RIGHTS AND OBLIGATIONS OF UNIT OPERATOR. Except as otherwise specifically provided herein, the exclusive right, privilege, and duty of exercising any and all rights of the parties hereto which are necessary or convenient for prospecting for, producing, storing, allocating, and distributing the unitized substances are hereby delegated to and shall be exercised by the Unit Operator as herein provided. Acceptable evidence of title to said rights shall be deposited with said Unit Operator and, together with this agreement, shall constitute and define the rights, privileges and obligations of Unit Operator. Nothing herein, however, shall be construed to transfer title to any land or to any lease or operating agreement, it being understood that under this agreement the Unit Operator, in its capacity as Unit Operator, shall exercise the rights of possession and use vested in the parties hereto only for the purposes herein specified.

    9. DISCOVERY. Inasmuch as wells capable of producing unitized substances in paying quantities (to-wit: quantities sufficient to repay the cost of drilling and producing operations, with a reasonable profit) from the Tertiary system have already

been drilled and tested within the unit area, no initial test well shall be required under the terms of this agreement and it shall be considered that production is had in paying quantities under this agreement on the effective date hereof.

10.  PLAN OF FURTHER DEVELOPMENT AND OPERATION. Within six months after the effective date of this unit agreement, the Unit Operator shall submit for the approval of the Director an acceptable plan of development and operation for the unitized land which, when approved by the Director, shall constitute the further drilling and operating obligations of the Unit Operator under this agreement for the period specified therein.  Thereafter, from time to time before the expiration of any existing plan, the Unit Operator shall submit for the approval of the Director a plan for an additional specified period for the development and operation of the unitized land.

Any plan submitted pursuant to this section shall provide for the exploration of the unitized area and for the diligent drilling necessary for determination of the area or areas thereof capable of producing unitized substances in paying quantities in each and every productive formation and shall be as complete and adequate as the Director may determine to be necessary for timely development and proper conservation of the oil and gas resources of the unitized area, and shall:

(a)  specify the number and location of any wells to be drilled and the proposed order and time for such drilling; and,

(b)  to the extent practicable, specify the operating

-11-

practices regarded as necessary and advisable for the proper conservation of natural resources.

Separate plans may be submitted for separate productive zones, subject to the approval of the Director.

Said plan or plans shall be modified or supplemented when necessary to meet changed conditions, or to protect the interests of all parties to this agreement. Reasonable diligence shall be exercised in complying with the obligations of the approved plan of development. The Director is authorized to grant a reasonable extension of the six-month period herein prescribed for submission of an initial plan of development where such action is justified because of unusual conditions or circumstances. After completion hereunder of a well capable of producing unitized substances in paying quantities, no further wells, except such as may be necessary to afford protection against operations not under this agreement or such as may be specifically approved by the Director shall be drilled except in accordance with a plan of development approved as herein provided.

11. PARTICIPATION AFTER DISCOVERY. Within sixty (60) days after the effective date of this unit agreement, the Unit Operator shall submit for approval by the Director a schedule based on subdivisions of the public land survey or aliquot parts thereof of all unitized land then regarded as reasonably proved to be productive of unitized substances in paying quantities; all lands in said schedule on approval of the Director are to constitute a participating area, effective as of the effective

date of the unit agreement. The acreages of both State and non-State lands shall be based upon approved protraction diagrams or appropriate computations from the courses and distances shown on the last approved protraction diagram or public land survey as of the effective date of the initial participating area or computed with reference to the last approved protraction survey or grids. Said schedule also shall set forth the percentage of unitized substances to be allocated as herein provided to each unitized tract in the participating area so established and shall govern the allocation of production from and after the date the participating area becomes effective. A separate participating area shall be established in like manner for each separate pool or deposit of unitized substances or for any group thereof produced as a single pool or zone, effective as of the date of completion of a well capable of producing unitized substances in paying quantities therefrom, and any two or more participating areas so established may be combined into one with the consent of the owners of all working interests in the lands within the participating areas so to be combined, on approval of the Director. The participating area or areas so established shall be revised from time to time, subject to like approval, whenever such action appears proper as a result of further drilling operations or otherwise, to include additional land then regarded as reasonably proved to be productive in paying quantities, or to exclude land then regarded as reasonably proved not to be productive in paying quantities and the percentage

-13-

of allocation shall also be revised accordingly. The effective date of any revision shall be the first of the month in which is obtained the knowledge or information on which such revision is predicated, provided, however, that a more appropriate effective date may be used if justified by the Unit Operator and approved by the Director. No land shall be excluded from a participating area on account of depletion of the unitized substances.

It is the intent of this section that a participating area shall represent the area known or reasonably estimated to be productive in paying quantities; but, regardless of any revision of the participating area, nothing herein contained shall be construed as requiring any retroactive adjustment for production obtained prior to the effective date of the revision of the participating area.

In the absence of agreement at any time between the Unit Operator and the Director as to the proper definition or redefinition of a participating area, or until a participating area has, or areas have, been established as provided herein, the portion of all payments affected thereby may be impounded in a manner mutually acceptable to the owners of working interests, except royalties due the State of Alaska, which shall be determined by the Director for State lands and the amount thereof deposited, as directed by the Director, to be held as unearned money until a participating area is finally approved and then

applied as earned or returned in accordance with a determination of the sum due as State royalty on the basis of such approved participating area.

