Royalty due on account of the State of Alaska shall be computed and paid as to all unitized substances on the basis of the amounts allocated to such lands, and in accordance with appropriate statutes and regulations.

15. RENTAL SETTLEMENT. Rental or minimum royalties due on leases committed hereto shall be paid by working interest owners responsible therefor under existing contracts, laws, and regulations, provided that nothing herein contained shall operate to relieve the lessees of any land from their respective lease obligations for the payment of any rental or minimum royalty in lieu thereof due under their leases.

Rentals or minimum royalty on State of Alaska lands subject to this agreement shall be paid at the rate specified in the respective leases and in accordance with appropriate statutes and regulations.

With respect to any lease on non-State land containing provisions which would terminate such lease unless drilling operations were within the time therein specified commenced upon the land covered thereby or rentals paid for the privilege of deferring such drilling operations, the rentals required thereby shall, notwithstanding any other provision of this agreement, be deemed to accrue and become payable during the term thereof as extended by this agreement and thereafter until the required drilling operations are commenced upon the land covered thereby or some portion of such land is included within a participating area.

-20-

16.   CONSERVATION.   Operations hereunder and production of unitized substances shall be conducted to provide for the most economical and efficient recovery of said substances without waste, as defined by or pursuant to State law or regulation.

17.   DRAINAGE.   The Unit Operator shall take appropriate and adequate measures to prevent drainage of unitized substances from unitized land by wells on land not subject to this agreement, or, with prior consent of the Director, pursuant to applicable regulations, pay a fair and reasonable compensatory royalty as determined by and approved by the Director for State lands leases.

18.   LEASES AND CONTRACTS CONFORMED AND EXTENDED.   The terms, conditions and provisions of all leases, subleases and other contracts relating to exploration, drilling, development or operation for oil and gas on lands committed to this agreement are hereby expressly modified and amended to the extent necessary to make the same conform to the provisions hereof, but otherwise to remain in full force and effect; and the parties hereto hereby consent that the Director as to State leases shall and, by his approval hereof or by the approval hereof by his duly authorized representative, does hereby establish, alter, change or revoke the drilling, producing, rental, minimum royalty and royalty requirements of State leases committed hereto and the regulations in respect thereto and conform said requirements to the provisions of this agreement and, without limiting the generality of the foregoing, all leases, subleases, and contracts are particularly modified in accordance with the following:

(a)   The development and operation of lands subject to

-21-

this agreement under the terms hereof shall be deemed full performance of all obligations for development and operation with respect to each and every part or separately owned tract subject to this agreement, regardless of whether there is any development of any particular part or tract of the unit area, notwithstanding anything to the contrary in any lease, operating agreement or other contract by and between the parties hereto, or their respective predecessors in interest, or any of them.

(b)  Drilling and producing operations performed hereunder upon any tract of unitized lands will be accepted and deemed to be performed upon and for the benefit of each and every tract of unitized land, and no lease shall be deemed to expire by reason of failure to drill or produce wells situated on the land therein embraced.

(c)  Suspension of drilling or producing operations on all unitized lands pursuant to direction or consent of the Commissioner or his duly authorized representative, shall be deemed to constitute such suspension pursuant to such direction or consent as to each and every tract of unitized land.

(d)  Each lease, sublease or contract relating to the exploration, drilling, development or operation for oil or gas of lands, other than those of the State of Alaska, committed to this agreement, which, by its terms might expire prior to the termination of this agreement, is hereby extended

-22-

beyond any such term so provided therein so that it shall be
continued in full force and effect for and during the term of
this agreement.

(e) Any lease embracing lands of the State of Alaska
which are made subject to this agreement, shall continue in force
beyond the term provided therein as to the lands committed so
long as such lease remains subject hereto, provided that pro-
duction is had in paying quantities under this unit agreement
prior to the expiration date of the term of such lease or, in
the event actual drilling operations are commenced on unitized
land, in accordance with the provisions of this agreement, prior
to the end of the primary term of such lease and are being dili-
gently prosecuted at that time, such lease shall be extended for
two years and so long thereafter as oil or gas is produced in pay-
ing quantities.

