JEFFREY M. FELDMAN
Alaska Bar No. 7605029
R. SCOTT TAYLOR
Alaska Bar No. 8507110
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:   (907) 272-3538
Facsimile:   (907) 274-0819
Email:       feldman@frozenlaw.com
Email:       taylor@frozenlaw.com

Attorneys for Defendant Forest Oil Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| MARATHON OIL COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>FOREST OIL CORPORATION, PACIFIC ENERGY ALASKA OPERATING LLC, UNION OIL COMPANY OF CALIFORNIA, d/b/a UNOCAL ALASKA,<br><br>        Defendants.<br>_____ | Case No. 3:06-cv-00102-TMB<br><br>**FOREST OIL'S REPLY TO MARATHON'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. 70]** |

In opposing the defendants' motions for summary judgment, Marathon Oil Company (Marathon) agrees that the dispositive issue is whether Unocal has breached the Operating Agreement by allocating the costs of the Steelhead Platform between the oil

and gas working interest owners in a manner that is not "fair and equitable."[1]  While Marathon argues for a different cost allocation methodology for shared costs, it has set forth no specific facts showing a genuine issue for trial that Unocal's choice of methodology exceeded the operator's broad discretion under the Operating Agreement. Because there is no evidence that a contractual duty under the Operating Agreement has been breached, the defendants are entitled to summary judgment dismissal of this case as a matter of law.

I.   **MARATHON HAS NOT RAISED A GENUINE FACTUAL DISPUTE THAT UNOCAL'S ALLOCATION OF PLATFORM COSTS HAS NOT BEEN A "FAIR AND EQUITABLE APPORTIONMENT."**

The Operating Agreement deliberately gives the operator considerable discretion in operational decisions.  To prevail on its claims, Marathon must ultimately prove that Unocal's use of the BOE methodology for shared costs breached the Operating Agreement by resulting in an allocation of platform costs that is not "a fair and equitable apportionment."[2]  The "fair and equitable" standard has a decidedly broad scope.  For example, the Alaska Supreme Court has repeatedly held that the trial courts have "broad discretion to make an equitable division of property" in a divorce, which can be reversed "only if it is clearly unjust."[3]

In their separate motions for summary judgment, the defendants demonstrated that Unocal changed the shared cost allocation methodology from "total fluids" to BOE on

---

[1]   Marathon's Opposition to Motions for Summary Judgment (Opposition) at p. 9.

[2]   Exhibit A at p. 35 (Operating Agreement at Section 16.3).

[3]   *Silvan v. Alcina*, 105 P.3d 117, 123 (Alaska 2005).

January 1, 2002, in response to operational changes on the platform and the belief that BOE would be a more fair and equitable allocation. The uncontroverted facts remain that: Marathon was the operator of the Steelhead Platform prior to 1994; Marathon used the "total fluids" methodology only for the shared "miscellaneous" cost center when it was the operator; Unocal continued to use that methodology for this cost center when it took over as operator; and Unocal changed to BOE only after the installation of the electric submersible pumps (ESPs) in the oil wells rendered it unfair and inequitable to factor the increased water production into the cost allocation ratio.

Marathon opposes summary judgment, claiming that it has raised "issues of material fact based on the testimony of the party witnesses and Marathon's experts regarding whether the methodologies Unocal selected are fair and equitable."[4] Neither is true. Moreover, the Operating Agreement does not require that the operator select "fair and equitable" methodologies; the contractual obligation is to make a "fair and equitable allocation" of all platform costs. Marathon presents no credible evidence that BOE is not a fair and equitable allocation basis, much less that Unocal's overall charges for operating the Steelhead Platform have not been fairly and equitably allocated between the working interest owners.

First, none of the deposition testimony cited by Marathon states that BOE was not a fair and equitable cost allocation basis for the shared costs on the Steelhead Platform.

---

[4] Opposition at p. 22.

BOE is an accepted method of cost allocation in the oil and gas industry,[5] and there is no evidence in this case to the contrary. The BOE methodology is a ratio of hydrocarbon production; it is essentially "total fluids" without counting the produced water.[6] Without accurate citation, Marathon mischaracterizes BOE as "a measure of the <u>value</u> of production," rather than of production volume.[7] But it is, in fact, no different than "total fluids" as a measure of production volume. Marathon used "total fluids" for allocating these shared costs when it was the operator, presumably in accord with its contractual duty to make "a fair and equitable apportionment" of platform costs. Ironically, its argument that BOE is an inappropriate methodology would also apply to "total fluids," since both are measures of production volume.[8]

Second, Marathon's experts provided only unsworn reports that argue for a "more generally accepted" or a "more reasonable approach" to cost allocation, without consideration of the total platform cost allocation. Federal Rule of Civil Procedure 56(e)(2) sets out the opposing party's obligation to respond to a Motion for summary judgment:

---

[5] *See, e.g.*, Affidavit of Mitchell Fischbach at ¶ 5 (filed herewith); Declaration of Howard G. Blunk at ¶ 7 (filed with Unocal's Reply)..

