Jeffrey M. Feldman
Alaska Bar No. 7605029
R. Scott Taylor
Alaska Bar No. 8507110
FELDMAN ORLANSKY & SANDERS
500 L Street, Fourth Floor
Anchorage, Alaska 99501
Telephone:   (907) 272-3538
Facsimile:   (907) 274-0819
Email:       feldman@frozenlaw.com
             taylor@frozenlaw.com

*Attorneys for Defendant Forest Oil Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| MARATHON OIL COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FOREST OIL CORPORATION, )<br>PACIFIC ENERGY ALASKA )<br>OPERATING LLC, UNION OIL )<br>COMPANY OF CALIFORNIA )<br>d/b/a UNOCAL ALASKA, )<br>)<br>Defendants. )<br>_____) | <br><br><br><br><br>Case No. 3:06-cv-00102-TMB<br><br><br><br><br><br>**AFFIDAVIT OF<br>MITCHELL FISCHBACH** |

STATE OF COLORADO    )
                     ) ss
COUNTY OF DENVER     )

I, Mitchell Fischbach, being first duly sworn upon oath, state as follows:

1. I have personal knowledge of all matters set forth in this affidavit.

2. I have worked as a joint venture auditor in the oil and gas industry since 1984, and have been with Forest Oil Corporation (Forest) since 1989. I am currently the Director of Joint Venture Audit for Forest. In this capacity, I oversee and conduct audits of revenues and expenditures with respect to properties in which Forest owns an interest, but is not an operator. I managed all of Forest's audits of the joint account for the Trading Bay Unit, which is operated by Unocal and includes the Steelhead Platform.

3. I am familiar with the Trading Bay Unit Operating Agreement (TBUOA), which determines the parties' contractual obligations concerning the Steelhead Platform costs that are at issue in this case. Under section 16.3 of the TBUAO, the operator is given broad discretion to make "a fair and equitable apportionment" of platform operating costs between the parties.

4. As the operator of the Steelhead platform, Unocal has directly apportioned all of the platform's operating costs that could be attributed to gas production to the gas producers and all costs attributed to oil production to the oil producers. An allocation methodology was only necessary to divide the platform's shared costs that could not be directly attributed to gas or oil production. These shared costs were combined in one "miscellaneous facility" cost center for the Steelhead Platform. This is just one of a number of cost centers for the Steelhead Platform.

5. Prior to January 1, 2002, Unocal apportioned the shared costs based on the "total fluids" produced on the platform by the respective oil and gas wells. This "total fluids" methodology required converting gas production to its barrels of oil equivalent (BOE). The fluids chargeable to the oil and gas owners, respectively, were the total of

BOE production of oil or gas plus the water that was produced together with that oil or gas. The platform's shared costs were then allocated based on this production ratio. "Total fluids" is a measure of volume of production and is an accepted method of cost allocation in the oil and gas industry.

6. After 2001, the installation of electric submersible pumps (ESPs) in the Steelhead Platform's oil wells significantly increased the water produced by those wells, which increased their "total fluids" production. Unocal believed that it would not be fair and equitable to increase the oil producers' share of the platform's miscellaneous costs due to this increased water production that had no effect on actual costs at the platform. As of January 1, 2002, Unocal altered the allocation methodology for dividing the shared costs by not including water production. The new methodology compares oil production to gas production, converted to its barrels of oil equivalent (BOE). This "BOE" methodology is also a measure of production volume. It is "total fluids" without counting water production. BOE is an accepted method of cost allocation in the industry.

6. There is no "right" methodology to apply to divide these shared platform costs. The operator has discretion under the Unit Operating Agreement to employ any methodology that is fair and equitable. Under the operational circumstances of the platform, with the change to ESPs, Unocal's shift to BOE employed a more fair and equitable basis for allocating shared costs than had it continued to use "total fluids" and include water production in the allocation ratio.

7. In response to Marathon's complaints, Unocal worked with the parties to reach a compromise on a hybrid methodology that divides shared costs based on 50%

BOE and 50% well-count, which is a ratio based on the number of producing platform wells dedicated, respectively, to oil and gas production. Unocal switched to this hybrid methodology on January 1, 2006. While it is less favorable to the oil producers, there is no basis to believe that this is not also a "fair and equitable" cost allocation, well within the operator's broad discretion.

8.  I have read the reports of Marathon's expert witnesses in this case, both suggesting that allocating platform costs based on well-count would be "a more reasonable approach" (Wayman T. Gore, P.E.) or a more "generally accepted allocation methodology" (W. Patrick Martindale). While well-count might be another "fair and equitable" way of allocating shared platform costs, the operator is not obligated to utilize any particular allocation methodology.

9.  Moreover, these shared "miscellaneous" costs are just one cost center on the Steelhead Platform. In my opinion, to determine if the costs are "a fair and equitable apportionment" of platform operating costs between the parties one needs to look at the total platform costs. When I reviewed all of the lease operating expenses that Unocal charged to the oil and gas owners over a three-year period after 2002, when the BOE methodology was being used to allocate the shared costs, the overall cost split was 60% to gas and 40% to oil. I consider this a fair and equitable split based on the overall platform well-count (13 producing gas wells and the oil operations of 5 producing wells and 2 water injector wells).

Further affiant sayeth not.

_____
Mitchell Fischbach

SUBSCRIBED AND SWORN TO before me this 5th day of June 2008, at Denver, Colorado.

_____
Notary Public in and for Colorado
My Commission Expires: 9/17/08