Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:   907-277-9511
Facsimile:    907-276-2631
Email:          jamiesonb@lanepowell.com
Attorneys for Defendant Unocal

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| MARATHON OIL COMPANY,<br><br>                         Plaintiff,<br><br>v.<br><br>FOREST OIL CORPORATION; PACIFIC ENERGY ALASKA OPERATING LLC, UNION OIL COMPANY OF CALIFORNIA d/b/a UNOCAL ALASKA; and CHEVRON CORPORATION,<br><br>                         Defendants. | Case No. 3:06-cv-00102-TMB<br><br>**DEFENDANT UNION OIL COMPANY OF CALIFORNIA'S REPLY RE:** <u>**MOTION FOR SUMMARY JUDGMENT**</u> |

       COMES NOW defendant Union Oil Company of California d/b/a UNOCAL Alaska ("UOCC"), by and through counsel, and hereby replies to Marathon Oil Company's ("Marathon") opposition to UOCC's motion for summary judgment (Docket 70). For the reasons set out below, and for the additional reasons expressed in co-defendant Forest Oil Corporation's ("Forest") reply to its own motion for summary judgment, as well as UOCC's and Forest's respective motions for summary judgment[1], which are incorporated herein, the Court is respectfully requested to grant the defendants' summary judgment motions and dismiss all counts against the defendants.

---

[1] UOCC's motion for summary judgment is at Docket 57; Forest's motion for summary judgment is at Docket 39.

**ARGUMENT**

**1.     That The BOE Methodology Was "Fair and Equitable" Is Sufficient Under the Operating Agreement.**

Marathon does not contest, and therefore concedes, that the Operating Agreements do not require UOCC, as the Operator of the Trading Bay Unit, to use the total fluids methodology for cost allocation.  Nor does Marathon contest that the Operating Agreements do not restrict the cost allocation method to any one single, particular method that must be used to the exclusion of all other methods.  Nor does Marathon point to any binding industry practice requiring UOCC to utilize the total fluids methodology, and nothing but that methodology, under the circumstances of this matter.

Instead, Marathon wants this Court to rely on unsworn reports of its retained litigation experts, substituting their judgment for that of the Operator, UOCC.  However, nothing in the Operating Agreements suggest, much less require, such a result.  As was discussed in UOCC and Forest's respective motions for summary judgment, the Trading Bay Operating Agreements give UOCC the clear discretion to choose the "Barrels of Oil Equivalent" ("BOE") cost allocation methodology, as long as that method is a "fair and equitable apportionment" of costs.  UOCC's judgment call should be overturned only if it has resulted in an "unfair and inequitable" allocation of costs for the Steelhead platform as a whole (not just for the particular cost center in question), which Marathon has utterly failed to establish.

Marathon discusses at length certain "cost centers" regarding the Steelhead Platform, and whether oil wells are more expensive to operate than gas wells.  Those discussions, however, are not relevant for the purposes of these summary judgment proceedings, which will be decided on the interpretation by this Court of the respective Operating Agreements.  On that issue (i.e., what is actually required or allowed under the Operating Agreements) Marathon's argument is summarized on p. 13 of the Opposition/Cross-Motion:

> Unocal has not produced a single document reflecting that it studied the best allocation method before adopting the radical switch to the BOE approach. Thus, while COPAS requires that an operator consider a number of factors prior to selecting a proper methodology, including the operational dynamics in place during the allocation period, UNOCAL submits not evidence that it did so.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

This argument misses the point of UOCC's motion, and the claim that UOCC must use the "best" allocation method is incorrect as a matter of law. Whether the "total fluids" or BOE methods (or any other cost allocation method) is in fact the "best" under the circumstances is not a relevant issue for the purposes of UOCC's motion, as well as the governing Operating Agreements. Nowhere does the Trading Bay Unit Operating Agreement ("TBUOA"), or any other governing contract, provide or even imply that the cost allocation method chosen by the Operator must be the "best." Specifically, the "fair and equitable apportionment" standard in Section 16.3 of the TBUOA does not require UOCC as the Operator to prove what is the "best" cost allocation method under each and every circumstance, and Marathon makes no showing to the contrary.

Instead, as was discussed in UOCC's motion for summary judgment, the use of the broad term "fair and equitable apportionment" clearly gives UOCC the discretion to pick that cost allocation method it feels accomplishes the objectives of Section 16.3, as long as that method satisfies the "fair and equitable apportionment" standard. *And see* Declaration of Howard G. Blunk, ¶ 2 ("Under the controlling Trading Bay Unit Operating Agreement, the operator has broad discretion to allocate platform costs, constrained only by the contractual requirement that the allocation be 'fair and equitable.'").

