April 7, 2008



OGC CONSULTING
P.O. Box 130116
The Woodlands, TX 77393-0116
Ph: (936) 321-9431
Fax: (936) 321-3061
E-Mail: HBlunk@OgcConsulting.com

**Expert Report of Howard G. Blunk**
Case No. 3:06-cv-00102-TMB
United States District Court for the District of Alaska at Anchorage

Marathon Oil Company v. Forest Oil Corporation, Pacific Energy Alaska Operating LLC, Union Oil Company of California d/b/a Unocal Alaska; and Chevron Corporation

Introduction

I was retained by Union Oil Company of California (Unocal) to perform an analysis of the various Operating Agreement and Accounting Procedure exhibit provisions associated with the Trading Bay Field, Trading Bay Unit, and Alignment Agreements subject to this litigation. In addition, I have been asked to provide opinions on the appropriate application and interpretation of the agreement provisions pertaining to the accounting for, and adjustment of, expenditures associated with the operations governed by these agreements, and the allocation of facility costs under such agreements.

My opinions reflect my experience working with the various model form operating agreements published by the American Petroleum Institute (API), the American Association of Professional Landman (AAPL), the Rocky Mountain Mineral Law Foundation (RMMLF) and model form accounting procedures, related model form interpretations, and accounting guidelines published by the Council of Petroleum Accountants Societies (COPAS).

My focus was to evaluate the various allocation methodologies employed by Unocal to apportion certain miscellaneous facility costs which are at issue in this litigation against COPAS and industry standards, customs, and practices, assess the positions expressed by the parties to this litigation, and to evaluate any opinions offered by experts retained by either Forest Oil Corporation (Forest) or Marathon Oil Company (Marathon).

A resume outlining my experience and qualifications as an expert in the area of joint interest operating agreements and accounting procedures, including the application of any COPAS interpretations and guidelines related to these agreements, is attached as Exhibit A to this report. Included in that exhibit is a listing of other cases where I have provided expert support and a listing of all publications I have authored in the past ten years. My compensation is $200 per hour plus actual expenses.

Materials Considered

A listing of the materials I have considered is attached to my report as Exhibit B. I reserve the right to supplement my report if I am asked to examine additional material pertinent to the issues in this case, including any expert reports or testimony given by other experts.

Background

Unocal is the Operator of the Trading Bay Unit located in the Cook Inlet of Alaska and is also the current Operator of the Steelhead Platform located within the unit. Prior to 1994 Marathon was

the Operator of the Steelhead Platform. For the leases served by the Steelhead Platform Forest owns working interest in only the oil leases, and Unocal owns working interests in both oil and gas leases served by the platform. Pacific Energy Alaska Operating LLC (PEAO) is Forest's successor in interest of these leases. Marathon also owned working interests in these oil and gas leases but in 1996 sold its oil interests to Forcenergy, Inc., which was subsequently acquired by Forest. Thereafter, Marathon's remaining interest was in a Working Interest Participating Area known as the Grayling Gas Sands which are served by the platform.

The Steelhead Platform was constructed by Marathon and Unocal in the 1980's. Unocal is the Operator of the platform, prior to 1994 Marathon was the Operator. Steelhead serves both the oil leases in which Unocal and Forest (now PEAO) have working interests and the Grayling Gas Sands in which Unocal and Marathon have working interests. For oil, the working interests are 53.2 percent Unocal and 46.8 percent Forest (now PEAO) and for gas the working interests are 51.2 percent Marathon and 48.8 percent Unocal.

