Daniel T. Quinn (8211141)
Marc G. Wilhelm (8406054)
RICHMOND & QUINN, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
Ph: (907) 276-5727
Fax: (907) 276-2953

Attorneys for Plaintiff Marathon Oil Company

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARATHON OIL COMPANY,            )<br>                                  )<br>          Plaintiff,             )<br>                                  )<br>     v.                           )<br>                                  )<br>FOREST OIL CORPORATION: PACIFIC   )<br>ENERGY ALASKA OPERATING LLC,      )<br>UNION OIL COMPANY OF              )<br>CALIFORNIA, d/b/a UNOCAL ALASKA,  )<br>                                  )<br>          Defendants.             )<br>                                  ) | Case No. 3:06-cv-00102 TMB |

### REPLY BRIEF REGARDING MARATHON OIL COMPANY'S CROSS MOTION FOR SUMMARY JUDGMENT

Forest Oil's and Unocal's arguments that Unocal's allocation methodologies are "fair and equitable" rely on flawed reasoning. They jump from the premise that because Barrels of Oil Equivalent ("BOE") is one of the methodologies used elsewhere in the industry to the conclusion that Unocal is entitled to use it here. In jumping straight from premise to conclusion they overlook or ignore that, for a methodology to be "fair and equitable," it must reflect the operational conditions

present on the platform. They further ignore Marathon's undisputed evidence that BOE does not reflect the operational dynamics of the Steelhead platform, and bears no relationship to costs that appear in the shared cost account. Mr. Blunk's and Mr. Fischbach's conclusory pronouncements that the methodology is fair are not a proper basis for denying summary judgment.

Marathon's summary judgment motion that Unocal's allocations for shared costs using BOE or a BOE/hybrid approach are not "fair and equitable" raises narrow issues. Unocal and Forest do not dispute, in the absence of agreement to the contrary, that the allocation methodology must meet the "fair and equitable" standard contained in the operating agreement. Nor can they dispute that, for an allocation methodology to be fair and equitable, the methodology must reflect the actual expenses that are being incurred on the platform. As Mr. Blunk concurs in his report, "whatever is the methodology employed it should reflect operating conditions." Blunk report at 4. (Unocal Exhibit A at 4 – Document 90-2). On this issue he concurs with Marathon expert Pat Martindale, whose report states that the allocation method must "reflect the operational dynamics in place during the allocation period." Marathon's Exhibit 10, at 3. See also Marathon's opening brief at 15.

The core of the dispute is thus whether the BOE and BOE/hybrid methodologies "reflect operating conditions" in place on the platform. This is, as agreed by all, the litmus test any methodology must pass before it can be considered fair and equitable.

Neither Unocal nor Forest presents evidence that the post-2002 Unocal methodologies, which are based on BOE, reflect platform operating conditions. To the contrary, all Forest and Unocal witnesses admitted at their depositions that BOE does not correlate with the relative costs of operating an oil or gas well. Marathon Opening brief at 15-16.

Defendants also do not dispute that the expenses allocated to the shared cost center are primarily labor costs and labor support costs (i.e., transportation, catering, and other support). See Marathon's opening brief at 11. Unocal's expert, Mr. Blunk, concurs that the shared costs are labor related, and further admits the allocation methodology for these shared costs must reflect the relative labor requirements of oil and gas production on the platform. He states in his report that "[s]ince the common costs in question are predominately labor and labor-related costs, the relative amount of time and attention field employees had to devote to the gas wells versus the oil wells needs to be an integral part of the selection of an allocation methodology." See Unocal Exhibit A at 4 (Document 90-2).

Thus, Marathon and defendants agree not only that the allocation methodology must reflect operating conditions, but also that the relevant costs to be allocated are labor and labor support costs. See also Marathon opening brief at 11-14.

Having agreed with Marathon's logic this far, defendants simply refuse to carry these premises to the inescapable conclusion that there is no logical relationship between Unocal's BOE-based methodologies, which are based in whole or in part on the value of production, and the relative costs of operating the gas and oil wells on the platform. This is despite the fact that all the Forest and Unocal witnesses agreed with this unremarkable proposition in their depositions. See Marathon's opening brief at 15-16. In sum, Marathon's showing that there is no correlation between the value of production and required labor costs is undisputed. How then, can Unocal and Forest argue that allocation methodologies based on BOE or the value of production are "fair and equitable"?

