Daniel T. Quinn (8211141)
Marc G. Wilhelm (8406054)
RICHMOND & QUINN, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
Ph:  (907) 276-5727
Fax: (907) 276-2953

Attorneys for Plaintiff Marathon Oil Company

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARATHON OIL COMPANY,         )<br>                               )<br>           Plaintiff,          )<br>                               )<br>    v.                         )<br>                               )<br>FOREST OIL CORPORATION: PACIFIC )<br>ENERGY ALASKA OPERATING LLC,   )<br>UNION OIL COMPANY OF           )<br>CALIFORNIA, d/b/a UNOCAL       )<br>ALASKA,                        )<br>                               )<br>           Defendants.         )<br>_____)  | Case No. 3:06-cv-00102 TMB |

### AFFIDAVIT OF WAYMAN GORE

STATE OF TEXAS       )
                     ) ss.
___Travis___ COUNTY  )

I, WAYMAN GORE, being first duly sworn upon oath, depose and state as follows:

1. I have been retained by Plaintiff Marathon Oil Company in this litigation. I have personal knowledge of the facts herein stated.

Exhibit _16_
Page __1__ of. _13_ Pages

2. My expert report stating my opinions and qualifications is attached to this Affidavit as Exhibit 1. Exhibit 1 is a true and accurate copy of my report in this matter.

3. The opinions in the expert report are my opinions in this matter, and I incorporate the report by reference in this affidavit. For the reasons stated in my report, it is my opinion that the allocation methodologies used by Union Oil Company of California with respect to the category of unallocated or shared costs do not meet the requirement that allocation be "fair and equitable." To be fair and equitable, the methodology must reflect how costs are actually being incurred on the platform. For the reason stated in my report, the Unocal methodologies do not do this.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
WAYMAN GORE

SUBSCRIBED and SWORN TO before me this  7  day of  July , 2008.

[Notary Seal: GEOFF HAWKINS, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 4-14-2011]

_____
Notary Public in and for Texas
My Commission Expires: 4/14/2011

**AFFIDAVIT OF WAYMAN GORE**
MARATHON v. FOREST OIL, ET AL., CASE NO. 3:06-cv-00102 TMB
PAGE 2

Exhibit 16

Page 2 of 13 Pages


ENGINEERS · CONSULTANTS

April 2, 2008

Mr. Marc G. Wilhelm
Richmond & Quinn
360 K Street, Suite 200
Anchorage, Alaska 99501

Re:   **Marathon Oil Company v. Forest Oil Company, Union Oil Company of California, d/b/a Unocal Alaska, and Chevron Corporation**

Dear Mr. Wilhelm:

Pursuant to your request, I have reviewed the allocation of miscellaneous shared costs for the Union Oil Company of California ("Unocal") operated Steelhead Platform. You have asked that I determine if in my opinion the allocation methodologies employed by Unocal since January 2002 for the allocation of shared costs represent a fair and equitable apportionment to the various working interest owners served by the Steelhead Platform. To the extent that such methodologies did not, in my opinion, result in a fair and equitable apportionment of these costs, you have asked that I determine what a fair and equitable allocation procedure would have been.

As you are aware, I am president of PGH Petroleum and Environmental Engineers, L.L.C. ("PGH"). PGH is an engineering firm specializing in petroleum engineering. Petroleum engineering is the study of the exploration, development and production of oil and gas resources. This includes the drilling and production of oil and gas reserves as well as the quantification of those reserves. I am a licensed professional engineer in the state of Texas (License No. 56682). I am a member of the following professional societies:

Exhibit 16
Page 3 of 13 Pages

- Society of Petroleum Engineers (SPE)
- Society of Petroleum Evaluation Engineers (SPEE)
- Society of Professional Well Log Analysts (SPWLA)
- American Association of Petroleum Geologists (AAPG)

I have also served as an officer in the local chapters of SPE and SPEE. I received a Bachelor of Science Degree in Petroleum Engineering from the University of Texas at Austin in May 1980. I have enclosed a copy of my resume as **Attachment 1**. As indicated on my resume I have actively work in producing operations and am very familiar with both oil and gas producing facilities. I have been directly responsible for producing operations in most producing regions of the country. This includes both onshore and offshore state-waters operations. I have been actively involved in the operation of oil and gas production facilities either from a supervisory position or a consulting position for all of my 28years experience as a petroleum engineer. I have served as an expert in petroleum engineering since 1984. My qualifications as a petroleum engineer have been accepted by numerous state and federal agencies as well as state and federal courts in Texas, New Mexico, Oklahoma and California. **Attachment 2** is a summary of my litigation testimony as an expert in petroleum engineering.