Upon the request of the operator or working interest owners, the Director shall hold as confidential any engineering, geophysical, geological data including but not limited to drilling logs, daily drilling reports or any other data of like or similar nature which may be requested or required by the Director for any purpose of this agreement. This shall not apply to those items required to be submitted and to be held confidential for only a limited period of time under the oil and gas conservation regulations.

Whenever it is determined, subject to the approval of the Director, that a well drilled under this agreement is not capable of production in paying quantities and inclusion of the land on which it is situated in a participating area is unwarranted, production from such well shall, for the purposes of settlement among all parties other than working interest owners, be allocated to the land on which the well is located so long as such land is not within a participating area established for the pool or deposit from which such production is obtained. Settlement for working interest benefits from such a well shall be made as provided in the unit operating agreement.

12. ALLOCATION OF PRODUCTION. All unitized substances

produced from each participating area established under this agreement, except any part thereof used in conformity with good operating practices within the unitized area for drilling, operating, camp and other production or development purposes, for repressuring or recycling in accordance with a plan of development approved by the Director, or unavoidably lost, shall be deemed to be produced equally on an acreage basis from the several tracts of unitized land of the participating area established for such production and, for the purpose of determining any benefits accruing under this agreement, each such tract of unitized land shall have allocated to it such percentage of said production as the number of acres of such tract included in said participating area bears to the total acres of unitized land in said participating area, except that allocation of production hereunder for purposes other than for settlement of the royalty, overriding royalty, or payment out of production obligations of the respective working interest owners, shall be on the basis prescribed in the unit operating agreement whether in conformity with the basis of allocation herein set forth or otherwise. It is hereby agreed that production of unitized substances from a participating area shall be allocated as provided herein regardless of whether any wells are drilled on any particular part or tract of said participating area. If any gas produced from one participating area is used for repressuring or recycling purposes in another

participating area, the first gas withdrawn from such last-mentioned participating area for sale during the life of this agreement shall be considered to be the gas so transferred until an amount equal to that transferred shall be so produced for sale and such gas shall be allocated to the participating area from which initially produced as constituted at the time of such final production.

13. DEVELOPMENT OR OPERATION OF NON-PARTICIPATING LAND OR FORMATIONS. Any party or parties hereto owning or controlling the working interests in any unitized land having thereon a regular well location may, with the approval of the Director, and subject to the non-conflicting provisions of the unit operating agreement, at such party's or parties' sole risk, costs, and expense, drill a well at such location on such land to test any formation for which a participating area has not been established or to test any formation for which a participating area has been established if such location is not within said participating area, unless within 90 days of receipt of notice from said party of his intention to drill the well the Unit Operator elects and commences to drill such a well in like manner as other wells are drilled by the Unit Operator under this agreement.

If any well drilled as aforesaid by a working interest owner results in production such that the land upon which it is situated may properly be included in a participating area, such

-17-

participating area shall be established or enlarged as provided in this agreement and the well shall thereafter be operated by the Unit Operator in accordance with the terms of this agreement and the unit operating agreement.

If any well drilled as aforesaid by a working interest owner obtains production in quantities insufficient to justify the inclusion in a participating area of the land upon which such well is situated, such well may be operated and produced by the party drilling the same subject to the conservation requirements of this agreement. The royalties in amount or value of production from any such well shall be paid as specified in the underlying lease and agreements affected.

14. ROYALTY SETTLEMENT. The State of Alaska and all royalty owners who, under existing contract, are entitled to take in kind a share of the substances now unitized hereunder produced from any tract, shall hereafter be entitled to the right to take in kind their share of the unitized substances allocated to such tract, and Unit Operator, or in case of the operation of a well by a working interest owner as herein in special cases provided for, such working interest owner, shall make deliveries of such royalty share taken in kind in conformity with the applicable contracts, laws and regulations. Settlement for royalty interest not taken in kind shall be made by working interest owners

responsible therefor under existing contracts, laws and regulations on or before the last day of each month for unitized substances produced during the preceding calendar month; provided, however, that nothing herein contained shall operate to relieve the lessees of any land from their respective lease obligations for the payment of any royalties due under their leases. No deduction for dehydration and cleaning charges shall be charged to the State's royalty except where royalty is taken in kind, unless the State subsequently agrees to such deductions as reasonable and proper.

If gas obtained from lands not subject to this agreement is introduced into any participating area hereunder, for use in repressuring, stimulation of production, or increasing ultimate recovery, which shall be in conformity with a plan first approved by the Director, a like amount of gas, after settlement as herein provided for any gas transferred from any other participating area and with due allowance for loss or depletion from any cause, may be withdrawn from the formation into which the gas was introduced, royalty free as to dry gas, but not as to the products extracted therefrom; provided that such withdrawal shall be at such time as may be provided in the plan of operations or as may otherwise be consented to by Director as conforming to good petroleum engineering practice; and provided further that such right of withdrawal shall terminate on the termination of this unit agreement.