(f) Any lease embracing land of the State of Alaska
having only a portion of its lands  committed hereto, shall be
segregated as to the portion committed and the portion not
committed, and the provisions of such lease shall apply separ-
ately to such segregated portions commencing as of the effec-
tive date hereof; provided, however, notwithstanding any of
the provisions of this agreement to the contrary, any lease em-
bracing lands of the State of Alaska having only a portion of
its lands committed hereto shall continue in full force and
effect beyond the term provided therein as to all lands em-
braced in such lease if oil or gas is discovered and is capable
of being produced in paying quantities from some part of the
land embraced in such lease at the time of approval of the

-23-

unit agreement by the State of Alaska or if at the time of
approval of the unit agreement by the State the lessee or the
Unit Operator is then engaged in bona fide drilling or rework-
ing operations on some part of the lands embraced in such
lease, the same as to all lands embraced therein shall remain
in full force and effect so long as such operations are being
diligently prosecuted, and if they result in the production of
oil or gas in paying quantities, said lease shall continue in
full force and effect as to all of the lands embraced therein
so long thereafter as oil or gas in paying quantities is being
produced from any portion of said lease; provided, however, that
any such lease as to the non-unitized portion shall continue in
force and effect for the term thereof, but for not less than
two years from the date of such segregation and so long there-
after as oil or gas is produced in paying quantities.

Any State lease having production in paying quantities,
as defined in this agreement, on said lease prior to commit-
ment to this agreement shall not be segregated. The non-uni-
tized portion shall not participate in the unit area but shall
be extended by virtue of the production on the unitized por-
tion and so long as it produces in paying quantities. Nothing
herein shall operate to excuse further development on the por-
tion lying outside the unit area where the circumstances would
require a reasonably prudent lessee to further develop.

(g)  Where some portion of a lease is included within

-24-

the final participating area as provided in Paragraph 2(e) of this agreement, the following shall apply as to the area of the lease not so included:  That area of lease lands not so included in the final participating area shall be eliminated as in Paragraph 2(e) of this agreement and shall terminate after the expiration of 90 days unless annual rentals at the rate specified in the original lease shall have been paid within the said 90 days.  The entire lease shall continue in force and effect so long thereafter as production is allocated to a portion of said lease _and_ so long as annual rentals are paid on the portion not within the participating area.  The first rental payment is due and payable on the first day after the expiration of the above mentioned 90 day period with allowance for proration of rentals.  Thereafter, annual rentals are due and payable on the anniversary date of the lease.

19.  COVENANTS RUN WITH LAND.  The covenants herein shall be construed to be covenants running with the land with respect to the interest of the parties hereto and their successors in interest until this agreement terminates, and any grant, transfer or conveyance of interest in land or leases subject hereto shall be and hereby is conditioned upon the assumption of all privileges and obligations hereunder by the grantee, transferee or other successor in interest.  No assignment or transfer of any working interest, royalty or other

-25-

interest subject hereto shall be binding upon Unit Operator until the first day of the calendar month after Unit Operator is furnished with the original, photostatic or certified copy of the instrument of transfer.

20. EFFECTIVE DATE AND TERM. This agreement shall become effective upon approval by the Commissioner or his duly authorized representative as of the date of approval by the Commissioner and shall terminate five (5) years from said effective date unless:

(a) such date of expiration is extended by the Commissioner, or

(b) it is reasonably determined prior to the expiration of the fixed term or any extension thereof that the unitized land is incapable of production of unitized substances in paying quantities in the formations tested hereunder and after notice of intention to terminate the agreement on such ground is given by the Unit Operator to all parties in interest at their last known addresses, the agreement is terminated with the approval of the Commissioner, or

(c) a valuable discovery of unitized substances has been made or accepted on unitized land during said initial term or any extension thereof, in which event the agreement shall remain in effect for such term and so long thereafter as unitized substances can be produced in quantities sufficient to pay for

-26-

the cost of producing same from wells on unitized land within any participating area established hereunder and, should production cease, so long thereafter as diligent operations are in progress for the restoration of production or discovery of new production and so long thereafter as the unitized substances so discovered can be produced as aforesaid, or

      (d)  it is terminated as provided in this agreement.