[6] *Id.*

[7] Opposition at p. 6.

[8] For this reason, Marathon should now be equitably estopped from claiming that a production-based allocation methodology is inconsistent with the operator's contractual obligation to make a "fair and equitable apportionment" of platform costs. *See* Forest Oil's Response in Opposition to Marathon's Cross Motion for for Partial Summary Judgment at pp. 2-3; *Great Western Sav. Bank v. George W. Easley Co., J.V.,* 778 P.2d 569, 578-79 (Alaska 1989) (discussing elements of equitable estoppel).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

Marathon's Opposition relies on letters from its experts that are neither affidavits nor sworn declarations. Neither expert report is competent evidence to rebut summary judgment. But even if they had provided sworn evidence, Marathon's experts both opine that a cost allocation ratio based on well-count would be fair and equitable. In objecting to the BOE methodology, they fail to recognize that it is applied to only one category of costs on the platform. Most of the platform costs are directly allocated, without the need for an allocation methodology, and when the total platform costs are considered, the overall cost allocation is 60% to gas and 40% to oil – an even more favorable allocation to the gas owners than well-count.[9] Even Marathon's experts would have to agree that, on the whole, even when BOE was used to allocate shared costs, Unocal made a "fair and equitable apportionment" of all costs charged for the Steelhead Platform.

BOE is an accepted methodology in the industry and, if anything, is a fairer and more equitable allocation methodology, under present platform conditions, than the "total fluids" methodology that Marathon itself used to allocate shared costs when it was the operator. Unocal's change in methodologies was motivated by compliance with its contractual obligations, not in breach of them. Marathon has not raised a genuine issue

---

[9] *See* Fischbach Affidavit at ¶ 9 (the Steelhead Platform consists of 13 producing gas wells, 5 producing oil wells, and 2 water injector wells).

for trial that Unocal's cost allocation for the Steelhead Platform exceeded the operator's broad contractual discretion to make a fair and equitable apportionment.

## II. THERE IS NO EVIDENCE OF A CONTRACTUAL OBLIGATION TO ALLOCATE COSTS BASED ON A TOTAL FLUIDS METHODOLOGY.

The primary claim in Marathon's complaint is that Unocal "breached its contractual obligations to Marathon by abandoning the use of the total fluids methodology in 2002, and by continuing the use of [an] unauthorized allocation methodology up to and after the filing of this complaint."[10]  Further, Marathon's complaint seeks declaratory relief:

> In particular, Marathon requests a ruling that, pursuant to the agreement of the parties, the proper methodology for allocation of costs is the "total fluids" methodology, and that all parties are required to apply that methodology [to] the allocation of costs on the Steelhead platform.[11]

The complaint alleges that this contractual obligation for a "total fluids" methodology applies to all platform costs. Both defendants moved for summary judgment dismissal of these claims, as there is no provision in the controlling Operating Agreement that requires the operator to use any particular methodology for allocating platform costs. And there is certainly no contractual requirement that the operator utilize only a "total fluids" methodology –or continue to use any methodology– after operational changes rendered it no longer a fair and equitable basis for allocating platform costs.

---

[10]  Marathon's Complaint at Count I ¶ 38.

[11]  *Id.* at Count VI ¶ 59.

In opposing summary judgment, Marathon concedes that it is not challenging the allocation of most of the platform costs.[12] Marathon states as an "Undisputed Fact" that "[t]his lawsuit relates to how certain miscellaneous shared costs are to be allocated between the gas and oil owners."[13] In other words, Marathon now admits that its claims are limited to just one category of platform costs, those shared costs assigned to the miscellaneous cost center. Accordingly, there is no dispute of fact concerning the scope of Marathon's claims and the defendants are entitled to dismissal of all counts in the complaint seeking to require a "total fluids" methodology for the allocation of <u>all</u> costs on the Steelhead Platform.

Moreover, Marathon's Opposition states that the "[t]he parties do not dispute, in general, that in the absence of an agreement to the contrary the[,] obligation of the operator is to allocate costs on a 'fair and equitable' basis."[14] Indeed, Marathon's main argument in its Opposition is its claim that Unocal's choices of cost allocation methodologies, since 2002, are not "fair and equitable."[15] All parties agree that the contractual provision at issue in this case is the Operating Agreement's requirement that the operator make a "fair and equitable apportionment" of platform operating costs. Marathon offers no evidence of any requirement that the operator allocate costs using any particular methodology.