As was also demonstrated in UOCC and Forest's motion for summary judgment, as a matter of law UOCC could not have breached the Operating Agreements because the BOE methodology now used by UOCC is "fair and equitable" as a matter of law. As noted by UOCC's expert, Howard Blunk, most Steelhead Platform costs are directly allocated to oil or gas production; the operator needs to choose an allocation methodology only for the shared platform costs that cannot be specifically allocated. Blunk Declaration, ¶ 3. When Marathon was the operator of the Trading Bay Unit, it chose to allocate these shared costs based on respective volume of production, using "total fluids." *Id.*, ¶ 4. After UOCC took over as operator it continued using "total fluids" to allocate shared costs which had been used by Marathon, until installation of electric submersible pumps ("ESPs") at the platform significantly increased the water production of the oil wells, increasing the oil well's "total fluid" production without increasing platform costs or oil revenue. *Id.*, ¶ 5. UOCC then changed to a Barrels of Oil Equivalent ("BOE") allocation after installation of

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

the ESPs, which merely eliminated water from the production calculation, because "total fluids" was no longer a "fair and equitable" cost allocation. *Id.*, ¶ 6. *And see* Page Depo., pp. 119-120, and 122-133, discussing in detail how the conversion of the Steelhead Platform to ESPs prompted the change to the BOE methodology so that cost allocation would be more fair and equitable than staying with the "total fluids" method.  BOE is a cost allocation methodology that is accepted in the industry and, like "total fluids," is a measure of production volume.[2]  Blunk Declaration, ¶ 7.  Under the circumstances, the change to BOE was more fair and equitable due to the increased water production, but any number of allocation methods, accepted within the industry, could fall within the broad scope of "fair and equitable. *Id.*, ¶ 8.  There is no evidence in the record that establishes that UOCC's decision to allocate expenses from this single cost center has resulted in an unfair or inequitable allocation of the costs for the Steelhead platform.

### 2. Marathon's Consent To The BOE Methodology Was Not Required.

Marathon also argues that UOCC had to obtain Marathon's approval before using the BOE methodology.  However, Marathon's argument that under the Operating Agreement "changes in operations or operation methodologies that have such a significant effect on non-operators require agreement by the parties," has no support under the language of that contract.

Marathon points to no term of the Operating Agreement which requires that changes in cost allocation methodologies requires the prior consent of the non-operator.  Certainly, Section 16.3 (which expressly relates to cost allocation and sets out the "fair and equitable apportionment" standard) contains no such requirement.

Instead, Marathon relies on the unsworn report of its expert, Patrick Martindale, who cites portions of the Operating Agreement dealing with expenditures.  However, Mr. Martindale's "opinion" on this issue cannot defeat summary judgment for UOCC and Forest.  To begin with, no

---

[2] For this reason, Marathon's claim that BOE is "not a measure of production, but a measure of the value of production" (Opposition, p. 6) is factually incorrect.  Marathon supports this claim with the deposition of Mitch Fischbach at p. 21, but nowhere on that page of his deposition did Mr. Fischbach state that BOE measures value.  Marathon's claim that BOE measures value, and not production, is thus unsupported by any evidence, and in fact the only evidence is to the contrary.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

provision of the Operating Agreement relied on by Mr. Martindale has anything to do with cost allocation methodology. Sections 4.2(J), 5.3(E), and 8.3(D) only apply, respectively, to (i) "the making of any single expenditure in excess of One Hundred Thousand Dollars," (ii) "an expenditure for any single project exceeding One Million Five Hundred Thousand Dollars," and (iii) "expenditures" on "projects." The methodology at issue in this case deals with allocating operating costs, not with the decision of whether the owners should make large expenditures on individual projects, which is what these sections address.

Further, matters of contract interpretation are issues of law for this Court to determine. *See Estate of Polushkin ex rel. Polushkin v. Maw,* 170 P.3d 162, 166 (Alaska 2007) ("Questions of contract interpretation are generally questions of law"). Mr. Martindale's expert report is not probative to the Court's interpretation of the Operating Agreement in these summary judgment proceedings because the report is not evidence; Marathon submits no sworn affidavit or other sworn testimony by Mr. Martindale in support of his "opinion" stated in his report. *See* F.R.C.P. 56(e)(2) (requiring defendant to "by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial"). For instance, Marathon submits no affidavit or declaration from Mr. Martindale averring that the "expenditures" referred to in the Operating Agreement provisions cited in his report include cost allocation methodologies under industry practice or standards. *Cf. Stock & Grove, Inc. v. City of Juneau*, 403 P.2d 171, 176 (Alaska 1965) ("That the clear and unambiguous terms of a contract may be interpreted by the general and accepted usage of the trade or business involved is the general rule of law," and such usage may be shown by expert testimony).

## CONCLUSION

The Court has neither the expertise to determine what is the "best" method of cost allocation on the Steelhead Platform, nor is it proper for the Court to do so under the language of the governing Operating Agreements. Instead, it is sufficient to grant summary judgment for UOCC that the BOE methodology for cost allocation used by UOCC is "fair and reasonable" as a matter of law.

Therefore, for the reasons stated above and in UOCC's motion, and for the additional reasons stated in Forest's reply and its own motion for summary judgment, the Court is respectfully

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

requested to grant UOCC and Forest's respective summary judgment motions and dismiss the complaint against the defendants in its entirety and with prejudice.

DATED this 9th day of June, 2008.

LANE POWELL LLC<br>
Attorneys for Defendant Union Oil Company of California d/b/a UNOCAL Alaska

By   s/ Brewster H. Jamieson
   301 West Northern Lights Boulevard, Suite 301
   Anchorage, Alaska  99503-2648
   Tel:  907-277-9511
   Fax:  907-276-2631
   Email:  jamiesonb@lanepowell.com
   ASBA No. 8411122

I certify that on June 9, 2008, a copy of the foregoing was served by ECF on:

Daniel T. Quinn  dquinn@richmondquinn.com
R. Scott Taylor  taylor@frozenlaw.com
Robert K. Stewart  bobstewart@dwt.com

 /s/ Brewster H. Jamieson
017351.0041/164572.1

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631