Operation of the Steelhead Platform is governed by Trading Bay Unit Operating Agreement which was entered into in 1967, and has been modified and amended a number of times since. Section 16.3 of this agreement states:

> *No well, platform, or production facility...shall be used for other than that upon which ownership is based without the approval of the Parties owning such well, platform, or production facility as provided in Subsection 5.3D. Upon such use, a fair and equitable apportionment of risks and liabilities, investment, and operating and other costs shall be made between the parties therefor...*

As Operator, Marathon and later Unocal, established and utilized cost centers to identify wherever possible platform costs associated solely with the gas interests and costs associated solely with the oil interests. These cost centers would be accounted for and charged separately to gas or oil. What costs that could not be separately identified, accounted for, and charged to either gas or oil were accumulated in a miscellaneous facility cost center (No. 1007096000). What constitutes the *"fair and equitable apportionment"* of the miscellaneous facility cost center is the subject of this litigation.

During the time Marathon was Operator and through December 2001 when Unocal was Operator the miscellaneous facility cost center was allocated based on the relative volumes of total fluids produced by the gas and oil wells. Although water production was handled and otherwise treated onshore, and not on the Steelhead Platform, the approach was to use full well stream as the basis to allocate these common costs. This involved calculating a barrel of oil equivalent for the gas volumes and adding to that the barrels of oil and water produced to develop a total fluids volume, and then apportioning the cost center based on the total fluids attributable to the gas wells and the total fluids attributable to the oil wells.

To enhance oil production, the oil owners undertook a project to convert the oil wells (five in total) from the gas-lift method of artificial lift to electric submersible pumps. As intended, this well conversion project increased the oil production but significantly increased associated water production (Page Deposition – pages 123, 155-156, 166, 175-176). Under the total fluids methodology the increased water production would have resulted in an equally significant shifting of the miscellaneous facility costs towards the oil wells and away from the gas wells, which was already being detected in 2001 as the electric submersible pumps were being installed.

As Operator, Unocal made the decision to change the allocation methodology effective January 2002 from total fluids to a barrel of oil equivalent (BOE) which would not include the water. Marathon, as an owner only in the gas wells objected and during the next three years engaged in

2

discussions with Unocal and Forest to address and resolve the issue of an allocation methodology that would satisfy all concerned, Marathon (as an owner only in the gas wells), Forest (as an owner only in oil wells), and Unocal (as an owner with similar working interest percentages in both the gas and the oil wells). The discussions over the next three years resulted in another change in allocation methodology which involved a 50/50 combination of the BOE approach and relative well counts, gas versus oil, as suggested by Marathon (Page Deposition – pages 168-170). The latest allocation methodology is still in place, but did not address other concerns expressed by both Marathon and Forest regarding the time frame applicable, historical adjustment versus prospective change. Ultimately, Marathon initiated this litigation.

Agreements

The starting point in determining the rights and obligations of the parties to an oil and gas joint interest operation is the Operating Agreement. Most Operating Agreements used today in the United States are based on model forms published by the American Association of Professional Landmen (AAPL) and/or the Rocky Mountain Mineral Law Foundation (RMMLF). There are different vintages of these model forms, each contain different provisions regarding the rights and obligations of the parties and each contain a blank "Other Provisions" section for the parties to insert additional provisions for special terms and conditions (including accounting matters) that are tailored to the individual operations and the intent of the parties. The Operating Agreements in this case are manuscript forms drafted by the parties to reflect their agreement as to how operations were to be conducted.

These agreements contain specific language regarding the chargeability and apportionment of certain types of cost, and each is supported by an Accounting Procedure exhibit which provides in detail for the types of costs to be shared by the parties. The Operating Agreements in this case provide that if there is a conflict between the Operating Agreement and the accounting procedure exhibit, the terms of the Operating Agreement shall prevail. Key to this case is Section 16.3 of the Trading Bay Unit Operating Agreement which specifically discusses allocations, and requires that allocation of platform costs reflect a *"...fair and equitable apportionment..."*, but does not provide how that is to be accomplished.

Most Operating Agreements used today in the United States have Accounting Procedure exhibits that use the model forms published by the Council of Petroleum Accountants Societies (COPAS). There are different vintages of COPAS forms including the 1962, 1968, 1976, 1986, and 2005 model forms which are more commonly used for offshore operations. Each vintage of the COPAS model forms contains different terms and conditions regarding the chargeability of direct costs, and overhead recovery options. Each vintage of the COPAS model forms also contain payment, adjustment, and audit clauses which determine the rights of the parties to perform a Joint Interest Audit. The Operating Agreements in this case utilize the COPAS 1986 model form, with modifications agreed to by the parties.