Defendant Forest and Unocal in fact simply ignore Marathon's evidence that Unocal's labor prorates show that oil requires more labor than gas. See Marathon Opening Brief at 13-14. Since oil requires the lion's share of platform labor, the labor support costs, which must be allocated to oil and gas in proportion to the labor they are

supporting, should be borne primarily by the oil producers. See id. at 14. Moreover, the shared labor costs at issue in this litigation support all the wells in common. Id. On the other hand, Unocal's BOE-based methodologies, which allocate labor costs disproportionately to gas wells, do not reflect Steelhead's operating dynamics or "the relative amount of time and attention field employees had to devote to the gas wells versus the oil wells."

Since Marathon filed its opening brief, Unocal has provided more complete discovery relating to the labor prorates it has used from 2000 to present. A copy of relevant portions of this discovery, and a summary chart prepared from this discovery, is attached. See Exhibit 14. These documents show that, as of January 2002, when Unocal changed methodologies, the labor costs from two cost centers, for the "Steelhead Lead," and "Steelhead Utility" were allocated more to gas production than oil production, whereas the other four labor cost centers had the majority or near majority of labor allocated to oil cost centers. Clearly, the BOE methodology failed to reflect the allocation of labor costs. Currently, the "Steelhead Lead" labor center shows an equal allocation of the labor in this center to oil and gas; four other labor cost centers have a significantly greater percentage of their costs allocated to oil production than to gas production. Thus, the current BOE hybrid methodology also does not reflect labor costs, as required.

The Unocal methodologies, which originally allocated 92% of shared costs to gas, and later 78% under the current hybrid approach, do not even come close to being fair and equitable. The fact that the BOE method may be used elsewhere in the industry (where its use may be appropriate), does not make it fair as applied to the Steelhead platform. To accept that reasoning is to accept the conclusion that the "fair and equitable" contract requirement has no meaning at all; in Unocal's view, a methodology is "fair and equitable" simply upon the announcement of the operator. Marathon is accordingly entitled to summary judgment that the Unocal allocation

methodologies are in violation of the operating agreement upon which Forest and Unocal rely.

Forest and Unocal attempt to support Unocal's BOE based methodologies with the argument that the prior, agreed-to methodology, "total fluids," stopped being fair and equitable once electronic submersible pumps (ESPs) were installed. But even assuming that the prior total fluids methodology was no longer appropriate, this would not establish that Unocal's flawed replacement methodology was "fair and equitable."

Moreover, the mere fact there was a shift in cost allocation due to the installation of ESPs does not by itself establish that the total fluids methodology was not "fair." The proper question to ask is not whether there was a shift in costs, but whether the methodology no longer reflected the operational dynamics on the platform. While Unocal may have considered there would be a *shift* of costs with ESPs, there is no evidence that it determined either that total fluids failed to reflect the nature of the costs in the shared cost category, or that its replacement methodology, BOE, in fact reflected the nature of such costs. See Marathon's opening brief at 13.

Given that BOE does not reflect the operation dynamics of the Steelhead Platform, defendants argue in desperation that the only requirement is that the allocation of "all platform costs" be fair cumulatively. Under defendant's arguments, an individual allocation of costs for a cost center is entitled to be unfair, if the overall allocation for the platform as a whole remains roughly fair. There are several problems with this argument. The allocation of platform costs is based on a sophisticated system of individual allocations, whether for labor, equipment, supplies, transportation, or other items, each of which is subject to review. For such a system to be equitable, each individual allocation must be fair. Assuming that the other allocations are fair and equitable – which is not disputed in this lawsuit – making an unfair allocation in the area of shared costs makes the overall result unfair. Unocal

**REPLY BRIEF RE MARATHON OIL'S CROSS MOTION FOR SUMMARY JUDGMENT**
MARATHON v. FOREST OIL, ET AL., CASE NO. 3:06-cv-00102 TMB
PAGE 5

cannot argue that it is entitled to make an unfair allocation for one cost center, because somehow the overall result is still roughly fair. Moreover, defendants' assumption that the cumulative result is still somehow fair is not based on data or analysis, but wishful thinking.

Unocal does not get to choose when to accept and ignore the "fair and equitable" requirement.[1] This is particularly the case with the shared cost center at issue, which involves millions of dollars. This argument also flies in the face of the uniform testimony of the experts, that the allocation method picked for shared costs must itself meet the fair and equitable standard. See, e.g., Blunk report at 4.

Next, Unocal mischaracterizes when it suggests that Marathon's position is that Unocal must use the "best" allocation method. See Unocal Brief at 3. While Marathon believes an operator should attempt to determine the best methodology, the contractual standard is that the allocation method must be fair and equitable. Here, Unocal made no analysis to determine what would be the best method, or whether the method selected was fair and equitable.