PGH is being compensated for its work in this matter based on our current schedule of hourly rates. **Attachment 3** is a copy of the current PGH fee schedule.

In my opinion, the allocation methodologies employed by Unocal since January 2002 have not provided for a fair and equitable apportionment of the Steelhead Platform shared costs. In researching this opinion I have reviewed and considered the following information:

2

Exhibit 16
Page 4 of 13 Pages

- Complaint of Marathon Oil Company ("Marathon")
- Forest Oil Corporation's ("Forest) Answer to Complaint
- Union Oil Company of California's Answer to Complaint
- Forest Motion for Summary Judgment
- Various Disclosures and Responses of Forest and Unocal and Related Documents
- Marathon Initial Disclosures and Related Documents
- Deposition Transcripts of the following people:
    - Glenn Payment
    - Phillip Bindon
    - Ted Kramer
    - David Hall
    - Don Page
    - Mitch Fischbach
- Organizational Chart of Steelhead Platform
- Marathon Letter to Forest dated January 19, 2005
- 2005 Audit Report to Unocal dated December 12, 2005
- Marathon Letter to Unocal dated February 15, 2006
- Steelhead Miscellaneous Cost Allocation Discussion dated August 2005
- Unit Agreement With Amendment For The Development Of The Trading Bay Unit Area
- Trading Bay Field Joint Operating Agreement By And Between Union Oil Company Of California And Marathon Oil Company dated May 1996
- A Conformed Version of the Unit Operating Agreement Trading Bay Unit Incorporating The First Through Eighth Amendments and the First Through Third Supplemental Agreements
- Miscellaneous emails and correspondence amongst the parties
- Various Assignments Of Interest In Oil And Gas Lease

3

Exhibit 16
Page 5 of 13 Pages

- 2003 – 2006 Allocations To Cost Center 1007096000
- Various Technical papers and presentations regarding Cook Inlet Platforms

In addition to reviewing the above referenced documents, I toured the Steelhead Platform on Wednesday, August 29, 2007. This tour included a complete overview and inspection of all Steelhead facilities and operations.

The Steelhead Platform was installed in 1985 by Marathon to develop and produce McArthur River field oil and natural gas. Steelhead was the Cook Inlet's fifteenth offshore platform. Although primarily constructed as a gas platform, the Steelhead Platform currently has significant oil production. The Platform can be described as having two sides, and "oil side" and a "gas side". Based on my inspection the "oil side" can be described very generally as having the following equipment:

> 5 oil wells
> 2 water injection wells
> 2 – Phase Separator
> Test Separator
> Holding tank
> 2 Booster pumps
> Shipping Pump

The oil wells are presently equipped with electric submersible pumps ("ESP's"). Gas-lift valves are still in place on the oil wells in case the ESP's malfunction. Gas-lift valves, like submersible pumps are considered artificial lift equipment and assist the natural reservoir energy in lifting reservoir fluids (oil, gas and water) to the surface. Gas for gas-lift operations is available to be provided if and when needed from the gas wells located on the Steelhead Platform.

4

Exhibit 16
Page 6 of 13 Pages

Oil, gas and water are produced from the oil wells. Gas is separated at the platform by way of the 2-phase separator. Oil and water flow into the holding tank from where it is shipped to the onshore Trading Bay Production Facility where further separation occurs.

The "gas side" of the Steelhead Platform consists very generally of the following equipment:

> 13 gas wells
> 3 separators (A, B & C)
> 2 dehydrators (contractors A & B)
> 2 compressors

Waste water is separated from the gas flow stream and placed into the oil system and moved to shore for further separation and disposal.