      This agreement may be terminated at any time by not less than 75 percentum, on an acreage basis, of the owners of working interests signatory hereto, with the approval of the Commissioner; notice of any such approval to be given by the Unit Operator to all parties hereto.

      21.  RATE OF PROSPECTING, DEVELOPMENT AND PRODUCTION. The Director is hereby vested with authority to alter or modify from time to time in his discretion the quantity and rate of production under this agreement when such quantity and rate is not fixed pursuant to State law or does not conform to any statewide voluntary conservation or allocation program which is established, recognized and generally adhered to by the majority of operators in such State, such authority being hereby limited to alteration or modification in the public interest, the purpose thereof and the public interest to be served thereby to be stated in the order of alteration or modification.  Without regard to the foregoing, the Director is also hereby vested with

-27-

EXHIBIT B
Page 28 of 41

authority to alter or modify from time to time at his dis-
cretion the rate of prospecting and development and the quan-
tity and rate of production under this agreement when such
alteration or modification is in the interest of attaining
the conservation objectives stated in this agreement and is
not in violation of any applicable State law.

Powers in this section vested in the Director shall
only be exercised after notice to Unit Operator and opportunity
for hearing to be held not less than fifteen (15) days from
notice.

22. APPEARANCES. Unit Operator shall, after notice
to other parties affected, have the right to appear for and on
behalf of any and all interests affected hereby before the Com-
missioner of the Department of Natural Resources of the State
of Alaska and to appeal from orders issued under the regulations
of said Department, or to apply for relief from any of said reg-
ulations or in any proceedings relative to operations before the
Commissioner or any other legally constituted authority; provided,
however, that any other interested party shall also have the right
at his own expense to be heard in any such proceeding.

23. NOTICES. All notices, demands or statements re-
quired hereunder to be given or rendered to the parties hereto
shall be deemed fully given if given in writing and personally

-28-

delivered to the party or sent by postpaid registered mail or certified mail, addressed to such party or parties at their respective addresses set forth in connection with the signatures hereto or the ratification or consent hereof or to such other address as any such party may have furnished in writing to the party sending the notice, demand or statement.

24.  NO WAIVER OF CERTAIN RIGHTS.  Nothing in this agreement contained shall be construed as a waiver by any party hereto of the right to assert any legal or constitutional right or defense as to the validity or invalidity of any law of the State or of the United States, or regulations issued thereunder in any way affecting such party, or as a waiver by any such party of any right beyond his or its authority to waive.

25.  UNAVOIDABLE DELAY.  All obligations under this agreement requiring the Unit Operator to commence or continue drilling or to operate on or produce unitized substances from any of the lands covered by this agreement shall be suspended while, but only so long as, the Unit Operator despite the exercise of due care and diligence is prevented from complying with such obligations, in whole or in part, by strikes, acts of God, action of the elements, weather or natural phenomena including but not limited to ice within the unit area rendering continued operations hazardous to life or property, Federal, State or Municipal law or agencies, unavoidable accidents, uncontrollable delays in transportation, inability to obtain necessary materials in open market, or other matters beyond the reasonable control of the Unit Operator whether similar to matters herein enumerated or not.

-29-

26. NONDISCRIMINATION. In connection with the performance of work under this agreement, the operator agrees to comply with all of the provisions of Section 202 (1) to (7) inclusive, of Executive Order 11246 (30 F.R. 12319), which are hereby incorporated by reference into this agreement.

27. LOSS OF TITLE. In the event title to any tract of unitized land shall fail and the true owner cannot be induced to join in this unit agreement, such tract shall be automatically regarded as not committed hereto and there shall be such readjustment of future costs and benefits as may be required on account of the loss of such title. In the event of a dispute as to title as to any royalty, working interest or other interests subject thereto, payment or delivery on account thereof may be withheld without liability for interest until the dispute is finally settled; provided that, as to State land or leases, no payments of funds due the State of Alaska should be withheld, but such funds of the State of Alaska shall be deposited as directed by the Commissioner, to be held as unearned money pending final settlement of the title dispute, and then applied as earned or returned in accordance with such final settlement.

Unit Operator as such is relieved from any responsibility for any defect or failure of any title hereunder.