---

[12] Opposition at p. 4 ("Costs allocated to any specific WIPA are not at issue in this litigation.").

[13] *Id.* at p. 2.

[14] *Id.* at p. 9.

[15] *Id.* at pp. 9-17.

Although Marathon can point to no provision in the Operating Agreement requiring use of a "total fluids" methodology, it nonetheless makes a half-hearted argument that Unocal breached the Operating Agreement by changing the cost allocation methodology from "total fluids" without written approval from the owners. Marathon relies on the Authorization for Expenditure (AFE) provisions in the Operating Agreement that require approval of the working interest owners before an operator can make "any single expenditure" in excess of $100,000.[16] But AFE provisions clearly apply only to capital projects, not to Unit operations. For example, section 8.3 D.1 of the Operating Agreement provides that the "Operator and Sub-Operator shall have the right to make expenditures up to an aggregate of one hundred thousand dollars ($100,000.00) <u>for any single project</u> of any kind without prior written consent of all Parties."[17] Operational costs are not "a single project" subject to the AFE requirement and party approval.

Marathon's sole support for its argument is a quotation from its accounting expert, Patrick Martindale, suggesting that "[i]t is logical" that a change in allocation methodology that results in additional aggregate costs exceeding $100,000 "falls in the same category of notification and approval."[18] As an expert in the industry, Mr. Martindale knows better than to state that AFE provisions apply to operational costs. His idea that "it is logical" to treat an aggregation of operational costs as a single project requiring notification and approval is nonsensical and impossible. Over sufficient time,

---

[16]   Opposition at p. 18.

[17]   Exhibit A at p. 20 (Operating Agreement at Section 8.3 D.1) (emphasis added).

[18]   Opposition at p. 18.

operational costs would always accumulate to exceed the threshold amount to trigger an AFE notification, but the expenses would already have been incurred and prior approval would not be possible.  Requiring AFE approval for operational costs would hamstring production and nullify all of the provisions in the Operating Agreement giving the operator broad discretion to conduct Unit operations.  Mr. Martindale's suggestion is contrary to industry practice and the express language of the Operating Agreement.

The AFE requirements of notice and approval for significant "single project" expenditures and Mr. Martindale's illogical suggestion do not create a genuine issue for trial.  Marathon has presented no conflicting evidence of a contractual requirement that "changes in operations or operation methodologies" require agreement of the parties.  The only contractual constraint on the operator's ability to change methodologies is the Operating Agreement's clear and unambiguous language that the apportionment of the platform costs be "fair and equitable."  In the absence of any conflicting provision, summary judgment is appropriate on this clear question of contract interpretation.  There is no evidence of a contractual obligation to allocate costs based on total fluid production.  Marathon is not "entitled to have the prior total fluids methodology reinstated retroactively" and all such claims in its complaint should be dismissed.

### III.   CONCLUSION

The Operating Agreement obligates the Operator to charge the working interest owners "a fair and equitable apportionment" of the platform's costs.  In moving for summary judgment, the defendants demonstrated that Unocal's change in methodology was necessary to maintain a fair and equitable apportionment of the shared costs after the

installation of efficient ESPs in the platform's oil wells. Marathon has presented no specific facts showing a genuine issue for trial that use of the BOE methodology resulted in a cost allocation that was not "fair and equitable" in breach of the Operating Agreement. Because there is no evidence of a breach of contract, summary judgment dismissal of all counts in Marathon's Complaint is appropriate.

Dated this 9th day of June, 2008.

                                        s/ R. Scott Taylor
                                        R. Scott Taylor
                                        FELDMAN ORLANSKY & SANDERS
                                        500 L Street, Suite 400
                                        Anchorage, Alaska 99501
                                        Telephone:   (907) 272-3538
                                        Facsimile:    (907) 274-0819
                                        Email:         taylor@frozenlaw.com
                                        [Alaska Bar No. 8507110]

                                        Attorneys for Defendant Forest Oil Corporation

CERTIFICATE OF SERVICE
I hereby certify that on the 9th day of June, 2008,
a copy of the **Reply to Marathon's Opposition to
Motions for Summary Judgment** was served
electronically on:

Daniel T. Quinn
Marc G. Wilhelm
Brewster H. Jamieson
Marc D. Bond
Robert K. Stewart, Jr.

s/ R. Scott Taylor