COPAS Model Forms, Interpretations, and Guidelines

COPAS is the recognized authority in the highly specialized field of accounting and auditing joint interest operations in the United States. I am familiar with and knowledgeable concerning the model forms published by COPAS and the model forms previously published by the individual societies that came together to form COPAS, such as the Petroleum Accountants Society of Los Angeles and the Petroleum Accountants Society of Oklahoma - Tulsa.

The first COPAS model form accounting procedure was published in 1962, one year after the organization was formed, and its second model form was published six years later in 1968. When COPAS publishes a new model form accounting procedure the existing model form is taken out of print by COPAS as the new version becomes the COPAS recommended model form. For example, the COPAS 1986 model form attached to and made part of the Operating Agreement involved in this litigation replaced the 1976 model as the recommended form, and subsequently the COPAS 2005 model form accounting procedure replaced the 1986 model as the recommended form.

Each COPAS accounting procedure is accompanied by an interpretative bulletin designed to aid in interpreting that particular agreement and audits conducted thereunder. These bulletins are now known as Model Form Interpretations (MFIs). In connection with the 1986 model form accounting procedure, COPAS issued Bulletin No. 25 (now known as MFI-19). MFI-19 addresses allocation methodologies for various facilities, including platforms.

Issues and Opinions

It appears that Marathon believes Unocal was required by the agreements to continue using the total fluids methodology that Marathon had developed and instituted as the prior Operator, even after the conversion of the oil wells to electric submersible pumps in 2001. It appears Unocal believes it was obligated by the agreement to change the allocation methodology to a BOE basis to reflect the conversion of the oil wells to electric submersible pumps, and to ensure allocation methodologies reflected a fair and equitable apportionment. It also appears Forest, Marathon, and Unocal engaged in many discussions over a nearly five year period regarding what was a fair and equitable apportionment, and that Unocal found itself in the middle of a dispute between two non-operators who had competing interests due to the fact only Unocal held a working interest in both the gas and the oil wells.

In my opinion an Operator, in applying the accounting under these agreements, is obligated by Section 16.3 of the Trading Bay Unit Operating Agreement to change and/or modify allocation methodologies any time is becomes apparent that an allocation may not result in a fair and equitable apportionment. In addition, from an accounting perspective there is no provision in the agreements that defines or addresses the exact methodology to apply, total fluids versus BOE, and that it is up to the Operator to develop a fair and equitable apportionment. It is also my opinion there are many ways in oil and gas accounting to allocate common costs, and that whatever is the methodology employed it should reflect operating conditions.

In my opinion Unocal adopted a methodology which appropriately reflected the conversion of the oil wells to electric submersible pumps because the attention and time of the field personnel after this change was lessened as to the oil wells, and also because the increased water produced was actually handled and otherwise treated onshore, not on the Steelhead Platform. Since the common costs in question are predominately labor and labor related costs, the relative amount of time and attention field employees had to devote to the gas wells versus the oil wells needs to be an integral part of the selection of an allocation methodology. It is my opinion that Unocal took such factors into account, and that Unocal as Operator was the party in the best position to determine objectively the appropriate methodology to reflect this change in operational conditions, not accountants and auditors representing the non-operators.

My detailed opinions, and the bases for those opinions, are set forth below.

<u>Does the Unit Operating Agreement state allocations are to be based on total fluids ? - **No**</u>

The Unit Operating Agreement only states in Section 16.3 that allocations are to reflect a fair and equitable apportionment. These is no reference guiding the accountant to a specific methodology to employ, and the total fluids methodology developed and instituted by Marathon is not defined or otherwise addressed in this agreement. It is up to the Operator, Unocal in this case, to make an accounting determination as to a methodology that best reflects operational conditions in order to make a fair and equitable apportionment.