Unocal's selection of BOE so widely misses the mark that the result clearly breaches the "fair and equitable" requirement. There is not even an arguable correlation between the costs in the shared cost center and the BOE methodology. What is left is the argument that the methodology is fair because the operator says it is fair. To accept Unocal's argument is to render the contract requirement entirely subjective, and hence standardless. As Marathon discusses above, the methodology must in fact correlate with objective facts, the operating dynamics of the platform.

Unocal was fully aware when it adopted its BOE-based methodologies, that "oil may require a disproportionate amount of effort and staffing and operating

---

[1] Although this approach works for Chilkoot Charlie, who "cheats the other guy and passes the savings on to you," it does not pass muster under the contractual "fair and equitable" standard.

**REPLY BRIEF RE MARATHON OIL'S CROSS MOTION FOR SUMMARY JUDGMENT**
MARATHON v. FOREST OIL, ET AL., CASE NO. 3:06-cv-00102 TMB
PAGE 6

activity," as compared to gas, as shown by its labor prorates and Mr. Page's unsent letter. Marathon Opening Brief at 13. Thus, Unocal's choice of BOE as a methodology, allocating over 90% of costs to gas, was at best arbitrary and can hardly be characterized as "fair and equitable."

### Howard Blunk's Conclusory Declaration

Mr. Blunk's declaration is not sufficient to defeat summary judgment, as his methodology is fundamentally flawed. Mr. Blunk asserts that "the relative amount of time and attention field employees had to devote to gas well versus the oil wells needs to be an integral part of the selection of an allocation methodology." Yet his opinion never addresses the actual time field employees devoted to gas and oil respectively, or how BOE in fact reflects the actual operating conditions on the platform. At most he claims that it was acceptable to change the methodology because the old total fluids methodology no longer fit after electrical submersible pumps were installed. Even if Blunk is correct that, relatively, more water is being produced, and the ESPs made the oil production more efficient, that does not support an approach that allocated more than 90% of costs to the gas side, when Unocal's own documents established that oil operations still required staffing greater than gas.

Mr. Blunk's report thus is flawed on two, separate grounds. First, Mr. Blunk's testimony that total fluids was "relatively" less fair after the installation of ESPs does not establish that Unocal's substitute, BOE, is fair. Second, because Mr. Blunk did not analyze the actual costs in the shared cost account, and the extent they supported oil versus gas, he had no foundation for concluding that BOE was in fact fair and equitable.

Under Rule of Evidence 702, proffered expert testimony must be both helpful and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993). As the Kumho Tire court noted, the key is to ensure that the expert's

"factual basis, data, principles, or their application" are fundamentally reliable. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). Under Daubert, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." In re Paoli RR Yards PBC Litigation, 35 F.3d 717, 745 (3rd Cir. 1994).

Thus, under Rule 702, the expert must be able to demonstrate a logical connection or "nexus" between the data obtained and the conclusions reached. Otherwise his conclusions are unreliable and inadmissible. As the Supreme Court has held, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). In other words, the expert is not allowed to simply announce a result and declare it to be the product of his expertise. He has to prove a connection between the facts, his underlying methodology, and the conclusion he reaches. Where, as here, there is "simply too great an analytical gap between the data and the opinion proffered," the opinion is inadmissible. Id.

For the reasons stated in a separate motion, the Affidavit of Mitch Fischbach should be stricken. Assuming it is not, it suffers from the same flaws as the Blunk declaration, and is inadmissible for the same reasons.

### Marathon's Experts Reports

Defendants complain that Marathon's Cross Motion was based on unsworn affidavits. While a motion for summary judgment need not be supported by affidavits, see Civil Rule 56(a), Marathon is filing affidavits of Pat Martindale and Wayman Gore authenticating their reports and testimony to remove the issue from the table. See Exhibits 15 and 16.

### Forest's Estoppel Argument

Forest claims that Marathon is estopped to challenge Unocal's BOE-based allocation methodologies because Marathon itself used total fluids as an allocation methodology. This argument has neither factual nor legal support. As Forest notes, equitable estoppel requires (1) the assertion of a position; (2) reasonable reliance by an adverse party; and (3) resulting prejudice. None of these factors are present here.

As explained in Marathon's opening brief, when Marathon was operator of the platform, it used total fluids as an allocation methodology by agreement of the parties. During the period that Marathon and Unocal each owned about 50% of gas and oil assets the methodology used was not an important issue, because a change in methodology would not create a significant shift of costs between companies. The allocation was fair because it was the product of an agreement by the parties.