The platform also has two generators that are used to supply the necessary power or electricity for both the "oil side" and "gas side" of the platform as well as for the platform itself. A third generator is used for drilling activity. At the time of my inspection, no drilling operations were being conducted on the platform. While power generation is a shared platform cost, it is my understanding that power generation has its own cost center. From the documents I have reviewed, approximately 85% of the power usage on Steelhead is consumed by the "oil side" of the platform.

All heat for Steelhead is generated by a therminol heating system. The therminol system utilizes exhaust from the turbine gas compressors to generate heat. As a result, the platform (including the oil side of the platform) benefits from gas production through the generation of exhaust from the gas compressors and the resulting heat generation. Based on my inspection of the

5

Exhibit 16
Page 7 of 13 Pages

Steelhead Platform it did not appear that there were differences in the manpower requirements for oil operations or gas operations. As a result, any allocation of shared costs that result in a disproportionate share of the costs being attributed to either oil or gas would not be fair or equitable.

The operation of the Steelhead Platform is governed by among other things the Trading Bay Unit Operating Agreement. Unless there is a more specific arrangement or agreement between the owners of Steelhead, Article XVI of the Conformed Version of the Unit Operating Agreement Trading Bay Unit Incorporating The First Through Eighth Amendments and the First Through Third Supplemental Agreements, specifically Section 16.3 provides for the use of wells, platforms and production facilities and how the costs for the use of such wells, platforms or facilities are to be allocated. Article XVI, Subsection 16.3 states:

> *No well, platform, or production facility (including a pipeline) shall be used for other than that upon which ownership thereof is based without approval of the Parties owning such well, platform, or production facility, as provided in Subsection 5.3D. Upon such use, a fair and equitable apportionment of risks and liabilities, investment, and operating and other costs shall be made between the Parties therefor. Such use shall include but not be limited to the Drilling of wells, multiple completions of wells and the production, transportation and handling of Unitized Substances.* ***(See First, Second and Third Supplemental Agreements to Unit Operating Agreement).***

A fair and equitable apportionment of shared platform costs must in my opinion treat the oil-side and gas-side of the platform alike. That is to say the allocation of shared costs would be impartial and would not be biased against either side.

It is my understanding that Unocal has employed two allocation methodologies since January 2002. From January 2002 through December 2005 Unocal utilized a Barrel-of-Oil-Equivalent ("BOE") method to allocate Steelhead Platform shared costs. This in effect results in a production value allocation. In my opinion, this did not result in a fair and equitable apportionment of shared platform expenses. The BOE approach is biased toward the oil-side of the platform and therefore does not result in a fair allocation of the shared costs in my opinion.

The shared platform expenses at issue in this matter involve those charges that are not billed to specific oil or gas centers. Examples of shared platform expenses are labor, transportation, catering, support, training and health and safety to name just a few. Labor and transportation costs account for 70-80% of the expenses in question in this matter[1]. Labor costs involve the personnel which man the Steelhead Platform and that provide service to both the "oil side" and "gas side" of the platform. Individual employees do not work on just oil wells and oil equipment or gas wells and gas equipment. Rather the employees work on the platform as a whole, when and where needed. These employees would be required if the platform was 100% oil production or 100% gas production. These personnel are present for the equal benefit of both the oil and gas sides of the platform. As a result, an allocation procedure that results in an allocation that is biased toward one side of the platform (in this case 92% gas and 8% to oil) in my opinion does not represent a fair and equitable apportionment of the costs. Since these shared costs accrue to the equal benefit of both the oil and gas sides of the Steelhead Platform, an allocation of these costs must be impartial and unbiased. A BOE cost allocation approach does not accomplish this.

---

[1] Deposition of Donald Alan Page, page 38, lines 15 - 20

7

Exhibit 16
Page 9 of 13 Pages

As I understand the procedure, labor is allocated to specific oil or gas cost centers where possible. The remaining labor costs are then apportioned to platform or shared cost centers. In my review of the documents related to labor prorates, it appears that oil was allocated approximately twice the amount of labor costs as gas. Oil receiving such a high allocation as compared to gas, is a direct indication that shared platform costs should not be heavily waited towards gas. In fact, this would support a shared cost allocation that would be more heavily waited towards oil in my opinion. Unocal's BOE allocation method that results in costs being allocated heavily towards gas is unreasonable.