28. NON-JOINDER AND SUBSEQUENT JOINDER. If the owner of any substantial interest in a tract within the unit area fails or refuses to subscribe or consent to this agreement, the owner of the working interest in that tract may withdraw said tract

-30-

from this agreement by written notice to the Director and
the Unit Operator prior to the approval of this agreement
by the Commissioner. Any oil or gas interests in lands with-
in the unit area not committed hereto prior to submission of
this agreement for final approval may thereafter be committed
hereto by the owner or owners thereof subscribing or consent-
ing to this agreement and, if the interest is a working inter-
est, by the owner of such interest also subscribing to the
unit operating agreement. After operations are commenced
hereunder, the right of subsequent joinder, as provided in
this section, by a working interest owner is subject to such
requirements or approvals, if any, pertaining to such joinder,
as may be provided for in the unit operating agreement. After
final approval hereof, joinder by a non-working interest owner
must be consented to in writing by the working interest owner
committed hereto and responsible for the payment of any bene-
fits that may accrue hereunder in behalf of such non-working
interest. Joinder by any owner of a non-working interest, at
any time, must be accompanied by appropriate joinder by the
owner of the corresponding working interest in order for the
interest to be regarded as committed hereto. Joinder to the
unit agreement by a working interest owner, at any time, must
be accompanied by appropriate joinder to the unit operating
agreement, if more than one committed working interest owner
is involved, in order for the interest to be regarded as

-31-

committed to this unit agreement.  Except as may otherwise here-
in be provided, subsequent joinders to this agreement shall be
effective as of the first day of the month following filing with
the Director of duly executed counterparts of all or any papers
necessary to establish effective commitment of any tract to this
agreement unless objection to such joinder is duly made within
sixty (60) days by the Director.

29.  COUNTERPARTS.  This agreement may be executed
in any number of counterparts, no one of which needs to be
executed by all parties, or may be ratified or consented to by
separate instrument in writing specifically referred hereto and
shall be binding upon all those parties who have executed such
a counterpart, ratification or consent hereto with the same force
and effect as if all such parties had signed the same document
and regardless of whether or not it is executed by all other
parties owning or claiming an interest in the lands within the
above-described unit area.

Address:                          UNION OIL COMPANY OF CALIFORNIA
2805 Denali Street
Anchorage, Alaska                 By _____
                                     Its Attorney in Fact

                                        "UNIT OPERATOR"


STATE OF CALIFORNIA    )  ss.
County of _____ (

On this 2_7th_ day of _February_, 1967, before me,
the undersigned, a Notary Public in and for said State, personally
appeared _JOHN R. FRASER_____, known to me to be the person
whose name is subscribed to the within Instrument, as the Attorney
in Fact of UNION OIL COMPANY OF CALIFORNIA and acknowledged to me
that he subscribed the name of UNION OIL COMPANY OF CALIFORNIA
thereto as principal and his own name as Attorney in Fact.

WITNESS my hand and official seal.

                          _____
                          Notary Public in and for said State

My Commission Expires September 18, 1970

-32-

AUDREY A. BURKE
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

**EXHIBIT B**
**Page 33 of 41**

воок **0550** раge **605**

AMENDMENT TO UNIT AGREEMENT

FOR THE DEVELOPMENT AND OPERATION OF THE

TRADING BAY UNIT AREA

STATE OF ALASKA

THIS AGREEMENT, entered into as of the 1st day of
September, 1970, by and between the parties subscribing, ratify-
ing, or consenting hereto, and herein referred to as the "par-
ties hereto".

WITNESSETH :

Paragraph 14 (ROYALTY SETTLEMENT) of the Unit Agreement
for the Development and Operation of the Trading Bay Unit
Area, State of Alaska, is amended to read:

14.  ROYALTY SETTLEMENT.  The State of Alaska and all
royalty owners who, under existing contract, are entitled
to take in kind a share of the substances now unitized here-
under produced from any tract, shall hereafter be entitled
to take in kind all or any portion of their share of the
unitized substances allocated to all tracts, and Unit Oper-
ator, or in case of the operation of a well by a working
interest owner as herein in special cases provided for, such
working interest owner, shall make deliveries of such royalty
share taken in kind in conformity with the applicable con-
tracts, laws and regulations.  Such royalty share taken in
kind may be borne by the working interest owners on the basis
prescribed in the Unit Operating Agreement.  The total amount
elected to be taken in kind may be increased or decreased
from time to time by not more than ten percent (10%) upon
six (6) weeks written notice and by more than ten percent
(10%) upon six (6) months written notice, to each working
interest owner of a tract to which unitized substances are
allocated or who operates a well as herein in special cases
provided for, provided, however, that nothing herein contained

STATE RECORDING DISTRICT:
PLEASE RETURN TO:

KEVIN A. TABLER, LAND MANAGER
UNION OIL COMPANY OF CALIFORNIA
PO BOX 196247
ANCHORAGE, AK  99519-6247

RECEIVED

OCT 2? 199?

BOOK 0550 PAGE 605

AMENDMENT TO UNIT AGREEMENT

FOR THE DEVELOPMENT AND OPERATION OF THE

TRADING BAY UNIT AREA

STATE OF ALASKA

THIS AGREEMENT, entered into as of the 1st day of
September, 1970, by and between the parties subscribing, ratify-
ing, or consenting hereto, and herein referred to as the "par-
ties hereto".

WITNESSETH :

Paragraph 14 (ROYALTY SETTLEMENT) of the Unit Agreement
for the Development and Operation of the Trading Bay Unit
Area, State of Alaska, is amended to read:

14.  ROYALTY SETTLEMENT.  The State of Alaska and all
royalty owners who, under existing contract, are entitled
to take in kind a share of the substances now unitized here-
under produced from any tract, shall hereafter be entitled
to take in kind all or any portion of their share of the
unitized substances allocated to all tracts, and Unit Oper-
ator, or in case of the operation of a well by a working
interest owner as herein in special cases provided for, such
working interest owner, shall make deliveries of such royalty
share taken in kind in conformity with the applicable con-
tracts, laws and regulations.  Such royalty share taken in
kind may be borne by the working interest owners on the basis
prescribed in the Unit Operating Agreement.  The total amount
elected to be taken in kind may be increased or decreased
from time to time by not more than ten percent (10%) upon
six (6) weeks written notice and by more than ten percent
(10%) upon six (6) months written notice, to each working
interest owner of a tract to which unitized substances are
allocated or who operates a well as herein in special cases
provided for, provided, however, that nothing herein contained

STATE RECORDING DISTRICT:
PLEASE RETURN TO:

KEVIN A. TABLER, LAND MANAGER
UNION OIL COMPANY OF CALIFORNIA
PO BOX 196247
ANCHORAGE, AK  99519-6247

RECEIVED

OCT 23 199?

UNITED STATES BUREAU OF LAND MANAGEMENT  GAS
ANCHORAGE

BOOK 0550 PAGE 606

1  shall require delivery of unitized substances in excess of

2  such royalty share.

3      Settlement for royalty interest not taken in kind shall

4  be made by Unit Operator or by the working interest owners

5  responsible therefor under existing contracts, laws and reg-

6  ulations on or before the last day of each month for unitized

7  substances produced during the preceding calendar month.

8  Such settlement may be made by or on behalf of the working

9  interest owners on the basis prescribed in the Unit Operat-

10  ing Agreement.

11      Nothing herein contained shall operate to relieve any

12  working interest owner of its obligation for the payment of

13  any royalty, or for the delivery of royalty oil taken in

14  kind, except to the extent of deliveries in kind or payments

15  actually made hereunder for the accounts of the respective

16  working interest owners.

17      No deductions for dehydration and cleaning charges

18  shall be charged to the State's royalty except where royalty

19  is taken in kind, unless the State subsequently agrees to

20  such deductions as reasonable and proper.