<u>Does the Accounting Procedure Exhibit state allocations are to be based on total fluids ? - **No**</u>

The COPAS 1986 Accounting Procedure attached to and made part of the Unit Operating Agreement does include platforms in the definition of Offshore Facilities. The COPAS 1986 form does not address how such facilities are to be allocated, and does not contain any references to a total fluids methodology.

<u>Does COPAS MFI-19 address or discuss or endorse a total fluids methodology ? - **No**</u>

MFI-19 was published by COPAS to clarify the intent and application of various provisions contained in the 1986 model form. The publication does discuss allocation methodologies of various types of oilfield equipment and facilities, including platforms (see pages 19-22). However, this publication does not endorse any one methodology for platforms, suggesting either wells or volume could an equitable basis, and does not distinguish the volumetric approach between a total fluids methodology or a BOE methodology. This is not surprising since the fact there may be more than one acceptable methodology to allocate facility costs is commonly known among practicing oil and gas accounting and auditing professionals, not just members of COPAS. The approach generally used by oil and gas accountants and auditors is to examine the types of cost being charged and then determine the relationship of the costs incurred to the basis used to allocate those costs. This is an approach that can be called a "Cost to Benefit Relationship Test", which is based on matching allocation methodologies to operational conditions and practices. This is the approach that was taken by Unocal in determining that the methodology should be changed effective January 2002.

<u>Do the platform costs in question lend themselves to any particular allocation basis ? – **No**</u>

It is apparent from the documents provided for my review that the individual charges accumulated in the miscellaneous facility account subject to this dispute are predominately associated with labor and related expenses. On face, it might appear that a simple well count would be appropriate. However, the Steelhead Platform serves both gas wells and oil wells and the needs of these wells differ by the type of hydrocarbon produced and the equipment used to produce and other-wise handle this production. Unocal identified the BOE methodology as one that would best address the fact both gas and oil wells are subject to the allocation, and that water from the oil wells is processed onshore and not the platform. Their approach solved the inequity arising from continuing to use the old total fluids methodology after the electric submersible pumps were installed, and is also reflective that a strict well count approach does not fit the nature of this operation.

<u>Does a modified BOE/Well Count method later agreed to represent any real improvement ? – **No**</u>

The documents I reviewed indicates the approach which was apparently agreed to by all the parties, Forest, Marathon and Unocal, and implemented effective January 2006 represents a

compromise offered solely in the spirit of settlement. Nothing in the documents provided for my consideration indicate any operational rationale for this change. However, it is a methodology the parties apparently agreed to and, from an accounting perspective, does provide guidance on how to allocate these costs in the future.

## Other Issues

My work on this matter is continuing. I have been advised that I may be asked to provide my opinion on other issues that will possibly be presented during the course of my engagement. I reserve the right to amend my report to address any such issues as they arise.

Respectfully,

*Howard G. Blunk*

Howard G. Blunk

## MATERIALS CONSIDERED

Court Filings:

- Marathon Oil Company's Initial Disclosures (with all referenced documents)
- Unocal's Initial Disclosures
- Forest Oil Corporation's Initial Disclosures
- Forest Oil Corporation's Responses to Plaintiff's First Set of Discovery Requests
- Forest Oil Corporation's Supplemental Responses to Plaintiff's Second Set of Discovery Requests
- Union Oil's Responses to Plaintiff's First Set of Discovery Requests
- Union Oil's First Supplemental Discovery Response
- Depositions of Ted Kramer, Philip Bindon, Glenn Payment, David Hall, Don Page and Mitch Fischbach
- Forest Oil Corporations Motion for Summary Judgment
- Union Oil's Joinder in Forest Oil Corporations motion for Summary Judgment
- Union Oil's Motion for Summary Judgment

Agreements:

- Trading Bay Field Operating Agreement
- Trading Bay Unit Agreement
- Trading Bay Unit Operating Agreement
- Alignment Agreement Trading Bay Field/Trading Bay Unit

# HOWARD G. BLUNK
P.O. Box 130116
The Woodlands, Texas 77393-0116
Ph: (936) 321-9431 Fax: (936) 321-3061
E-mail: HBlunk@OgcConsulting.com

**Professional Objective:**

To provide quality accounting/audit services focusing on the full range of Oil and Gas Contract negotiations, analysis and development of overhead recovery rates, compliance reviews, and dispute resolution.