The issue of allocation methodology for shared costs became an issue only after Marathon sold its gas assets in 1996. The crux of this lawsuit is that Unocal, without Marathon's concurrence, changed from the agreed methodology of total fluids to a new BOE methodology for shared costs under the "fair and equitable" standard of the operating agreement. Marathon asserts this unilateral change was in breach of the agreement to use total fluids to allocate shared costs; moreover the change occurred without Marathon's consent.[2] As noted in Marathon's opening brief, this agreement is evidenced by total fluids' incorporation into several contracts and by the parties' course of performance. Marathon further asserts that, in any event, the BOE-based

---

[2] While Forest and Unocal argue that Marathon's position is that all platform costs (as opposed to shared costs) should be allocated on a total fluids basis, Marathon has never taken that position, as was made clear by its initial disclosures in this matter. This type of "straw-man" argument should be rejected by the court.

**REPLY BRIEF RE MARATHON OIL'S CROSS MOTION FOR SUMMARY JUDGMENT**
MARATHON v. FOREST OIL, ET AL., CASE NO. 3:06-cv-00102 TMB
PAGE 9

methodologies do not meet the fair and equitable standard. It is this second issue that is the subject of this cross-motion for summary judgment.

Here, Marathon has never asserted the position that BOE or a BOE-based allocation methodology is "fair and equitable." To the contrary, it has consistently objected to Unocal's use of these methodologies. The fact Marathon used total fluids in 1994 by agreement of the parties cannot be the basis for claiming that Marathon "asserted" BOE to be fair and equitable in 2002. And even assuming that Forest is correct that both total fluids and BOE are production-based methodologies, Marathon's agreement that one production-based methodology is acceptable does not translate to the position that every production-based methodology is fair and equitable. Forest's argument is akin to arguing that because a person likes dogs, they must like cats, because both are animals.

Nor does Forest present evidence of "reasonable reliance." There is not a shred of evidence that Forest or Unocal relied on Marathon's use of total fluids in 1994 in shifting the cost allocation methodology in 2002. Not only is there no evidence of reliance, any such reliance on its face would be unreasonable. Finally, there is no prejudice in using an allocation methodology that is in fact "fair and equitable" and requires that oil bear its fair share of expenses.

**Conclusion**

The undisputed evidence is that the BOE and BOE/well count allocation methodologies for shared costs do not reflect the operational dynamics of the Steelhead platform. Support costs, such as travel and catering, should be allocated in proportion of the labor they support. The labor prorates establish that the oil operations utilize more labor than gas. Unocal's Don Page in fact recognized this to be the case in the letter that Unocal's management directed him not to send. The

shared labor expenses at most support both oil and gas wells equally, because these employees are in any event required to be on the platform for each operation.

A fair and equitable allocation must reflect these facts. The BOE-based methodologies, which disproportionately burden the gas side, reflect none of the operational dynamics of the platform, and are not "fair and equitable" as a matter of law. An equal split of costs, or a split based on well count would have provided a fair and equitable methodology that Unocal as operator must provide. Whatever methodologies might fall within the contractual requirement of "fair and equitable," Unocal's choices fall well outside the boundaries of that standard.

For the reasons outlined above, Marathon would respectfully request that its motion for summary judgment be granted.

DATED this 18th day of July, 2008, at Anchorage, Alaska.

                        RICHMOND & QUINN
                        Attorneys for Plaintiff
                        MARATHON OIL COMPANY

By:       s/Daniel T. Quinn
           RICHMOND & QUINN
           360 K Street, Suite 200
           Anchorage, AK 99501
           Ph: 907-276-5727
           Fax: 907-276-2953
           dquinn@richmondquinn.com
           ABA #8211141

By:       s/ Marc G. Wilhelm
           RICHMOND & QUINN
           360 K Street, Suite 200
           Anchorage, AK 99501
           Ph: 907-276-5727
           Fax: 907-276-2953
           mwilhelm@richmondquinn.com
           ABA #8406054

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically served this 18th day of July, 2008 to:

Robert K. Stewart, Jr.
DAVIS WRIGHT TREMAINE LLP
701 W. 8th Ave., Ste. 800
Anchorage, Alaska 99501

Marc D. Bond
UNION OIL CO. OF CALIFORNIA
909 W. 9th Avenue
Anchorage, Alaska 99501-3339

Jeffrey M. Feldman
R. Scott Taylor
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501

Brewster H. Jamieson
LANE POWELL
301 W. Northern Lights Blvd., Ste. 301
Anchorage, Alaska 99503

    s/ Marc G. Wilhelm
    RICHMOND & QUINN

644\046\PLD\SUMMARY JUDGMENT (REPLY)