With respect to catering, transportation and other support costs, the same is true. Transportation of personnel to the platform is a necessity for both the oil and gas sides of the Steelhead Platform. The amount of production or the value of such production in no way represents the manpower requirements of the platform. As Marathon stated in its February 15, 2006 letter to Unocal,

> *The use of production does not result in an equitable distribution of expenses because the oil and gas owners benefit equally as both need the boats to transport the labor to the platform in order to carry out the necessary operation and maintenance.*

In January 2006 Unocal changed the allocation method to a 50/50 method; that is to say 50% BOE and 50% per well. This is the allocation method presently employed by Unocal. While this is a better methodology than a straight BOE approach, it still does not provide for a fair and equitable apportionment of the shared platform costs because BOE is still a component of the methodology. A "per well" factor in the formula in my opinion provides a more reasonable approach but so long as there is a BOE component in the apportionment of the shared platform costs, the allocation will be biased toward the oil side of the platform.

8

Exhibit 16
Page 10 of 13 Pages

Two methods of allocation come to mind that in my opinion would provide for a fair and equitable apportionment of the Steelhead Platform fixed or shared costs. First, a "per well" allocation in my opinion would accomplish a fair and equitable distribution of the shared platform costs. Because labor or provisions are required for the platform regardless of producing rate or value, it is not in my opinion reasonable to allocate costs in such a biased and disproportionate manner as a BOE method does.

Allocating such costs in a 92/8 (92% gas, 8% oil) proportion is not fair and equitable. A "per well" formula, in my opinion, would achieve a fair and equitable distribution. Because such costs benefit both oil operations and gas operations equally, a well count allocation would be fair and equitable in my opinion. The oil side of the platform has 7 wells (5 producing and 2 injectors) and the gas side has 13 wells, so the distribution of labor would be split in a more equitable manner. Based on my platform inspection there did not appear to be a difference in the operational aspect of the platform. Both the oil and gas sides have production equipment which requires periodic maintenance and servicing. Therefore, a well count allocation would provide for a fair and equitable apportionment of these costs. As a general matter, gas wells typically require less maintenance than oil wells. An allocation method that apportions 90% of the shared costs to gas wells would not be reasonable. I did not observe anything during my inspection which would contradict this generally accepted principle. It should also be noted that well count was considered by Unocal prior to deciding to adopt the BOE approach[2].

Another method that would provide for a fair and equitable apportionment would be a 50/50 allocation between oil and gas. Since we are dealing with shared

---

[2] Deposition of Donald Alan Page, page 132, lines 17 - 21

9

Exhibit 16
Page 11 of 13 Pages

platform costs, as long as there is both oil production and gas production, this method in my opinion would provide the most fair and equitable distribution of such expenses because such costs benefit both oil operations and gas operations equally. As long as there is production from Steelhead, whether it is oil or gas, such costs will be required. Therefore, a 50/50 allocation between oil and gas operations would be fair and equitable and would not be biased toward one side or the other. A 50/50 allocation would also appear to be supported by labor prorates. If in fact shared platform costs were allocated solely on labor prorate percentages, oil would receive an allocation of more than 50% of these costs.

Each operator has in my opinion a certain amount of latitude or discretion in choosing an allocation formula, so long as the formula chosen is impartial and unbiased toward the parties or interests involved. Such a formula should reflect how the costs were actually being incurred on the ground. In my opinion Unocal has failed in this regard. The BOE methodology is biased toward the oil side of the platform as evidenced by the fact that under such an approach, approximately 92% of the shared platform costs are allocated to gas. Since these shared costs have no correlation with the volume produced or the value of such production, an allocation methodology should be chosen that is not biased toward oil or gas. In my opinion a "per well" allocation or a 50/50 oil to gas allocation would accomplish this.

10

Exhibit 16
Page 12 of 13 Pages

Thank you for the opportunity to be of service in this matter. If you have any questions or you need any additional information please do not hesitate to call.

Very truly yours,

*Wayman T. Gore Jr.*
4/2/08

Wayman T. Gore, Jr., P.E.
Texas Engineering License No. 56682

[Seal: STATE OF TEXAS — WAYMAN T. GORE, JR. — 56682 — REGISTERED PROFESSIONAL ENGINEER]