21      If gas obtained from lands not subject to this agreement

22  is introduced into any participating area hereunder, for use

23  in repressuring, stimulation of production, or increasing ul-

24  timate recovery, which shall be in conformity with a plan

25  first approved by the Director, a like amount of gas, after

26  settlement as herein provided for any gas transferred from

27  any other participating area and with due allowance for loss

28  or depletion from any cause, may be withdrawn from the

29  formation into which the gas was introduced, royalty free

30  as to dry gas, but not as to the products extracted therefrom,

31  provided that such withdrawal shall be at such time as may be

32  provided in the plan of operations or as otherwise be consented

-2-

BOOK **0550** PAGE **607**

1   to by Director as conforming to good petroleum engineering

2   practice, and provided further that such right of withdrawal

3   shall terminate on the termination of this Unit Agreement.

4       Royalty due on account of the State of Alaska shall be

5   computed and paid as to all unitized substances on the basis

6   of the amounts allocated to such lands, and in accordance

7   with appropriate statutes and regulations.

8       This Agreement may be executed in any number of counter-

9   parts, no one of which needs to be executed by all parties,

10  and shall not become effective unless executed by all owners

11  of working interests in the unitized land and the Commissioner.

12

13                          UNION OIL COMPANY OF CALIFORNIA
                            Unit Operator

14

15                          By _____
                               Its Attorney in Fact
16                             HERBERT S. HARRY

17                          STATE OF ALASKA

18                          By _____
                               Thomas E. Kelly, Commissioner
19                             of Natural Resources

20

21                          MARATHON OIL COMPANY

22                          By _____
                               Division Manager

23

24                          By _____

                            ATLANTIC RICHFIELD COMPANY

UNITED STATES OF AMERICA )
State of Alaska          ) ss.

        THIS IS TO CERTIFY that on the ___3rd___ day of ___November___, 1970,
before me the undersigned Notary Public, personally appeared Thomas E. Kelly,
known to me and known by me to be the ___Commissioner___ of the Department of
Natural Resources, and acknowledged to me that he executed the foregoing agreement
for and on behalf of said State, freely and voluntarily and for the use and pur-
poses therein set forth.

        IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official
seal, the day and year in this certificate first above written.

                            _____
                            Notary Public in and for the State of Alaska
                            My Commission Expires ___My Commission Expires March 20, 1973___

**EXHIBIT B**
**Page 37 of 41**

STATE OF OKLAHOMA )
                  ) ss.
TULSA COUNTY      )

BOOK **0550** PAGE **608**

Before me, _____RUTH STUEVE_____, a Notary Public in and for
said State, on this __25th__ day of September, 1970, personally appeared
_____JUDD H. QUALLINE_____, to me known to be the identical person
who executed the within and foregoing instrument as attorney in fact of
SKELLY OIL COMPANY, and acknowledged to me that he executed the same as his
free and voluntary act and deed and as the free and voluntary act and deed
of SKELLY OIL COMPANY, for the uses and purposes therein set forth.

_____Ruth Stueve_____
Notary Public

My commission expires _RUTH STUEVE_
                      _Notary Public Tulsa County, Oklahoma_
                      _My Commission Expires November 3, 1971_

RECEIVED

OCT 28 1970

DIVISION OF OIL AND GAS
ANCHORAGE

BOOK **0550** PAGE **609**

PHILLIPS PETROLEUM COMPANY

1
2
3        By _____
                ATTORNEY-IN-FACT
4        By _____

5
6        SKELLY OIL COMPANY

7        By _____
                        JUDD H. QUALLINE
8        By _____
                ATTORNEY-IN-FACT

9

10       STANDARD OIL COMPANY OF CALIFORNIA

11
12       By _____
                        Contract Agent
13       By _____
                        Assistant Secretary
14

STATE OF CALIFORNIA              )
                                 ) ss
City and County of San Francisco )

        On _____, before me, the undersigned, a Notary Public
in and for the City and County of San Francisco, State of California, duly
commissioned and sworn, personally appeared GEO. D. ENGLISH and E. A. HANSEN to me
known to be the Contract Agent and Assistant Secretary, respectively, of STANDARD
OIL COMPANY OF CALIFORNIA, the corporation that executed the within and foregoing
instrument and acknowledged said instrument to be the free and voluntary act and
deed of said corporation, for the uses and purposes therein mentioned, and on oath
stated that they were authorized to execute said instrument.

        WITNESS my hand and official seal hereto affixed the day and year in this
certificate above written.