**Oil and Gas Accounting/Auditing Experience:**

Over thirty years of experience in Oil and Gas Accounting and Auditing, over twenty-seven of those years in supervisory or management positions involving all aspects of Exploration, Land and Producing activities. Highlights are provided below:

OGC Consulting (The Woodlands, Texas) – Founder/Owner

Provides a variety of accounting/audit services focusing on the full range of Oil and Gas Contract negotiations, analysis and development of overhead recovery rates, compliance reviews, and dispute resolution. Client base includes both operators and non-operators, and purchasers and sellers of oil and gas production. Primary emphasis is on joint venture agreements and related COPAS Accounting procedures, interpretations and guidelines; has personally helped develop many of their publications. Is a former member of the COPAS Board of Directors and a past President of COPAS. Is currently the Chair of the COPAS Electronic Document Review Committee, and has also chaired their Audit Committee and their Emerging Issues and Internal Review Sub-Committees. Has made a number of presentations to industry groups including COPAS, the American Association of Professional Landmen (AAPL), the American Petroleum Institute (API), and the Rocky Mountain Mineral Foundation (RMMLF) on joint venture auditing, and oil and gas contract activities. Also spoken at several universities on oil and gas auditing, and made presentations at various industry "education days". Course instructor for the Professional Development Institute at the University of North Texas (PDI), and author of the course book used in PDI's National Accounting and Auditing School for Joint Interest Operations.

Chevron Corporation (Houston, Texas) - Manager, Non-Operated Joint Ventures
Responsibilities included development and execution of annual audit plan for Chevron's non-operated properties in the United States and Canada. Managed a twelve person staff that generated annual claims of $8-10 million, achieving a 75 percent recovery rate.

Chevron Corporation (London, England) - Assistant Manager, Middle East and Africa
Oversaw full range of audit department activities including internal controls, joint venture agreements, and contractor/vendor reviews. Responsibilities involved all company activities (Upstream, Downstream, and Chemicals) in the host countries.

Chevron Corporation (Two Locations) - Regional Audit Supervisor
Annual planning and staff supervision for all Upstream audit activities including internal control audits, joint ventures, and contractor/vendors in Denver, Colorado and then in Houston, Texas after the Chevron merger with Gulf Oil.

Chevron U.S.A Inc (Concord, California) –Supervisor, Central Region Gas Accounting
Responsible for volume determination, well allocations, and application of gas pricing regulations, to perform the monthly accounting for all gas production and gas plant operations for one of three Business Units in the company.

Chevron U.S.A, Inc. (La Habra, California) - Division Accounting Specialist
Served as Finance Department liaison to the Production Staff in Division Headquarters. Provided on-sight accounting support to resolve discrepancies in production, operating cost, and project reporting. Also served as on-sight advisor and trainer for the Division.

Chevron U.S.A, Inc. (Walnut Creek, California) – Production Accountant
Gathering, recording, and development of monthly accounting entries to recognize gas and oil production income, royalty and tax obligations, and prepare monthly local, state, and federal regulatory reports. Also responsible for monthly revenue recognition of company owned pipelines, calculations of loss allowance, preparation of invoice for pipeline movements in accordance with published tariffs.

Chevron Oil Company - Western Division. (Denver Colorado) – Production Accountant
Gathering, recording, and development of monthly accounting entries to recognize gas and oil production income, royalty and tax obligations, and prepare monthly local, state, and federal regulatory reports. Also responsible for monthly revenue recognition of company owned pipelines, calculations of loss allowance, preparation of invoice for pipeline movements in accordance with published tariffs.