        EDMOND LEE KELLY
        NOTARY PUBLIC - CALIFORNIA
                      
        commission expires January 22, 1972

EDMOND LEE KELLY
Notary Public in and for the City and
County of San Francisco, State of
California
residing at San Francisco

(Wash.)                                                    33

29
30                        RECEIVED

31                        OCT 2? 1970

32                    DIVISION OF OIL AND GAS
                              ANCHORAGE
                -4-

STATE OF CALIFORNIA ⎰
County of........................⎱ ss.

BOOK **0550** PAGE **610**

On this..............day of..............................., A. D., 19.........., before me,.........................................,
a Notary Public in and for said County and State, personally appeared.....................................................,
known to me to be the.............................................President, and........................................, known to me to be
the.............. ........Secretary of............................................; that the persons who executed the within Instru-
the Corporation that executed the within Instrument, known to me to be the persons who executed the within Instru-
ment, on behalf of the Corporation herein named, and acknowledged to me that such Corporation executed the same.

   **IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my official seal the day and year in this
certificate first above written.

                         ................................................................
                              Notary Public in and for said County and State

UNITED STATES OF AMERICA ⎰
                          ⎱ ss
STATE OF ALASKA          ⎰

The foregoing instrument was acknowledged before me this 2ND day of
SEPTEMBER , 19 70 , by Howard A. Slack, Attorney-in-Fact for
Atlantic Richfield Company.

My Commission Expires          Notary Public in and for the
November 21, 1972                   State of Alaska

STATE OF CALIFORNIA   ⎰
                      ⎱ ss.
COUNTY OF LOS ANGELES ⎰

    On this 31st    day of August    1970 , before me,
 Edgar A. Gillett                , a Notary Public in and for
said County and State, personally appeared L. P. Foote ,
known to me to be the  Division Manager              of the
Los Angeles Division of MARATHON OIL COMPANY, the corporation that
executed the within Instrument, known to me to be the person who
executed the within Instrument on behalf of the corporation therein
named and acknowledged to me that such corporation executed the with-
in Instrument pursuant to its by-laws or a resolution of its board
of directors.

    IN WITNESS WHEREOF, I have hereunto set my hand and
affixed my official seal.

                         Notary Public in and for said County
                              and State
                         My Commission Expires Jan. 20, 1971

                         ................................................................
                              Notary Public in and for said County and State

FORM 231-A 6-52 EM

BOOK 0550 PAGE 611

A L A S K A

STATE OF COLORADO )
                   : SS.
COUNTY OF DENVER   )

THIS IS TO CERTIFY that on this _11th_ day of _December_, 19_70_, personally appeared before me, the undersigned, a Notary Public in and for the State of Colorado, duly commissioned and sworn as such, _J. D. Alexander_, known to me and by me known to be the identical person who subscribed the name of PAN AMERICAN PETROLEUM CORPORATION, a corporation, to the foregoing instrument as its Attorney in Fact and acknowledged to me that he executed the same freely and voluntarily as his free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year hereinabove first written.

_____
Notary Public in and for the State of
Colorado

My commission expires:

My Commission expires Dec. 9, 1970
_____

STATE OF CALIFORNIA )
                    ) ss.
County of Los Angeles )

On this.................day of.........................................., A. D., 19........, before me,...................................................,
a Notary Public in and for said County and State, personally appeared................................................................,
known to me to be the person whose name is subscribed to the within Instrument, as the Attorney-in-Fact of................
........................................................, and acknowledged to me that he subscribed the name of.................................
...................................................................thereto as principal and his own name as Attorney-in-Fact.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

.........................................................................
Notary Public in and for said County and State

STATE OF ................... )
                           ) ss.
County of ................... )

On this.............day of...................., A. D., 19........, before me,.................................................,
a Notary Public in and for said County and State, personally appeared...............................................,
known to me to be the person whose name is subscribed to the within Instrument, as the Attorney-in-Fact of.............
......................................................., and acknowledged to me that he subscribed the name of.........................
.........................................................thereto as principal and his own name as Attorney-in-Fact.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

.........................................................................
Notary Public in and for said County and State

_my commission expires: 9-16-70_

FORM 231-A 6-55 RM

**EXHIBIT B**
**Page 41 of 41**