Petro-Search Corporation (Denver Colorado) – Tax Intern
Preparation of Partner Tax Returns associated with interests in Limited Partnerships for Oil and Gas Drilling and Production activities. Responsible to assemble relevant revenue and expenditure data in order to perform profit and loss calculations, identification of tangible and intangible drilling costs, and determination of partner share in accordance with the underlying agreements.

**Professional Associations:**

Petroleum Accountants Society of Houston (PASH):
Audit Committee Chair – 1997-1998
Board of Directors – 1996 and 1999 to 2002
Secretary – 1999-2000
Treasurer – 2000-2001
Society President – 2001-2002


Council of Petroleum Accountants Societies (COPAS):
Internal Review Sub-Committee Chair – 1994-1995
Emerging Issues Sub-Committee Chair – 1995-1998
Audit Committee Chair – 1999 – 2001
Board of Directors – 2003 -2006
Treasurer – 2003
Vice-President – 2004
President – 2005
Ex-Officio – 2006
Research and Advisory Committee – 2006 to current
Electronic Document Review Committee Chair – 2007 to current

**Education:**
Western State College of Colorado, Gunnison, Colorado
BA in Political Science with minor in English
Colorado Teaching Certificate
Graduated: December, 1972
Metropolitan State College of Colorado, Denver, Colorado
Accounting Studies
Board Officer of Accounting Honor Society, Vice-President's Honor Roll
Attended June, 1975 - May, 1977

**Publications Authored in Past Ten Years:**

- Course Book – *National Accounting and Auditing School for Joint Interest Operations*, published 2001, 2004, 2007 by The Professional Development Institute, University of North Texas

- Seminar Paper – COPAS Accounting Procedures, The 2005 COPAS Accounting Procedure, The Audit Process, and Legal and Practical Considerations, published 2007 by Rocky Mountain Mineral Law Foundation (Co-Authored with Karla Bower – ConocoPhillips and Jonathan Baughman – McGinnis, Lochridge & Kilgore, L.L.P).

- Course Book – *Auditing under Production Sharing Contracts and International Operating Agreements*, published 2007 by The Professional Development Institute, University of North Texas

**Project Team Member on the following COPAS Publications:**

AG-1 Determination of Values for Well Cost Adjustments – Joint Operations
AG-16 Guidelines for Conducting an Internal Audit of a Gas Plant
AG-19 Expenditure Audits in the Petroleum Industry – Protocol and Procedures Guidelines
AG-21 Revenue Audits in The Petroleum Industry – Protocol and Procedure Guidelines
MFI-21 Overhead – Joint Operations
MFI-30 Audit Rights for Non-Participating, Non-Consenting Parties
MFI-40 Twenty-Four Month Audit Period Audit and Accounting Adjustment
MFI-41 Documentation Requirements for Electronic Invoices
MFI-42 Documentation Requirements for Procurement Card (P-Card) and Convenience Check Charges
MFI-43 Documentation Supporting Joint Interest Expenditures

**Expert Services – Arbitration/Litigation Support**

| Year | Type | Case | Services |
|---|---|---|---|
| 2000 | Litigation | *Nuevo Energy Company v. Exxon Mobil Corporation*<br>CV00-03670 CM (CWx)<br>US District Court – Central District of California, Western Division<br>(Settled) | Expert Report, Depositions |
| 2001 | Litigation | *Belco Energy Corp., etc., et al. v BP Amoco Corp., et al.;*<br>CA No. 99-S-2047<br>US District Court – District of Colorado<br>(Settled) | Expert Report, Deposition |
| 2001 | Arbitration | *Shell Offshore, Inc. et. Al. v. ANR Production Company*<br>Arbitration – Houston, Texas<br>(Settled) | Consulting |
| 2001 | Litigation | *In Re: Michael Petroleum, Et. Al*<br>99-50569-L-2-11<br>United States Bankruptcy Court – Southern District of Texas, Laredo Division<br>(Settled) | Expert Report |
| 2001 | Litigation | *Jamison Et. Al v. XCO Production Company Et. Al*<br>Cause No. 1999-38725<br>61st Judicial District Court of Harris County, Texas<br>(Trial by Jury) | Consulting, Expert Report, Deposition, Testimony |
| 2001 | Litigation | *Wexpro v. Chevron U.S.A., Inc.*<br>US District Court – District of Wyoming<br>CV-1010-J<br>(Summary Judgement) | Consulting |
| 2001 | Litigation | *Eric Szaloczi, et al. v. Redstone*<br>Case No. 00CV4682<br>District Court, City and County of Denver<br>(Trial by Judge) | Consulting, Expert Reports, Depositions, Testimony |
| 2001 | Arbitration | *Petrozuata, C.A v. Sincor, C.A.*<br>Puerto La Cruz, Venezuela<br>(Settled) | Expert Report, Consulting |
| 2001 | Litigation | *Fidelity Oil Co. v. Shell Western E&P Inc.*<br>Case No. DV-98-5817<br>Montana Sixteenth Judicial District Court, Fallon County<br>(Settled) | Expert Report |
| 2002 | Litigation | *Coastal Oil & Gas USA, LP. v. Endeavour Oil & Gas Limited*<br>Case No. 2000-26484<br>129th Judicial District Court of Harris County, Texas<br>(Settled) | Expert Report, Deposition |

4

| Year | Type | Case | Services |
|---|---|---|---|
| 2003 | Litigation | *Stephenson etal v. Oneok Resources Company*<br>Case No. CJ-2001-73 1L<br>District Court of Cleveland County, Oklahoma<br>(Trial by Jury) | Expert Report,<br>Deposition,<br>Testimony |
| 2003 | Litigation | *B T Operating Company, Debtor*<br>Case No. 02-51087<br>United States Bankruptcy Court, Western District of Louisiana<br>(Settled) | Expert Report |
| 2003 | Arbitration | *Geo Petroleum, Inc. v. Saba Petroleum, Inc (Greka)*<br>Arbitration – Los Angeles, California<br>(Settled) | Consulting |
| 2003 | Litigation | *Flash Gas & Oil vs. Unocal etal*<br>Case No. G-02-621<br>United States District Court,<br>Southern District of Texas – Galveston Division<br>(Settled) | Expert Report |
| 2003 | Arbitration | *Agrium U.S., Inc. v. Union Oil Company of California*<br>AAA No. 70 198 00539 02<br>American Arbitration Association<br>Houston, Texas<br>(Panel Decision) | Consulting<br>Expert Report<br>Testimony |
| 2004 | Litigation | *Lobo Exploration Co. v. BP America Production Company*<br>Case No CJ-97-72<br>District Court of Beaver County<br>State of Oklahoma<br>(Settled) | Consulting<br>Expert Report<br>Deposition |
| 2004 | Arbitration | *Davis Petroleum Corp. and Opus Oil and Gas, L.P.*<br>AAA No. 70 198 00399 03<br>American Arbitration Association<br>Houston, Texas<br>(Settled) | Expert Report |
| 2004 | Litigation | *Tipperary Corporation vs. Tri-Star Petroleum*<br>Case No. CV-42,265<br>238th Judicial District Court of Midland County, Texas<br>(Settled) | Affidavit<br>Deposition |
| 2004 | Litigation | *Tri-Union Development Corp. v. Northwestern Mutual Life*<br>Case No. 03-44908-H4-11<br>United States Bankruptcy Court - Southern District of Texas<br>(Settled) | Affidavit |
| 2004 | Litigation | *Texas Standard v. El Paso, et.al*<br>Case No. 2003-3087<br>280th Judicial District Court of Harris County, Texas<br>(Settled) | Expert Report |

| Year | Type | Case | Role |
|---|---|---|---|
| 2004 | Litigation | *IMC Global, Inc. v. El Paso Oil & Gas Company*<br>Case No. 2003-67133<br>61st Judicial District Court of Harris County, Texas<br>(Summary Judgement) | Expert Report |
| 2005 | Litigation | John *Cicur et al v. Aspen et al*<br>Case No. CC-05-36<br>229th Judicial District Court of Harris County, Texas<br>(Settled) | Consulting |
| 2005 | Litigation | *Gulfmark v. Brann*<br>Case No. 2003-30786<br>189th Judicial District Court of Harris County, Texas<br>(Settled) | Consulting |
| 2005 | Litigation | *Wapiti v. Duke*<br>Case No. 2003-66391<br>80th Judicial District Court of Harris County, Texas<br>(Settled) | Expert Report<br>Deposition |
| 2005 | Litigation | *Great Lakes v. Scott D. Bruner et al*<br>Case No. CV-2004-0443-4<br>Circuit Court of Union County, Arkansas<br>(In Progress) | Affidavit<br>Deposition |
| 2005 | Litigation | *Tellus v. TPIC*<br>Case No. 2:04 cv 327<br>U.S.D. Southern District of Mississippi, Hattiesburg Division<br>(In Progress) | Consulting<br>Expert Report |
| 2005 | Litigation | ERG Illinois, Inc. v. Tsar Energy II, LLC.<br>Cause No. 2004-39584<br>334th Judicial District Court of Harris County, Texas<br>(Settled) | Deposition |
| 2006 | Litigation | Reliant Exploration Creditors' Trust. v. Opus Oil & Gas L.P.<br>Cause No. 2005-36332<br>239th Judicial District Court of Brazoria County, Texas<br>(In Progress) | Expert Report |
| 2006 | Litigation | Nabors Alaska Drilling, Inc. v. Forest Oil Corporation<br>Case No .3AN-05-09399 CI<br>Superior Court for the State of Alaska, Third Judicial District at Anchorage<br>(In Progress) | Expert Report |
| 2006 | Litigation | B/K CO. (H&S) v.H&S Production and Atoka Operating<br>Cause No 06-01733<br>160th Judicial District Court of Dallas County, Texas<br>(In Progress) | Expert Report |

| 2007 | Litigation | Duke Energy Field Services, LP v. ExxonMobil<br>*Case No 2006-56294*<br>*280th Judicial District Court of Harris County, Texas*<br>*(In Progress)* | Expert Report |
| --- | --- | --- | --- |
| 2007 | Arbitration | PennTex Resources, LP v. ERG Illinois Holding, Inc.<br>*Cause No 70 180 Y 00437 06*<br>*American Arbitration Association*<br>*(Panel Decision)* | Trial Testimony |
| 2007 | Litigation | Forest Oil Corporation v. Unocal Alaska<br>*Case No A05-0078CV JWS*<br>*United States District Court for the District of Alaska*<br>*(In Progress)* | Consulting |
| 2007 | Litigation | Willmac Resources, LPI v. Windsor Energy Group<br>*Cause No 06-05226*<br>*M-298th Judicial District Court of Dallas County, Texas*<br>*(In Progress)* | Consulting |
| 2007 | Arbitration | Mariner Energy, Inc. v. Marathon Oil Company<br>*Cause No 70 198 Y 00773 06*<br>*American Arbitration Association*<br>*(In Progress)* | Expert Report<br>Trial Testimony |
| 2008 | Litigation | Pathex Petroleum, Inc.v. Lakota Resources, Inc<br>*Case No.2007 - 02397*<br>*189th Judicial District Court of Harris County, Texas*<br>*(In Progress)* | Consulting |
| 2008 | Litigation | Energy XXI Gom, LLC v Comstock Offshore, LLC<br>*Civil Action No. 06 - 10826*<br>*United States District Court - Eastern District Louisiana*<br>*(Settled)* | Expert Report |